**Case Nos. 22-5734 / 22-5735 / 22-5736 / 22-5737 / 22-5738**

# In the United States Court of Appeals for the Sixth Circuit

NICHOLAS SANDMANN,

*Plaintiff-Appellant*,

v.

NEW YORK TIMES COMPANY
CBS NEWS, INC., *et al.*
ABC NEWS, INC., *et al.*
ROLLING STONE, LLC, *et al.*
GANNETT CO., INC., *et al.*,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
HONORABLE WILLIAM O. BERTELSMAN, DISTRICT JUDGE, PRESIDING
Case Nos. 2:20-cv-00023, 2:20-cv-00024, 2:20-cv-00025, 2:20-cv-00026, 2:20-cv-00027

**BRIEF OF PLAINTIFF-APPELLANT
ORAL ARGUMENT REQUESTED**

TODD V. MCMURTRY, ESQ.
JEFFREY A. STANDEN, ESQ.
J. WILL HUBER, ESQ.
HEMMER DEFRANK WESSELS, PLLC
250 Grandview Drive, Suite 500
Fort Mitchell, Kentucky 41017
Phone: (859) 344-1188
Fax: (859) 578-3869
tmcmurtry@hemmerlaw.com
jstanden@hemmerlaw.com
whuber@hemmerlaw.com

*Attorneys for Plaintiff-Appellant Nicholas Sandmann*

## CORPORATE DISCLOSURE

Pursuant to Fed. R. App. P. 26.1 and 6 Cir. R. 26.1, Plaintiff-Appellant, Nicholas Sandmann, makes the following disclosures:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identify of the parent corporation or affiliate and the relationship between it and the named party.  **ANSWER:  No.**

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest.  **ANSWER:  No.**

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE ........................................................................i

TABLE OF CONTENTS .............................................................................. ii

TABLE OF AUTHORITIES .......................................................................... iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT .....................................1

STATEMENT OF JURISDICTION .................................................................1

STATEMENT OF ISSUES ...........................................................................2

STATEMENT OF THE CASE .......................................................................3

    I.    Facts Relevant to Issues Submitted for Review .............................3

    II.   Relevant Procedural History.........................................................9

    III.  Rulings Presented For Review ......................................................10

SUMMARY OF ARGUMENT .......................................................................10

LEGAL STANDARD ..................................................................................12

ARGUMENT ............................................................................................15

    I.    The District Court Applied an Incorrect Legal Standard ..................15

    II.   The District Court's Opinion Would Create an Impossible Obstacle to Defamation Liability..................................................19

    III.  The District Court Misapplied Kentucky Defamation Law ..............26

    IV.  The District Court Erred in Not Applying the "Law of the Case" ...................................................................................31

        1.   Standard of Review..................................................................31

        2.   The Law of the Case ................................................................31

        3.   The District Court Erred in Not Applying the Law of the Case Doctrine ........................................................................34

CONCLUSION .........................................................................................38

CERTIFICATE OF COMPLIANCE ...............................................................39

CERTIFICATE OF SERVICE ......................................................................40

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bose Corp. v. Consumers Union of U.S., Inc.*,
    466 U.S. 485 (1984) ............................................................................12

*Buckman v. Morris*,
    736 F. App'x 852 (11th Cir. 2018) ...................................................13

*Campbell v. Republican Cent. Commt.*,
    E.D. Ky. No. 05-293, 2010 U.S. Dist. LEXIS 5400 (Jan. 25, 2010) ...............33

*Cianci v. New Times Pub. Co.*,
    639 F.2d 54 (2d Cir. 1980) .................................................................20

*Clark v. Johnston*,
    No. 13-3581, 2014 U.S. App. LEXIS 25019 (6th Cir. June 16, 2014) ............32

*Clark v. Viacom Int'l, Inc.*,
    617 F. App'x 495 (6th Cir. 2015) ......................................................19

*Compuware Corp. v. Moody's Inv'rs Servs.*,
    499 F.3d 520 (6th Cir. 2007) ...................................................... 16, 19

*Croce v. Sanders*,
    843 F. App'x 710 (6th Cir. 2021) ................................................ 17, 18

*Cromity v. Meiners*,
    494 S.W.3d 499 (Ky. Ct. App. 2015) ................................................19

*Daunt v. Benson*,
    999 F.3d 299 (6th Cir. 2021) ..............................................................32

*Digest Publishing Company v. Perry Publishing Co.*,
    284 S.W.2d 832 (Ky. 1955) ........................................................ 21, 23

*Fogel v. Chestnutt*,
    668 F.2d 100 (2d Cir. 1981) ..............................................................32

*GMAC Mortg., LLC v. McKeever*,
    No. 08-459-JBC, 2010 U.S. Dist. LEXIS 118618 (E.D. Ky. Nov. 8, 2010) .....31

*Hagan v. Baird (In re B & P Baird Hldgs., Inc.)*,
    759 F. App'x 468 (6th Cir. 2019) ......................................................31

*Hall v. Wash. Metro. Area Transit Auth.*,
    33 F. Supp. 3d 630 (D. Md. 2014) ...................................................12

*Hanover Ins. Co. v. Am. Eng'g Co.*,
    105 F.3d 306 (6th Cir. 1997) ..................................................... 32, 33

*Hanson v. Madison Cty. Det. Crt.*,
    736 F. App'x 521 (6th Cir. 2018) ...................................................13

*Himmel v. Ford Motor Co.*,
    342 F.3d 593 (6th Cir. 2003) ...........................................................14

*Howe v. City of Akron*,
    801 F.3d 718 (6th Cir. 2015) ...........................................................31

*McCall v. Courier-Journal & Louisville Times Co.*,
    623 S.W.2d 882 (Ky. 1981) ....................................................... 14, 15

*McCray v. Infused Solutions, LLC*,
    No.4:14-cv-158, 2018 U.S. Dist. LEXIS 88645 (E.D. Va. May 25, 2018) ......25

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ........................................................................ *passim*

*Mittelman v. Witous*,
    552 N.E.2d 973 (Ill. 1989) ...............................................................25

*Moses v. Business Card Express, Inc.*,
    929 F.2d 1131 (6th Cir. 1991) ..........................................................32

*Ollman v. Evans*,
    750 F.2d 970 (D.C. Cir. 1984) .........................................................26

*Parks v. LaFace Records*,
    329 F.3d 437 (6th Cir. 2003) ...........................................................16

*Polec v. Northwest Airlines (In re Air Crash Disaster)*,
    86 F.3d 498 (6th Cir. 1996) .............................................................31

*Samuels v. Tschechtelin*,
    763 S.2d 209 (Md. Ct. Spec. App. 2000)..........................................25

*Sandmann v. ABC News, Inc., et al.*,
    E.D. Ky. Case No. 2:20-cv-00025 ("*ABC News*") ..................... *passim*

*Sandmann v. Cable News Network, Inc.*,
    E.D. Ky. Case No. 2:19-cv-00031 ...................................... 34, 35, 36

*Sandmann v. CBS News, Inc., et al.*,
    E.D. Ky. Case No. 2:20-cv-00024 ("*CBS News*")..................... *passim*

*Sandmann v. Gannett Co., Inc., et al.*,
    E.D. Ky. Case No. 2:20-cv-00026 ("*Gannett*") ........................ *passim*

iv

*Sandmann v. NBCUniversal, LLC*,
  E.D. Ky. Case No. 2:19-cv-00056 ........................................................11, 30, 35

*Sandmann v. New York Times Co.*,
  E.D. Ky. Case No. 2:20-cv-00023 ("*New York Times*") .......................... *passim*

*Sandmann v. Rolling Stone, LLC, et al.*,
  E.D. Ky. Case No. 2:20-cv-00027 ("*Rolling Stone*") ............................... *passim*

*Sandmann v. WP Company, LLC*,
  E.D. Ky. Case No. 2:19-cv-19 ........................................................... 19, 25, 34

*Scott v. Harris*,
  550 U.S. 372 (2007) ..........................................................................13

*Scott v. The News-Herald*,
  496 N.E.2d 699 (Ohio 1986).......................................................... 28, 29

*Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*,
  477 F.3d 854 (6th Cir. 2007) ..............................................................14

*Tech Plus, Inc. v. Ansel*,
  793 N.E.2d 1256 (Mass. App. Ct. 2003)............................................26

*United States v. Kentucky Util. Co.*,
  124 F.R.D. 146 (E.D. Ky. 1989).........................................................33

*United States v. Moored*,
  38 F.3d 1419 (6th Cir. 1994) .............................................................33

*Welch v. American Publ'g Co.*,
  3 S.W.3d 724 (Ky. 1999)...................................................................19

*Westside Mothers v. Olszewski*,
  454 F.3d 532 (6th Cir. 2006) ...................................................... 32, 33

*Williams v. Blackwell*,
  487 S.W.3d 451 (Ky. Ct. App. 2016) ................................................19

*Wilmington Tr. Co. v. AEP Generating Co.*,
  859 F.3d 365 (6th Cir. 2017) .............................................................14

*Yancey v. Hamilton*,
  786 S.W.2d 854 (Ky. 1989).......................................................... 26, 27

**Constitutional Provisions**

U.S. Const. amend I ...................................................................................26

**Statutes, Rules and Regulations**

6 Cir. R. 26.1 ................................................................................................ i

6 Cir. R. 32(b) .............................................................................................39

6 Cir. R. 34(a) ...............................................................................................1

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1332 ...........................................................................................1

Fed. R. App. P. 26.1 ..................................................................................... i

Fed. R. App. P. 32(a)(7)(B) .......................................................................39

Fed. R. App. P. 34(a) ...................................................................................1

Fed. R. Evid. 201 ..........................................................................................5

**Other Authorities**

Joan Steinman,
    *Law of the Case: A Judicial Puzzle in Consolidated and Transferred*
    *Cases and in Multidistrict Litigation*, 135 U. Pa. L. Rev. 595, 598 (1987)......33

Kate Conger and Sheera Frenkel,
    *Who Posted Viral Video of Covington Students and Protester?*
    *Congress Wants to Know*, New York Times (Jan. 23, 2019),
    *available at* https://www.nytimes.com/2019/01/23/technology/
    covington-video-protester-congress.html ...........................................5

George Berkeley,
    A Treatise Concerning the Principles of Human Knowledge ...........................20

Restatement (Second) of Torts § 565 .............................................................23

Restatement (Second) of Torts § 566, cmt. b, cmt. c ...............................................27

Walden University,
    *Grammar: Transitive and Intransitive Verbs*,
    https://academicguides.waldenu.edu/writingcenter/grammar/verbs#:~:text=
    Prepositions,Transitive%20Verbs,object%20to%20receive%20the%20action
    (last visited Feb. 9, 2022) .................................................................29

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a) and 6 Cir. R. 34(a), Plaintiff-Appellant hereby respectfully requests oral argument. This appeal raises important issues relating to the distinction between opinion and fact in defamation actions.

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction over these cases pursuant to 28 U.S.C. § 1332. The Court of Appeals has subject matter jurisdiction over the cases pursuant to 28 U.S.C. § 1291. On July 26, 2022, the District Court issued in all five lower District Court cases a final order granting summary judgment to the Defendants-Appellees and dismissing all claims.[1] On August 19, 2022, Plaintiff-Appellant filed in all five lower District Court cases a timely notice of appeal.[2]

---

[1] *Sandmann v. New York Times Co.*, Case No. 2:20-cv-00023 ("*New York Times*"), RE 81, Page ID# 2331-2351; *Sandmann v. CBS News, Inc., et al.*, Case No. 2:20-cv-00024 ("*CBS News*"), RE 90, Page ID# 2862-2882; *Sandmann v. ABC News, Inc., et al.*, Case No. 2:20-cv-00025 ("*ABC News*"), RE 94, Page ID# 2801-2821; *Sandmann v. Gannett Co., Inc., et al.*, 2:20-cv-00026 ("*Gannett*"), RE 95, Page ID# 3226-3246; *Sandmann v. Rolling Stone, LLC, et al.*, 2:20-cv-00027 ("*Rolling Stone*"), RE 88, Page ID# 2802-2822.

[2] *New York Times*, RE 83, Page ID# 2353-2354; *CBS News*, RE 92, Page ID# 2884-2885; *ABC News*, RE 96, Page ID# 2823-2824; *Gannett*, RE 97, Page ID# 3248-3249; *Rolling Stone*, RE 90, Page ID# 2824-2825.

## STATEMENT OF ISSUES

1.     Did the District Court err in ruling that statements such as "he slided left" and "he slided right" and "he blocked me" and "he wouldn't let me escape" constitute statements of "opinion," not fact, and thus are not susceptible to being proved true or false?

2.     Did the District Court err in ruling that the "law of the case" did not preclude the re-litigation of the "fact vs. opinion" issue, particularly after the parties spent one year in discovery to verify the factual "truth" of the defendants' statements?

## STATEMENT OF THE CASE

### I.    Facts Relevant to Issues Submitted for Review

On January 18, 2019, while awaiting a bus to take him and his high-school classmates home after a day in Washington, D.C., the Plaintiff-Appellant, Nicholas Sandmann ("Sandmann"), was confronted on the steps of the Lincoln Memorial by Nathan Phillips, a Native American political activist.[3] (Sandmann Deposition Transcript ("Sandmann Dep."),[4] *New York Times*, RE 74-1, Page ID# 2147, 2149, 2155; Video 2[5] at 00:01; Video 4 at 01:12:17; Video 5 at 03:55; Video 12 at 00:01; Video 15 at 00:37-00:40; Video 17 at 01:18). Phillips walked up to Sandmann, stood inches in front of him, and beat his drum. (Video 2 at 00:51; Video 17 at 06:48).

_____

[3] For ease of reference, and to minimize duplicate references, this brief will sometimes cite only to the docket entry number(s) and Page ID number(s) of documents filed in the *New York Times* case. For parallel references to the *CBS News, ABC News, Gannett*, and *Rolling Stone* cases, see the Designation of Relevant Documents in the Addendum.

[4] The complete transcript of the deposition of Nicholas Sandmann was filed in each of the five cases and, for purposes of this brief, can be located at *New York Times*, RE 74-1, Page ID# 2114-2309. Pursuant to 6 Cir. R. 28(a)(1), this brief will cite the deposition transcript using the Page ID numbers from *New York Times*.

[5] The twenty stipulated video exhibits (cited herein as "Video [1-20]") were conventionally filed in the five lower court cases and, although comprising part of the record on appeal, are unavailable in the electronic record. (*New York Times*, RE 49; *CBS News*, RE 55; *ABC News*, RE 62; *Rolling Stone*, RE 56; *Gannett*, RE 62). Therefore, pursuant to 6 Cir. I.O.P. 10(d), four USB flash drives containing those conventionally filed videos, along with other conventionally filed exhibits not available in the electronic record, have been mailed to the Records Room of the Sixth Circuit Court of Appeals along with a cover letter explaining their contents.

Sandmann remained silent and unmoving, smiling awkwardly throughout. (Video 1 at 00:01; Video 2 at 00:51; Video 8 at 00:28). In a few brief minutes, the odd encounter was over. As multiple video recordings of the encounter would show in clear detail, it was Phillips who was the instigator of this incident. (Video 4 at 01:12:17; Video 17 at 01:29; Sandmann Dep., *New York Times*, RE 74-1, Page ID# 2151, 2154, 2155, 2163, 2165, 2168). Phillips sought to confront the school children waiting for their bus, purposely navigating a path directly through the huddled teenagers, dislodging them. (Video 2 at 00:01; Video 5 at 00:01). It was Phillips who, beating his drum, walked up to Sandmann, stopping mere inches in front of his face, his drumstick actually brushing up against Sandmann's jacket collar. (Video 17 at 05:50, 06:50; Sandmann Dep., *New York Times*, RE 74-1, Page ID# 2157). At all times, Sandmann just stood there, never moving, smiling politely and silently, wearing the "MAGA" hat he and others had just purchased as a souvenir of the day from the White House gift shop, not once changing his position until it was time to board the bus. (Video 2 at 00:51; Video 11 at 00:01; Sandmann Dep., *New York Times*, RE 74-1, Page ID# 2126).

At the time, Sandmann thought nothing of the encounter nor what he later characterized as Phillips' "weird" behavior. (Sandmann Dep., *New York Times*, Page ID# 2162). Nonetheless, a misleadingly edited video, one that depicted Sandmann as the rude aggressor in the encounter, went viral via a fake Twitter account, which

Twitter later suspended.[6] (Compl., *New York Times*, RE 1, Page ID# 3-4, 15-16 (Tweet Caption: "This MAGA loser gleefully bothering a Native American protestor at the Indigenous Peoples March.")). Major media outlets, such as CBS, contacted Phillips to interview him. (*CBS News*, Docs. 60-2, 60-4 Page ID# 1205-1216). In publications in the aftermath of this encounter, the defendants New York Times, CBS News, ABC News, Gannett, and Rolling Stone (the "defendants"), described Sandmann's behavior in false, aggressive terms, quoting Phillips to state that Sandmann had "slided left" and "slided right" (*CBS News*, RE 60-2, Page ID# 1206) and that Sandmann was "blocking" Phillips and that he "wouldn't let him retreat." (*New York Times¸* RE 54-1, Page ID# 1090; *ABC News*, RE 1-8, Page ID# 96-97, 104, 116 ("one student wouldn't let [Phillips] move"); *Rolling Stone*, RE 61-1, Page ID# 1157; *Gannett*, RE 32-1, Page ID# 327-345). These statements were loaded with defamatory implications. In the heated political climate of our times, the claim that a white teenager from a private Catholic school wearing a red MAGA hat was intentionally blocking the progress of a peaceful Native American protestor carried

_____

[6] This Court may take judicial notice under Fed. R. Evid. 201 of the fact that, in the days following publication of the misleading video on Twitter, members of the United States Congress and House Intelligence Committee, including Mark Warner, a Democrat from Virginia, asked Twitter to provide information about the suspicious account and the accounts that initially retweeted the misleading video. *See* Kate Conger and Sheera Frenkel, *Who Posted Viral Video of Covington Students and Protester? Congress Wants to Know*, New York Times (Jan. 23, 2019), *available at* https://www.nytimes.com/2019/01/23/technology/covington-video-protester-congress.html.

unmistakable connotations of racism, intolerance, intimidation, and insensitivity. The consequences for Sandmann were immediate and catastrophic. Over the ensuing hours, as he slept on the bus back to Kentucky, and over the next day, Sandmann went from a quiet, anonymous teenager to national social pariah, one whose embarrassed smile in response to Phillips' aggression became a target for invective and hatred, his name and reputation forever tarnished. (Compl., *New York Times*, RE 1, Page ID# 34-37). Sandmann was denounced by his church diocese, temporarily denied re-admission to his school, attacked in the national media, and worse. (*Id.* at Page ID# 20, 34-37). This result was a foreseeable consequence of defendants' heedless publications of Phillips' defamatory accusations.

All this social obloquy and public scorn came about for one reason: because of the defendants' careless failure to investigate the claims that Phillips made in describing the weird encounter and the misleading video. It was Sandmann, Phillips claimed, who was the aggressor, who "slided left" and "slided right," "blocking" Phillips' peaceful path upward on the Memorial, and not "allow[ing] me to retreat" to a point of safety. It was Sandmann, not Phillips, who had supposedly acted disrespectfully and interfered with a minority protestor's peaceful enjoyment of the iconic Lincoln Memorial. Eager to create and further his false narrative, which dovetailed perfectly with his political agenda, Phillips spun his tale to the gathered journalists. Without investigation or even cursory review, these experienced and

credentialed media publications swallowed Phillips' false narrative hook, line, and sinker.

Even a brief fact-check would have spared Sandmann's reputation. Several other, non-edited videos of the encounter pervaded the internet and were top hits on leading search engines. (Compl., *New York Times*, RE 1, Page ID# 14-19). These unedited videos, free of Phillips' spin, were readily available via a simple Google search. (*Id.* at Page ID# 48). These other videos, all included in the record below and in the record on appeal, make the truth plain: they show Phillips, starting at a point far removed from the school children, proceeding directly at them, dislodging child after child from the child's place, making them move apart from their friends and classmates as Phillips and his beating drum marched to confront, directly and at close range, one student after the other, all while cameras from Phillips' followers videotaped the proceedings from directly behind him. (Video 2 at 00:01; Video 4 at 01:12:18; Video 5 at 03:55; Video 12 at 00:01; Video 15 at 00:37; Video 16 at 00:06; Video 17 at 01:18). It was Phillips who walked up to Sandmann and intentionally stood in front of him, beating a drum in Sandmann's face for several minutes, never attempting to move away. (*E.g.*, Video 2 at 00:41). It is plain from the videos that, had it really been Phillips' intention, as he later claimed, to surmount the Memorial, he had numerous open avenues to proceed up steps that are more than one-hundred

feet wide. (Video 12 at 00:01; Video 16 at 00:06; Video 17 at 00:01; Sandmann Dep., *New York Times*, RE 74-1, Page ID# 2152, 2156-2157, 2184).

Instead, here is what the defendants published about the event, quoting Phillips without qualification or explanation. CBS stated that Sandmann "slided to the right" and "slided to the left" and "positioned himself . . . so that he stopped [Phillips'] exit." (*CBS News,* RE 60-2, Page ID# 1206). ABC stated that Sandmann "blocked [Phillips'] way and wouldn't allow [him] to retreat." (*ABC News*, RE 1-8; Page ID# 96-97, 104, 116). Gannett published, "I started going this way, and that guy in the hat stood in my way . . . He just blocked my way and wouldn't allow me to retreat." (*Gannett*, RE 32-1, Page ID# 327-345). The other media defendants published similar statements. (*New York Times*, RE 54-1, Page ID# 1090; *Rolling Stone*, RE 61-1, Page ID# 1157). These false claims, which portrayed Sandmann as a bigoted, callous, entitled MAGA aggressor against a peaceful Native American, catapulted the public narrative forward, resulting in the immediate and permanent social ostracization and reputational destruction that Sandmann feels to this day.

Without fact-checking, and indeed without the mere semblance of care or research, these publications ignored the basic ethical and professional obligations of professional journalism. Worse, they carelessly or maliciously unleashed this thoughtless attack on an underage minor, publicizing his name, his school, his town of residence, and his face, casting him permanently and at a tender age into the

"canceled" world of social pariahs and moral outcasts. The defendants' vivid and false portrayals instigated and unleashed a torrent of vile criticism, including charges of racism, bigotry, and threats of death. In truth, Sandmann no more "blocked" Phillips than it can be said that one lone tree "blocks" one's way across an otherwise wide-open field. The videos show that Sandmann did not slide, and in fact never moved his feet. (Video 2 at 00:41). Phillips' vile statements were factual, false, and defamatory; the defendants' negligent publication of them without even a semblance of care was journalistically irresponsible and subjects them to liability under Kentucky law.

## II.   Relevant Procedural History

Sandmann initiated these five cases in the District Court on March 2, 2020. The defendants subsequently filed motions to dismiss, all of which the District Court denied. (*New York Times*, RE 28; *CBS News*, RE 34; *ABC News*, RE 36; *Gannett*, RE 39; *Rolling Stone*, RE 35). The Court entered the parties' phased discovery plan. (*New York Times*, RE 35; *CBS News*, RE 41; *ABC News*, RE 44; *Gannett*, RE 46; *Rolling Stone*, RE 42). After the first phase of discovery, Sandmann filed a Motion for Partial Summary Judgment on the issue of falsity (*New York Times*, RE 52; *CBS News*, RE 58; *ABC News*, RE 64; *Rolling Stone*, RE 59; *Gannett*, RE 65), and the defendants filed a joint Motion for Summary Judgment. (*New York Times*, Docs. 53-54; *CBS News*, Docs. 59-60; *ABC News*, Docs. 65-66; *Gannett*, Docs. 66-67; *Rolling*

*Stone*, Docs. 60-61). After briefing was complete, the District Court granted the defendants' joint Motion for Summary Judgment and denied Sandmann's Motion for Partial Summary Judgment as moot. (*New York Times*, RE 81; *CBS News*, RE 90; *ABC News*, RE 94; *Gannett*, RE 95; *Rolling Stone*, RE 88). This appeal followed. (*New York Times*, RE 83; *CBS News*, RE 92; *ABC News*, RE 96; *Gannett*, RE 97; *Rolling Stone*, RE 90).

## III.    Rulings Presented For Review

This is a consolidated appeal seeking review of the District Court's Memorandum Opinion and Order entered on July 26, 2022,[7] which granted Defendants' joint Motion for Summary Judgment and denied Plaintiff's Motion for Partial Summary Judgment.

## SUMMARY OF ARGUMENT

This is a textbook case of defamation. Sandmann was a minor at the time of the publications and is private-figure plaintiff; the defendants' statements were false; none of the defendants exercised reasonable care to investigate the matter prior to publication; the statements they made, as the District Court found, were defamatory per se. The District Court, in a prior ruling, had already determined that Phillips'

---

[7] *New York* Times, RE 81; *CBS News*, RE 90; *ABC News*, RE 94; *Gannett*, RE 95; *Rolling Stone*, RE 88.

statements constituted fact, not opinion.[8] Nonetheless, the District Court granted the defendants' joint motion to dismiss on a single ground: that the defendants' statements constitute "opinion," not fact.

This ruling should be reversed and the cases remanded for further proceedings. The District Court applied an incorrect legal standard, failing to assign statements that are "sufficiently factual" to the jury. If these vivid descriptions of observable, physical reality are merely matters of opinion, as the District Court held, then the "opinion" defense to defamation liability has expanded beyond all reasonable bounds. At the risk of hyperbole, no clearer example of "fact" than the description of the actual physical movement of an observable object can be imagined. The published statements describe Sandmann's movements: "he slid left" and "he slid right" and he "blocked" me and "wouldn't let me retreat." Either Sandmann in fact slid to his left and right to block Phillips or he did not. The jury can watch the video and see the obvious truth for itself. This question is readily verifiable by the available evidence. It is a question of fact, one which the jury is fully capable of resolving, and one which the jury should resolve. It is also an issue that, under the

---

[8] The District Court made that ruling in another case arising out of the same incident. *Sandmann v. NBCUniversal, LLC*, E.D. Ky. Case No. 2:19-cv-00056 (RE 43, Page ID# 755) ("Therefore, as in the two related cases [Washington Post and CNN], the Court finds that the statements that plaintiff "blocked" Phillips or did not allow him to retreat, if false, meet the test of being libelous *per se* under the definition quoted above."). It also by necessary implication made the same ruling in these matters. See below, Section IV.

11

"law of the case" doctrine, had already been resolved by the District Court and should not have provided the grounds of decision.

## LEGAL STANDARD

The Constitution of the United States "imposes a special responsibility on judges whenever it is claimed that a particular communication is [defamatory]." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 505 (1984). For appellate judges, one of these responsibilities is to comply with the "requirement of independent appellate review" as a matter of federal constitutional law. *Id.* at 510. That review must include a reconsideration of the facts, ab initio, relied on by the lower court.

The test for "opinion" is not whether or not a particular statement manifests a personal view. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 26 (1990). Instead, the opinion inquiry seeks to ascertain whether a statement is "verifiable": that is, is the statement capable of being proved true or false. *Id.* The claim that otherwise verifiable facts are matters of opinion is of no avail: publishers cannot avoid liability for defamatory statements simply by couching their factual statements as subjective opinion. *Milkovich*, 497 U.S. at 19.

The most "verifiable" of all statements are those where the actions described are captured on video. When video evidence and witness narratives conflict, the court must "view the facts in the light depicted by the videotape." *Hall v. Wash.*

*Metro. Area Transit Auth.*, 33 F. Supp. 3d 630, 632 (D. Md. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)); *Buckman v. Morris*, 736 F. App'x 852, 853-54 (11th Cir. 2018) (holding summary judgment appropriate where video contradicted prisoner's claim that officers repeatedly hit and kicked prisoner). Video evidence makes statements easily verifiable and, at the summary judgment stage, takes precedence over verbal spin or contrary statements. *Hanson v. Madison Cty. Det. Crt.*, 736 F. App'x 521, 527 (6th Cir. 2018) ("Where, as here, there is a videotape capturing the events in question, the court must view those facts in the light depicted by the videotape.").

To determine verifiability, *Milkovich* requires courts to focus not only on the statement itself, but also on the entire context in which the statement was made. The only statements that qualify as constitutionally protected opinion are those that cannot reasonably be interpreted as stating facts. *Milkovich*, 497 U.S. at 3, 16-17. In other words, in any grey area between fact and opinion, it is only if the fact-finder "cannot reasonably interpret" the statement as stating facts that the court is to decide that the statement constitutes opinion. *Id.* Even if the trial judge might reach a different conclusion, as long as the reasonable jury could "reasonably interpret" the statement as fact, then the court must not preclude or usurp the jury's determination of the issue. The type of writing is also an important consideration in separating fact and opinion: while editorials, cartoons, or humorous pieces are likely to contain

opinion, reportage describing completed events is intended to convey factual information. *Id.* at 32 (internal citations omitted).

In a summary judgment proceeding, the trial court must view the evidence "in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences." *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007). Kentucky law applies to a court sitting in diversity. *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003). This Court's standard of review of a grant of summary judgment is de novo. *E.g.*, *Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017).

The defendants below complained that they could not report Phillips' defamatory statements without risking liability. That is not correct. The defendants cannot report Phillips' defamatory statements without first taking reasonable care. Kentucky law does not afford the defendants the luxury of publishing defamatory statements without reasonable investigation. *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 886 (Ky. 1981) (adopting negligence standard and holding that such is "measured by what a reasonably prudent person would or would not have done under thee same or similar circumstances"). Under Kentucky law, it does not matter whether the statement was made quoting another person, another media outlet, or was later qualified, short of a retraction. It does not matter if the article, taken as a whole, appears "neutral." Like most states, Kentucky

has expressly and flatly rejected the doctrine of "neutral reportage." *Id.* at 886-87. A newspaper is liable for quoting "newsworthy statements" of third parties. *Id.* Kentucky law requires reporters and publishers to first perform a reasonable investigation of the truthfulness of defamatory accusations before publishing them. In the context of highly defamatory statements about a Kentucky youth, particularly one whom the defendants' publications identified, both by name and appearance, a simple internet search would have avoided any injury from Phillips' fabrications.

## ARGUMENT

### I.    The District Court Applied an Incorrect Legal Standard

In its Opinion and Order, the District Court stated that it had reviewed the submitted video evidence and had drawn several factual conclusions from that evidence. Chief among the conclusions reached by the District Court was the following determinations. "Phillips came to a stop directly in front of Sandmann. As Phillips approached, Sandmann subtly adjusted his footing, but it is unclear if he actually moved from where he stood." (Mem. Op. & Order, *New York Times*, RE 81, Page ID# 2340). In addition, the Court found that "Sandmann also did not change his position while Phillips played his drum, although it was within inches of Sandmann's face." (*Id.*). These factual conclusions, according to the Court, are "clearly shown [by the videos] and not subject to reasonable dispute." (*Id.* at Page ID# 2339).

These factual findings alone should have resolved the issue. All that is constitutionally required is that the statement be "sufficiently factual" to be "susceptible of being proved true or false." *Milkovich*, 497 U.S. at 21. The *Milkovich* standard recognizes that many statements might be seen as either factual or opinion; as long as a statement is "sufficiently factual," then it is without constitutional protection. As *Milkovich* instructs, the trial court's role is to decide only if the statement is "sufficiently factual" to go to the jury to determine its truth or falsity; in other words, the trial court is to preclude liability on the grounds of "opinion" only if the statement is not "sufficiently factual." The jury should be allowed to resolve the issue if a "reasonable factfinder could conclude that the challenged statement connotes actual, objectively verifiable facts." *Compuware Corp. v. Moody's Inv'rs Servs.*, 499 F.3d 520, 529 (6th Cir. 2007) (citing *Parks v. LaFace Records*, 329 F.3d 437, 462 (6th Cir. 2003)). As long as a finding of "fact" would be reasonable, the trial court is obligated to allow the jury to make that decision. Here, the District Court's factual determinations perforce indicate that the decisions about Sandmann's movements are "sufficiently factual" to be actionable. Whether a statement constitutes protected opinion is a question of law for the court to decide; but in so deciding, the court must apply the correct legal standard: if a statement is "sufficiently factual," then it is not constitutionally protected.

This Court's recent decision in *Croce v. Sanders*, 843 F. App'x 710 (6th Cir. 2021), militates against the District Court's decision. In *Croce*, the defendant biologist had accused a fellow researcher of using "falsified data and plagiarism" in his publications," which, in the view of the defendant, constituted "a reckless disregard for the truth." *Croce*, 843 F. App'x at 714. Yet it was only the "reckless disregard" statement that served as the basis for claimed liability; the statements about "falsified data and plagiarism" constituted the disclosed facts that underlay the opinion. *Id.* ("[t]here is no clear point at which careless conduct becomes reckless, and the reasonable reader understands that"). Similarly, the defendant's statements that the plaintiff had committed "image fabrication, duplication and mishandling, and plagiarism" were factual; the defendant's characterization of those incidents as "routine" was a matter of opinion, and not actionable, as the opinion was based on the disclosed facts. *Id.* at 715 ("'In [the defendant's] observation,' the rate of image manipulation and plagiarism is high enough to be called routine. . . . That is an expression of opinion . . . ."). As the Court noted in *Croce*, the relevant legal standard is the understanding of the "reasonable reader." *Id.* at 714.

The statements at issue in this case are like the factual accusations in *Croce*, and indeed even more clearly factual. Phillips' vivid and detailed account of his encounter with Sandmann describes specific movements of people, providing a blow-by-blow of the fiction Phillips conveyed to the eager media.

> PHILLIPS: "[Nicholas] just stood in front of me, and when the others were moving aside and letting me go, he decided that he wasn't gonna do that. You know, I tried to, when I was coming up the steps, I seen him start putting himself in front of me, so I slided to the right, and he slided to the right. I slided to the left and he slided to the left – so by the time I got up to him, we were right in front of him. He just positioned himself to make sure that he aligned himself with me so that he stopped my exit."

(*CBS News*, RE 60-2, Page ID# 1206; Mem. Op. & Order, *New York Times¸* RE 81, Page ID# 2345), and:

> "It was getting ugly, and I was thinking: 'I've got to find myself an exit out of this situation and finish my song at the Lincoln Memorial,'" Mr. Phillips told The Post. "I started going that way, and that guy in the hat stood in my way and we were at an impasse. He just blocked my way and wouldn't allow me to retreat."

(Mem. Op. & Order, *New York Times¸* RE 81, Page ID# 2345).

Unlike the imprecise phrase "reckless disregard" or the generalized characterization of "routine" at issue in *Croce*, the words at issue here ("slide left," "slide right," "block") convey no such value-laden subjectivity. Whether or not a particular person moved to the left, for example, involves no value judgments at all. It conveys no imprecision nor does it signal any subjectivity. The determination may be a close one, and indeed may even be difficult to determine, but that is of no matter: factual questions can be close questions. Even if close it is "sufficiently factual" to present a jury question.

The correct legal standard is clear: matters that might fall between fact and opinion are to be resolved by the jury if they are "sufficiently factual." A statement

18

is actionable if "the statement in question makes an assertion of fact – that is, an assertion that is capable of being proved objectively incorrect" or otherwise "connotes actual, objectively verifiable facts." *Clark v. Viacom Int'l, Inc.*, 617 F. App'x 495, 508 (6th Cir. 2015) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)); *Compuware Corp. v. Moody's Investors Servs.*, 499 F.3d 520, 529 (6th Cir. 2007). Kentucky adheres to *Milkovich's* "provable as false" standard. *Sandmann v. WP Company, LLC*, E.D. Ky. Case No. 2:19-cv-19 (RE 47; Page ID# 453) (citing *Welch v. American Publ'g Co.*, 3 S.W.3d 724, 730 (Ky. 1999); *Williams v. Blackwell*, 487 S.W.3d 451, 454 (Ky. Ct. App. 2016); *Cromity v. Meiners*, 494 S.W.3d 499, 503-04 (Ky. Ct. App. 2015)). The trial court is not to resolve factual matters on the basis of mere pleadings and summary evidence. The District Court's failure to adhere to the proper legal standard is reversible error.

## II.    The District Court's Opinion Would Create an Impossible Obstacle to Defamation Liability

The District Court held that, when Phillips described Sandmann as "slid[ing]" "left" and then "slid[ing] right," thereby "position[ing] himself" in front of Phillips in order to "block" him and "stop[] his exit," that Phillips was "simply giving his perspective" on the incident, and thus uttering a constitutionally protected opinion. The District Court's conclusion proves too much. Any observation about the external world could, in an abstract theoretical sense, be characterized as a mere "perspective," as if no objective or verifiable factual reality exists at all. The law

19

rejects such abject subjectivism. Simply couching one's factual descriptions with "in my opinion" or "I think" does not exonerate the speaker from defamation liability. *Milkovich*, 497 U.S. at 19. As Judge Friendly cautioned, speakers should not be considered to have converted statements of fact into opinions so easily. *Cianci v. New Times Pub. Co.*, 639 F.2d 54, 64 (2d Cir. 1980) (Friendly, J.) ("It would be destructive of the law of libel if a writer could escape liability for accusations of crime simply by using, explicitly or implicitly, the words 'I think.'").

The test is not whether reasonable observers or readers might differ in their interpretation or perspective on a factual matter; the test is whether the matter is issue is sufficiently factual to be capable of being proved true or false. Many factual perspectives, upon examination and proof, are proved to be false. It might be one's "perspective" that a scientific researcher engaged in "image fabrication, duplication and mishandling," for example; nonetheless evidence can be adduced to prove that the researcher in fact did so or did not. A "perspective" involving factual claims can be subject to verification.

The District Court's opinion reflects an epistemology that is not relevant in a court of law. A philosopher might argue that all statements about the factual world are, in some abstract sense, "mere opinion."[9] Courts of law, however, are required

_____

[9] George Berkeley, A Treatise Concerning the Principles of Human Knowledge ("[i]t is indeed an opinion strangely prevailing amongst men, that

to separate statements that are opinions in the everyday world from those that are factual, to apply the perspective of the "average reader" to distinguish fact and opinion, to separate what is capable of being "true or false" from what is just another position in an ongoing debate.[10] In other words, the legal standard that divides facts and opinions presumes that there are such things as "facts," and that "facts" exist independently of our perceptions of or perspectives on them. In a court of law, facts exist, even if witnesses disagree about what they saw or heard.

To state that one person "blocked" another, and that he did so by "sliding left and right" in order to stay in front of the other person, is a statement of fact. It is a statement about the physical world, taken directly from our sensory perception of it. The "block" happened or it did not. The "slide" either occurred or did not. These are matters that are readily observable by any bystander; to slide and to block connotes the oppositional position of two human bodies; it requires a certain pose of belligerence on the part of one toward another; it is something that all of us, at some time in our lives, have either done or had done to us. If asked, we would recount such an activity without the need for elaboration: "Then Adam blocked Ben from

---

houses, mountains, rivers, and in a word all sensible objects have an existence natural or real, distinct from their being perceived by the understanding.").

[10] The alleged defamatory words must be measured by their natural and probable effect on the mind of the average lay reader and not be subjected to the critical analysis of the legal mind. *Digest Publishing Company v. Perry Publishing Co.*, 284 S.W.2d 832 (Ky. 1955).

leaving," one might say. No listener, hearing this description, would be left with a need for additional explanation to understand the speaker. We could all immediately picture the scene, with Adam standing in Ben's way as Ben tried to leave. The same is true of Adam sliding left and right to stay in Ben's way; the same is true of not letting someone "escape." These are factual descriptions of reality and commonly understood as such.

For instance, when a lay witness testifies, "I smelled smoke," the witness of course could be truthful or untruthful, or mistaken or lying. But the speaker cannot be accused of uttering an opinion, because no additional explanation or "why do you say that?" is expected or possible. We first observe through our senses, then our senses identify the observation to our mind, and next we speak: "I smell smoke." How else could we explain such a thing? What does smoke smell like? No one can say, except circularly, that smoke smells like smoke. The same is true of "blocking" or "sliding." We can add words to the explanation, thus using other words to define "blocking," but in the end all we can say is that "blocking" means that one person stood in the way of another, or "blocked" her. It is a circular explanation, and it's circular because it is a statement of fact. We don't have words in common usage that explicate facts at a more basic level than the fact itself. The alleged defamatory words must be measured by their natural and probable effect on the mind of the average lay

reader and not be subjected to the critical analysis of the legal mind. *E.g.*, *Digest Publishing Company v. Perry Publishing Co.*, 284 S.W.2d 832, 834 (Ky. 1955).

Even sensory impressions can differ; such difference does not convert sensory impressions into "opinions" of the sort that merit constitutional protection. A fact drawn from direct sensory data is a human being's most basic unit of description. It would be nonsensical to ask a speaker who said another blocked his path, "what do you mean by 'blocked'?" The answer could only repeat the word "block" or provide the dictionary definition of it, along the lines of "he stood in my way to prevent me from advancing," which is "blocked" in so many words. Statements of fact are the way we describe matters that are rationally based on perception. Statements of fact can be true or false, or the speaker could be lying or mistaken, but in no sense does a statement of fact become an opinion just because people might disagree about what they did or saw or smelled. The necessary subjectivity of our sensory perceptions does not convert a sense impression into a matter of opinion. If it did, then no statements of fact would exist. All would be "mere perspective."

When one says that someone "blocks" another, it is direct observation taken from sensory data. It is of no significance that the statement describes the conduct of another, or that it even refers, indirectly, to another's implicit intentions; in fact, that is typically the case. The Restatement (Second) of Torts § 565 defines "statements

23

of fact" for defamation law: "Statements of fact, the communication of which is defamatory, usually concern the conduct or character of another."

The District Court stated that "a reasonable reader would understand that Phillips was simply conveying his view of the situation." (Mem. Op. & Order, *New York Times*, RE 81, Page ID# 2346). Because the incident between Phillips and Sandmann occurred on the steps of the Lincoln Memorial, the District Court reasoned, the reasonable reader "would know that the confrontation occurred in an expansive area such that it would be difficult to know what might constitute 'blocking' another person in that setting." (*Id.*). Just because a factual determination might be "difficult," however, is not grounds for ruling that a factual matter is all a matter of opinion. Juries are asked to resolve difficult factual issues all the time. Indeed, the District Court's premise is questionable: without instruction, it is doubtful that many reasonable readers across the nation would know that the steps of the Lincoln Memorial are over one-hundred-feet wide, making "blocking" nearly impossible, whereas the steps of the Jefferson Memorial, by comparison, are but a small fraction of that width.

People use the word "block" in everyday discourse. Everyone understands and could describe the facts it denotes: a car parked in a driveway could "block" another from leaving; but a car parked in the middle of an empty parking lot could not be said to "block" another car, even if that other car's driver were intent on

24

driving directly through the parked car's space. These are factual terms. They are easily capable of being proved true or false. A jury would be well-positioned to pronounce on this issue. The Plaintiff's linguistic expert, Dr. Craige Roberts, describes the blocking statements as susceptible to determining "truth conditions," which she terms "purely descriptive." (Roberts Deposition Transcript ("Roberts Dep."), *New York Times*, RE 52-3, Page ID# 629). "Block" is a descriptive term; it is, as the District Court noted, a transitive verb. *Sandmann v. WP Company, LLC*, Case No. 2:19-cv-19 (RE 47; Page ID# 460). It refers to a real, observable, physical juxtaposition of human bodies. Either Sandmann blocked Phillips, or he did not.

Judicial opinions from other jurisdictions provide examples of statements far more subjective than "blocking" that were held to be statements of fact. The statement that plaintiff was a "liar" who committed perjury was held to be a statement of fact. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990). The statement that an "employee is extremely confrontational and exhibiting constant insubordinate behavior" was held to be a statement of fact. *McCray v. Infused Solutions, LLC*, No.4:14-cv-158, 2018 U.S. Dist. LEXIS 88645, at *25 (E.D. Va. May 25, 2018). A supervisory attorney's statement that associate "did nothing" to solve a statute of limitations problem constituted statement of fact. *Mittelman v. Witous*, 552 N.E.2d 973, 983, 985-86 (Ill. 1989). A statement to a newspaper that employee was terminated for "poor performance" was statement of fact. *Samuels v.*

*Tschechtelin*, 763 S.2d 209, 242 (Md. Ct. Spec. App. 2000). A statement that plaintiff "told anti-Semitic jokes" was a statement of fact. *Tech Plus, Inc. v. Ansel*, 793 N.E.2d 1256, 1266 (Mass. App. Ct. 2003). All of these statements could be proved true or false; in each instance, the speaker could be a liar or mistaken in his perception of reality. Nonetheless, all were statements of fact.

The U.S. Supreme Court has created a careful balance between the traditional tort of defamation and the First Amendment to the U.S. Constitution. Part of that balance is the protection of "opinion" from the encroachment of state tort liability. The Court has not defined "opinion" in the utterly subjective manner described by the District Court in this case; that definition encroaches too far on state tort law. Instead, the Supreme Court has made clear that any statement that is "sufficiently factual" remains actionable, and not subject to the "opinion" defense. *Milkovich*, 497 U.S. at 21. The District Court's determination that patently factual statements constitute "opinions" extends the constitutional defense far beyond its intended and literal application, over-stepping the delicate balance struck over decades of Supreme Court jurisprudence. The District Court's conclusion should be reversed.

## III.    The District Court Misapplied Kentucky Defamation Law

Kentucky has expressly rejected the four-part test for "opinion" articulated in *Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984). *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989). The *Ollman* test gives the trial judge wide discretion in deciding

whether or not a particular statement constitutes fact or opinion. Instead, Kentucky has adopted the more stringent categories outlined in the Restatement. *Yancey*, 786 S.W.2d at 857 ("[t]he drafters of *The Restatement (Second) of Torts* developed a somewhat different approach to the fact-opinion distinction which we believe to be sound, and thus hereby adopt"). In dividing facts and opinions, the Restatement creates a third category of statements, what it calls "mixed opinions," that can also be actionable. These "mixed opinions" can provide the ground for defamation suits where statements of opinion imply undisclosed defamatory facts. According to the Restatement, it is only "pure opinions" that enjoy absolute constitutional protection. *Yancey*, 786 S.W.2d at 857; Restatement (Second) of Torts § 566, cmt. c.

Thus, under the Restatement approach, the speaker can be liable in two situations: first, if the speaker conveys a factual defamatory statement, then the statement is actionable unless "it is clear from the context that the [speaker] is not intending to assert [an] objective fact . . . ." *Id.*, cmt. b. Second, if the speaker states an opinion, but the opinion implies undisclosed defamatory facts, then the speaker is liable for those statements as well. *Id.*

The District Court opinion did not discuss the categories articulated in the Restatement. Instead, the District Court determined that Phillips' statements about Sandmann's physical movements constituted constitutionally protected opinion, simpliciter. The District Court stated that Phillips' statements were not statements of

27

fact; it also stated they "did not imply the existence of any nondisclosed defamatory facts." (Mem. Op. & Order, *New York Times*, RE 81, Page ID# 2349). Thus, the only category left for constitutional protection was "pure opinion."

The District Court's determination that Phillips' graphic description of real events constitutes "pure opinion" stretches word meaning beyond plausible limitations. The implicit determination of "pure opinion" stands in sharp contrast to the evident intent of the speaker. In his comments, immediately re-published without investigation by the media defendants, Phillips provided a description of what he intended to be objective fact. He stated that Sandmann blocked his path, slid to the left and right to mirror Phillips' movements, and prevented his escape. "[Sandmann] just positioned himself to make sure that he aligned himself with me so that he stopped my exit." (*CBS News*, RE 60-2, Page ID# 1206). Phillips' vivid description of his and Sandmann's movements were intended to convey objective facts, specifically the movement of Sandmann. To read these statements, and to determine that they are not statements of fact, nor even statements of mixed opinion, but rather are pure opinion subject to full constitutional immunity, is reversible error.

The District Court referred to its review of the publication "as a whole" to determine the fact/opinion issue. Phillips' statements were unmistakably intended to be descriptive, not opinion. Opinion statements are those couched in language that clearly connotes their opinion status. *Scott v. The News-Herald*, 496 N.E.2d 699, 708

(Ohio 1986) ("A review of the context of the statements in question demonstrates that [the writer] is not making an attempt to be impartial and no secret is made of his bias."). In *Scott*, the court reasoned that, because the article appeared in the sports pages, a place of common jocularity, was headlined in an editorial style, and contained a great deal of qualifying language, the speaker was uttering an opinion. *Id.* at 708-09.

Nathan Phillips was not speaking jocularly nor offering a comment. Phillips accused the plaintiff of blocking him and preventing his retreat, and so stated, without qualification or ambiguity. Phillips did not mince words, try to hide his meaning, or stop short of accusatory language. It does not matter that other observers and participants described the scene differently. What does matter is that Phillips described a real event in factual terms and that the defendants published his factual statements without reasonable inquiry. Nothing else the defendants published, no other words or descriptions, change the character of Phillips' account.

The words Phillips used convey factual events. "Block" is a transitive verb. Transitive verbs require an object to receive the action of the verb.[11] Thus, by definition, a transitive verb refers to an external object, something apart from the

_____

[11] *E.g.*, Walden University, *Grammar: Transitive and Intransitive Verbs*, https://academicguides.waldenu.edu/writingcenter/grammar/verbs#:~:text=Preposit ions,Transitive%20Verbs,object%20to%20receive%20the%20action (last visited Feb. 9, 2022).

verb, to provide the thing on which verb acts or impacts. To "block" means to "block something or someone." It would make no sense to say one "blocks," without reference to the thing that is blocked. Similarly, "sliding" also, here implicitly, connotes something along which the subject moves, such as a floor or stage. This is an active verb, and is consistent with factual description.

Under Kentucky law, to publish a defamatory statement is itself defamatory, unless reasonable investigation is first made. If the statement is factual in nature, then it is actionable if it is false, defamatory, and published with fault.[12]

---

[12] The District Court stated repeatedly that the statements were defamatory. "[S]tatements that plaintiff 'blocked' Phillips or did not allow him to retreat, if false, meet the test of being libelous per se . . . ." *Sandmann v. NBCUniversal, LLC*, E.D. Ky. Case No. 2:19-cv-00056 (RE 43, Page ID# 755), adopted by reference and reaffirmed in *New York Times*, RE 28, Page ID# 217) ("[T]he Court has ruled in companion cases that the [blocked/retreat] statement is libelous. The Court continues to hold that opinion for the reason stated in such preceding cases."); *CBS News*, RE 34, Page ID# 273 ("[T]he Court has ruled in companion cases that similar publications are libelous. The Court continues to hold that opinion for the reasons stated in such preceding cases."); *ABC News*¸ RE 36, Page ID# 315 ("[T]he Court has ruled in companion cases that the [blocked/retreat] statement is libelous. The Court continues to hold that opinion for the reasons stated in such preceding cases."); *Rolling Stone, LLC*, RE 35, Page ID# 276 ("[T]he Court has ruled in companion cases that the [blocked/retreat] statement is libelous. The Court continues to hold that opinion for the reason stated in such preceding cases.").

## IV.    The District Court Erred in Not Applying the "Law of the Case"

### 1.    Standard of Review

The standard of review of the District Court's decision not to apply the "law-of-the-case" doctrine is the "abuse of discretion" standard.  *Hagan v. Baird (In re B & P Baird Hldgs., Inc.)*, 759 F. App'x 468, 477 (6th Cir. 2019).

### 2.    The Law of the Case

The "law of the case" provides that a court should not "reconsider a matter once resolved in a continuing proceeding." *E.g., Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015). The purpose of the doctrine is to ensure that the same issues presented a second time in the same case in the same court should lead to the same result. *Id.* (internal citations omitted) (emphasis omitted); *Polec v. Northwest Airlines (In re Air Crash Disaster),* 86 F.3d 498, 539 (6th Cir. 1996) ("Under the law of the case doctrine, rulings made at one point in a litigation can become operative law for subsequent portions of the litigation.") (internal citations omitted); *GMAC Mortg., LLC v. McKeever*, No. 08-459-JBC, 2010 U.S. Dist. LEXIS 118618, at *5 (E.D. Ky. Nov. 8, 2010) ("The law of the case doctrine is narrower than claim preclusion and is generally limited to those issues which have previously decided by the same or a higher court.").

The law of the case doctrine applies in the same proceeding in the same court. It applies to issues that were decided explicitly or were decided by "necessary implication." As this Court recently stated:

> The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.". . . . Put another way, "[t]he law-of-the-case doctrine precludes reconsideration of issues decided at an earlier stage of the case." "The doctrine applies only to issues that were actually decided, *whether explicitly or by necessary implication*."

*Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (internal citations omitted) (emphasis added). The doctrine applies to issues decided explicitly, plus those that follow "by necessary implication." *E.g., Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997); *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006); *Clark v. Johnston*, No. 13-3581, 2014 U.S. App. LEXIS 25019, at *6 (6th Cir. June 16, 2014) (internal citations omitted).

The law of the case doctrine can be disregarded only when the court has "a clear conviction of error" with respect to a point of law on which its previous decision was predicated. *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citing *Fogel v. Chestnutt*, 668 F.2d 100 (2d Cir. 1981) (Friendly, J.)). The law of the case doctrine precludes reconsideration of a previously decided issue unless one of three "exceptional circumstances" exists: (1) where controlling law has been changed by an intervening decision of a higher court; (2) when relevant evidence is newly available; or (3) where a prior decision is clearly erroneous and

would work a manifest injustice. *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (citing *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997)) (quotations in original).

The law of the case doctrine promotes the efficient use of judicial and litigation resources. *Campbell v. Republican Cent. Commt.*, E.D. Ky. No. 05-293, 2010 U.S. Dist. LEXIS 5400, at *7 (Jan. 25, 2010) (citing *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) ("findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation")). Although the law of the case doctrine does not divest the federal court of its inherent power to amend its orders, see *United States v. Kentucky Util. Co.*, 124 F.R.D. 146, 153, n.1 (E.D. Ky. 1989), policy considerations support application of the law of the case doctrine. The doctrine promotes efficiency, good order, and precludes needless duplication of effort by courts and litigants. Most importantly, adherence to the law of the case furthers the goal of consistency in judicial decisions, allowing lawyers and their clients to rely on established rulings as the case progresses through motions and discovery. *See* Joan Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation*, 135 U. Pa. L. Rev. 595, 598 (1987).

3.    **The District Court Erred in Not Applying the Law of the Case Doctrine**

On multiple prior occasions, the parties briefed and the District Court ruled on the "opinion" defense. In its first order in these litigations, the Court ruled that the blocked/retreat statements constituted "opinion" that is immune from defamation liability. *Sandmann v. WP Company, LLC*, E.D. Ky. Case No. 2:19-cv-00019 (RE 47, Page ID# 460). In its reconsideration of its initial order, and after a second round of briefing and argument on this issue, the Court reversed itself, determining that the "blocked/retreat" statements provided a basis for liability. *Id.* (RE 64, Page ID# 861); *Sandmann v. NBCUniversal, LLC*, E.D. Ky. Case No. 2:19-cv-00056 (RE 43, Page ID# 755). It subsequently ordered the parties to conduct discovery on the truth or substantial truth of the blocked/retreat statements.[13] *Sandmann v. WP Company, LLC*, E.D. Ky. Case No. 2:19-cv-00019 (RE 64, Page ID# 861); *Sandmann v. Cable News Network, Inc.*, E.D. Ky. Case No. 2:19-cv-00031 (RE 43, Page ID# 597). This reversal and discovery order by necessary implication meant that the Court reversed its "opinion" decision and ruled that the blocked/retreat statements constitute factual statements. Otherwise, the Court's directive to the parties to conduct discovery to

---

[13] Phase One of discovery was limited to the issue of "truth," specifically to "whether Nathan Phillips' statement that Plaintiff 'blocked' him or 'prevented him from retreating' . . . are true or substantially true, or otherwise not actionable based on the undisputed facts developed during initial discovery and the issues defined in the Court's prior decisions." *New York Times*, RE 38; *CBS News*, RE 44; *ABC News*, RE 49; *Gannett*, RE 50; *Rolling Stone*, RE 45.

determine the truth or falsity of those statements would be incomprehensible.[14] It would make no sense for the Court to order discovery on this factual issue if the statements constituted non-verifiable opinion in the first place. A statement of fact, and only a statement of fact, is capable of being proven true or false.

As the Court explained in its Order in the CNN litigation:

> All the claims in the proposed amended complaint turn on determining the truth of what happened in the confrontation between plaintiff and Mr. Phillips. Without going into detail, if some of the statements made by Mr. Phillips are false, they are also potentially libelous.

*Sandmann v. Cable News Network, Inc.*, E.D. Ky. Case No. 2:19-cv-00031 (RE 43; Page ID# 596). Phillips' statements are potentially libelous if they are false. *See also Sandmann v. NBCUniversal, LLC*, E.D. Ky. Case No. 2:19-cv-00056 (RE 43, Page ID# 755). In other words, the Court's decision is based on the understanding that the antecedent legal issue of "opinion" had been resolved. All the claims now "turn," as the Court noted, on the truth of what happened in the confrontation between Nicholas and Phillips.

The District Court's discovery order was based on its implicit holding that the block/retreat statements are statements of fact; the Court sent the parties to discovery to determine if the factual statements were true:

> As in the Washington Post case, the Court believes that discovery is necessary to determine what happened in the unfortunate events which

---

[14] *New York Times*, RE 38; *CBS News*, RE 44; *ABC News*, RE 49; *Gannett*, RE 50; *Rolling Stone*, RE 45.

> give rise to this litigation, and, to determine whether defendant accurately reported them, and, if it failed to do so, whether the failure was due to negligence or malice. Naturally, following a sufficient period for discovery, these issues will again be reviewed at the summary judgment phase under a more stringent standard.

*Sandmann v. Cable News Network, Inc.*, E.D. Ky. Case No. 2:19-cv-00031 (RE 43, Page ID# 597). "These issues" that remain unresolved are listed: did the Defendants "accurately" report on "what happened," and if not, was there fault arising from "negligence or malice." The District Court did not order discovery on the fact/opinion issue; it would have made no sense if it had, as nothing the parties could learn in discovery would impact this question of law. The District Court would not have ordered a year's worth of discovery only to revisit a purely legal question already determined at the pleading stage.

The Magistrate Judge's Scheduling Order provides additional evidence that all parties and the Court understood the fact/opinion issue as decided. The Scheduling Order, which was entered in all five pending cases, states that parties have agreed that "Phase One" of the discovery process will be "limited 'to facts pertaining to the encounter between Plaintiff and Mr. Nathan Phillips'" and that this Phase "will be directed to 'whether Nathan Phillips' statements that Plaintiff "blocked" him or "prevented him from retreating" (the "Blocking Statements") are true or substantially true, or otherwise not actionable based on the undisputed facts developed during initial discovery and the issues defined in the Court's prior

36

decisions.'"[15] Only facts can be verified by evidence. Opinions are statements of belief, attitude, value, or judgment. No court would order discovery to determine whether or not a statement constituted protected opinion.

None of the exceptions to the "law of the case" apply. There has been no change in law and no claim of "clear error" or "manifest injustice" in this Court's prior rulings. No new evidence has been produced. New evidence must be relevant evidence, and by definition no factual evidence, such the deposition testimony of the parties or bystanders, is relevant to the legal question about whether the published statements constitute opinion or fact. The Court's rulings were legal rulings, not factual ones. Extrinsic evidence, such as statements by bystanders or others, is not part of the court's consideration.

In the context of this litigation, for the District Court to have unwound its prior ruling was especially wasteful. In response to the Court's prior determination and orders, the parties spent the majority of 2021 conducting extensive discovery on the truth or falsity of the slide/blocked/retreat statements. It would have been pointless to conduct discovery on the issue of the truth or falsity of statements if the statements were not capable of being proved true or false in the first place. The planned

---

[15] *New York Times*, RE 38; *CBS News*, RE 44; *ABC News*, RE 49; *Gannett*, RE 50; *Rolling Stone*, RE 45.

summary judgment motions, coming at the tail end of the first phase of discovery, were to be limited to the issue of the truth or falsity of the defendants' statements.

## CONCLUSION

For the reasons stated above, the District Court erred when it granted summary judgment to the defendants.  Therefore, this Court should reverse the District Court's Memorandum Opinion and Order granting summary judgment to the defendants and remand these cases to the District Court for further proceedings consistent with this Court's opinion.

Respectfully submitted,

*/s/ Todd V. McMurtry*
TODD V. MCMURTRY, ESQ.
JEFFREY A. STANDEN, ESQ.
J. WILL HUBER, ESQ.
HEMMER DEFRANK WESSELS, PLLC
250 Grandview Drive, Suite 500
Fort Mitchell, Kentucky 41017
Phone: (859) 344-1188
Fax: (859) 578-3869
tmcmurtry@hemmerlaw.com
jstanden@hemmerlaw.com
whuber@hemmerlaw.com

*Attorneys for Plaintiff-Appellant*
*Nicholas Sandmann*

## CERTIFICATE OF COMPLIANCE

1.       This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 6 Cir. R. 32(b) because it contains 9,396 words, including footnotes, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.       This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


Dated:  October 24, 2022                 */s/ Todd V. McMurtry*_____
                                         Todd V. McMurtry

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was electronically filed and served to counsel for Defendants-Appellees by notice through the Court's CM/ECF system this 24th day of October, 2022.

*/s/ Todd V. McMurtry*
Todd V. McMurtry

**ADDENDUM**

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

| | *Sandmann v. New York Times Co.* | |
| | *No. 22-5734, District Court No. 2:20-cv-00023* | |
|---|---|---|
| **RE** | **Description** | **PageID#** |
| 1 | Complaint | 1-103 |
| 18 | Defendant's Motion to Dismiss | 134-161 |
| 25 | Plaintiff's Memorandum in Opposition to Motion to Dismiss | 172-198 |
| 26 | Defendant's Reply in Support of Motion to Dismiss | 199-209 |
| 27 | Opinion & Order re Motion to Dismiss | 210-215 |
| 49-50 | Joint Stipulation Regarding Authenticity and Admissibility of Videos | 373-382 |
| 52 | Plaintiff's Motion for Partial Summary Judgment | 393-657 |
| 52-3 | Deposition Excerpts and Report of Dr. Craige Roberts | 493-652 |
| 53-54 | Defendant's Motion for Summary Judgment | 658-1092 |
| 61 | Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment | 1101-1363 |
| 62 | Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion for Summary | 1364-1378 |
| 63 | Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment | 1379-1470 |
| 68 | Plaintiff's Reply in Support of Plaintiff's Motion for Partial Summary Judgment | 1833-1904 |
| 70 | Defendant's Reply in Support of Defendant's Motion for Summary Judgment | 2040-2080 |
| 71 | Defendant's Supplemental Reply in Support of Defendant's Motion for Summary Judgment | 2081-2086 |

| 74 | Notice of Filing Deposition of Nicholas Sandmann | 2112-2309 |
| 81 | Opinion & Order re Motions for Summary Judgment | 2331-2351 |
| 83 | Notice of Appeal | 2353-2354 |

| *Sandmann v. CBS News, Inc., et al.* <br> *No. 22-5735, District Court No. 2:20-cv-00024* | | |
|---|---|---|
| **RE** | **Description** | **PageID#** |
| 1 | Complaint | 1-104 |
| 21 | Defendants' Motion to Dismiss | 164-202 |
| 31 | Plaintiff's Memorandum in Opposition to Motion to Dismiss | 222-248 |
| 32 | Defendants' Reply in Support of Motion to Dismiss | 249-265 |
| 34 | Opinion & Order re Motion to Dismiss | 272-277 |
| 54-55 | Joint Stipulation Regarding Authenticity and Admissibility of Videos | 471-480 |
| 58 | Plaintiff's Motion for Partial Summary Judgment | 501-765 |
| 58-3 | Deposition Excerpts and Report of Dr. Craige Roberts | 601-760 |
| 59 & 60 | Defendants' Motion for Summary Judgment | 766-1216 |
| 69 | Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment | 1227-1489 |
| 70 | Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion for Summary | 1490-1504 |
| 71 | Defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment | 1505-1597 |
| 75 | Plaintiff's Reply in Support of Plaintiff's Motion for Partial Summary Judgment | 1956-2027 |
| 77 | Defendants' Reply in Support of Defendants' Motion for Summary Judgment | 2163-2203 |

Add. 2

| 78 | Defendants' Supplemental Reply in Support of Defendants' Motion for Summary Judgment | 2204-2215 |
| 83 | Notice of Filing of Deposition of Nicholas Sandmann | 2294-2840 |
| 90 | Opinion & Order re Motions for Summary Judgment | 2862-2882 |
| 92 | Notice of Appeal | 2884-2885 |

| | ***Sandmann v. ABC News, Inc., et al.*** *No. 22-5736, District Court No. 2:20-cv-00025* | |
|---|---|---|
| **RE** | **Description** | **PageID#** |
| 1 | Complaint | 1-150 |
| 16 | Defendants' Motion to Dismiss | 185-231 |
| 34 | Plaintiff's Memorandum in Opposition to Motion to Dismiss | 270-296 |
| 35 | Defendants' Reply in Support of Motion to Dismiss | 297-313 |
| 36 | Opinion & Order re Motion to Dismiss | 314-319 |
| 61-62 | Joint Stipulation Regarding Authenticity and Admissibility of Videos | 474-483 |
| 64 | Plaintiff's Motion for Partial Summary Judgment | 494-758 |
| 64-3 | Deposition Excerpts and Report of Dr. Craige Roberts | 594-753 |
| 65 & 66 | Defendants' Motion for Summary Judgment | 759-1207 |
| 75 | Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment | 1218-1480 |
| 76 | Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion for Summary | 1481-1495 |
| 77 | Defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment | 1496-1588 |
| 81 | Plaintiff's Reply in Support of Plaintiff's Motion for Partial Summary Judgment | 1947-2018 |

| 82 | Defendants' Reply in Support of Defendants' Motion for Summary Judgment | 2019-2059 |
|----|--------------------------------------------------------------------------|-----------|
| 83 | Defendants' Supplemental Reply in Support of Defendants' Motion for Summary Judgment | 2060-2072 |
| 87 | Notice of Filing of Deposition of Nicholas Sandmann | 2233-2779 |
| 94 | Opinion & Order re Motions for Summary Judgment | 2801-2821 |
| 96 | Notice of Appeal | 2823-2824 |

| *Sandmann v. Rolling Stone, LLC, et al.* |||
|------------------------------------------|--|--|
| *No. 22-5737, District Court No. 2:20-cv-00027* |||
| **RE** | **Description** | **PageID#** |
| 1 | Complaint | 1-113 |
| 24 | Defendants' Motion to Dismiss | 173-213 |
| 33 | Plaintiff's Memorandum in Opposition to Motion to Dismiss | 230-256 |
| 34 | Defendants' Reply in Support of Motion to Dismiss | 257-274 |
| 35 | Opinion & Order re Motion to Dismiss | 275-280 |
| 56-57 | Joint Stipulation Regarding Authenticity and Admissibility of Videos | 438-448 |
| 59 | Plaintiff's Motion for Partial Summary Judgment | 460-724 |
| 59-3 | Deposition Excerpts and Report of Dr. Craige Roberts | 560-719 |
| 60 & 61 | Defendants' Motion for Summary Judgment | 725-1197 |
| 69 | Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment | 1215-1477 |
| 70 | Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion for Summary | 1478-1492 |

| 71 | Defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment | 1493-1585 |
| 75 | Plaintiff's Reply in Support of Plaintiff's Motion for Partial Summary Judgment | 1944-2015 |
| 77 | Defendants' Reply in Support of Defendants' Motion for Summary Judgment | 2151-2191 |
| 78 | Defendants' Supplemental Reply in Support of Defendants' Motion for Summary Judgment | 2192-2206 |
| 81 | Notice of Filing of Deposition of Nicholas Sandmann | 2232-2779 |
| 88 | Opinion & Order re Motions for Summary Judgment | 2802-2822 |
| 90 | Notice of Appeal | 2824-2825 |

|  |  |  |
| --- | --- | --- |
| *Sandmann v. Gannett Co., Inc., et al.* *No. 22-5738, District Court No. 2:20-cv-00026* | | |
| **RE** | **Description** | **PageID#** |
| 1 | Complaint | 1-184 |
| 32 | First Amended Complaint | 285-354 |
| 36 | Defendants' Motion to Dismiss | 656-682 |
| 37 | Plaintiff's Memorandum in Opposition to Motion to Dismiss | 683-729 |
| 38 | Defendants' Reply in Support of Motion to Dismiss | 730-745 |
| 39 | Opinion & Order re Motion to Dismiss | 746-752 |
| 61-62 | Joint Stipulation Regarding Authenticity and Admissibility of Videos | 880-889 |
| 65 | Plaintiff's Motion for Partial Summary Judgment | 908-1172 |
| 65-3 | Deposition Excerpts and Report of Dr. Craige Roberts | 1008-1167 |
| 66 & 67 | Defendants' Motion for Summary Judgment | 1173-1620 |

| 75 | Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment | 1629-1891 |
|---|---|---|
| 76 | Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion for Summary | 1892-1906 |
| 77 | Defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment | 1907-1999 |
| 81 | Plaintiff's Reply in Support of Plaintiff's Motion for Partial Summary Judgment | 2358-2429 |
| 83 | Defendants' Reply in Support of Defendant's Motion for Summary Judgment | 2565-2605 |
| 84 | Defendants' Supplemental Reply in Support of Defendants' Motion for Summary Judgment | 2606-2618 |
| 88 | Notice of Filing of Deposition Transcript of Nicholas Sandmann | 2657-3204 |
| 95 | Opinion & Order re Motions for Summary Judgment | 3226-3246 |
| 97 | Notice of Appeal | 3248-3249 |