**Case Nos. 22-5734 / 22-5735 / 22-5736 / 22-5737 / 22-5738**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

NICHOLAS SANDMANN,

*Plaintiff - Appellant,*

v.

NEW YORK TIMES COMPANY
CBS NEWS, INC., *et al.*
ABC NEWS, INC., *et al.*
ROLLING STONE, LLC, *et al.*
GANNETT CO., INC., *et al.*

*Defendants - Appellees.*

On Appeal from the United States District Court for the Eastern District of Kentucky
Honorable William O. Bertelsman, District Judge, Presiding
Case Nos. 2:20-cv-00023, 2:20-cv-00024, 2:20-cv-00025, 2:20-cv-00026, 2:20-cv-00027

**JOINT BRIEF OF APPELLEES NEW YORK TIMES COMPANY; CBS NEWS, INC., ET AL.; ABC NEWS, INC., ET AL.; ROLLING STONE, LLC, ET AL.; AND GANNETT CO., INC., ET AL.**

**ORAL ARGUMENT REQUESTED**

Robert B. Craig
TAFT STETTINIUS & HOLLISTER LLP
50 East RiverCenter Blvd., Suite 850
Covington, KY 41011-1683
Phone: (859) 547-4300
Fax: (513) 381-6613
craigr@taftlaw.com

Nathan Siegel
Meenakshi Krishnan
DAVIS WRIGHT TREMAINE LLP
1301 K St. NW, Suite 500
Washington, DC 20005
Phone: (202) 973-4237
Fax: (202) 973-4437
nathansiegel@dwt.com
meenakshikrishnan@dwt.com

*Attorneys for Appellees ABC News, Inc.,*
*ABC News Interactive,*
*Inc., and The Walt Disney Company*

J. Stephen Smith
Darren W. Ford
GRAYDON HEAD & RITCHEY LLP
2400 Chamber Center Drive, Suite 300
Ft. Mitchell, KY 41017
Phone: (859) 578-3070
Fax: (859) 578-3071
ssmith@graydon.com
dford@graydon.com

John C. Greiner
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
Phone: (513) 629-2734
Fax: (513) 333-4316
jgreiner@graydon.law

Dana R. Green
THE NEW YORK TIMES COMPANY
620 8th Avenue
New York, NY 10018
Phone: (212) 556-5290
Fax: (212) 556-4634
dana.green@nytimes.com

*Attorneys for Appellee The New York Times Company d/b/a The New York Times*

Natalie J. Spears
Gregory R. Naron
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
Phone: (312) 876-8000
Natalie.spears@dentons.com
Gregory.naron@dentons.com

Jessica Laurin Meek
DENTONS BINGHAM GREENEBAUM LLP
10 West Market Street, Suite 2700
Indianapolis, IN 46204
Phone: (317) 635-8900
Jessica.meek@dentons.com

*Attorneys for Appellees CBS News Inc., ViacomCBS Inc., and CBS Interactive Inc.*

Michael J. Grygiel
Cynthia E. Neidl
Kelly L. McNamee
Candra M. Connelly
GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, New York 12207
Phone: (518) 689-1400
grygielm@gtlaw.com
neidlc@gtlaw.com
mcnameek@gtlaw.com
connellyc@gtlaw.com

Jon L. Fleischaker
Michael P. Abate
William R. Adams
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
Phone: (502) 540-8280
jfleischaker@kaplanjohnsonlaw.com
mabate@kaplanjohnsonlaw.com
radams@kaplanjohnsonlaw.com

*Attorneys for Appellees Gannett Co., Inc. and Gannett Satellite Information Network,*

*LLC*

Kevin T. Shook
FROST BROWN TODD LLC
One Columbus, Ste 2300
10 W. Broad Street
Columbus, OH 43215-3484
Phone: (614) 464-1211
Fax: (614) 464-1737
kshook@fbtlaw.com

Jason P. Renzelmann
FROST BROWN TODD LLC
400 W. Market Street, Ste 3200
Louisville, KY 40202
Phone: (502) 589-5400
Fax: (502) 587-1087
jrenzelmann@fbtlaw.com

Ryan W. Goellner
 FROST BROWN TODD LLC
301 East Fourth Street, Ste 3300
Cincinnati, OH 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
rgoellner@fbtlaw.com

*Attorneys for Appellees Rolling Stone, LLC
and Penske Media Corporation*

# CORPORATE DISCLOSURE STATEMENTS

Pursuant to Fed. R. App. P. 26.1 and 6th Circuit Rule 26.1, Appellee The New York Times Company d/b/a The New York Times makes the following disclosures:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

   No.

Dated: December 23, 2022             /s/ *John C. Greiner*
                                     *Attorney for Appellee The New York Times Company d/b/a The New York Times*

Pursuant to Fed. R. App. P. 26.1 and 6th Circuit Rule 26.1, Appellees CBS News Inc., ViacomCBS Inc., and CBS Interactive Inc. make the following disclosures:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   CBS News Inc. is a wholly owned, indirect subsidiary of Paramount Global.

   Paramount Global f/k/a ViacomCBS Inc. is a publicly traded company. National Amusements, Inc., a privately held company, beneficially owns the majority of the Class A voting stock of Paramount Global.  In addition, Paramount Global is only aware, without further inquiry, that Berkshire Hathaway Inc., a publicly traded company, beneficially owns at least 10% of Paramount Global's total common stock, i.e., Class A and Class B on a combined basis, as reported on a Form 13F filed with the Securities and Exchange Commission on August 15, 2022.

   CBS Interactive Inc. is a wholly owned subsidiary of Paramount Global.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

   No.


Dated: December 23, 2022          /s/ Natalie Spears
                                  *Attorney for Appellees CBS News Inc., Viacom CBS Inc., and CBS Interactive Inc.*

Pursuant to Fed. R. App. P. 26.1 and 6th Circuit Rule 26.1, Appellees ABC News, Inc., ABC News Interactive, Inc., and The Walt Disney Company make the following disclosures:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   ABC News, Inc. is an indirect subsidiary of The Walt Disney Company, which is a publicly held corporation.

   ABC News Interactive, Inc. is an indirect subsidiary of The Walt Disney Company, which is a publicly held corporation.

   The Walt Disney Company is a publicly held corporation.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

   No.

Dated: December 23, 2022         /s/ *Nathan Siegel*
                                 *Attorney for Appellees ABC News,*
                                 *Inc., ABC News Interactive, Inc., and*
                                 *The Walt Disney Company*

Pursuant to Fed. R. App. P. 26.1 and 6th Circuit Rule 26.1, Appellees Gannett Co., Inc. and Gannett Satellite Information Network, LLC make the following disclosures:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   Gannett Co., Inc. is a publicly traded company (NYSE: GCI). It has no parent company. Black Rock and Vanguard, Inc. are entities with more than 10% interest in Gannett, Co., Inc.

   Gannett Satellite Information Network, LLC is an indirect, wholly owned subsidiary of Gannett Co., Inc. which is a publicly traded company. Black Rock and Vanguard, Inc. are entities with more than 10% interest in Gannett, Co., Inc.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

   No.

Dated: December 23, 2022          /s/ *Michael Abate*
                                  *Attorney for Appellees Gannett Co.,*
                                  *Inc. and Gannett Satellite Information*
                                  *Network, LLC*

Pursuant to Fed. R. App. P. 26.1 and 6th Circuit Rule 26.1, Appellees Rolling Stone, LLC and Penske Media Corporation make the following disclosures:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

   No.

Dated: December 23, 2022
/s/ *Kevin Shook*
*Attorney for Appellees Rolling Stone, LLC and Penske Media Corporation*

# TABLE OF CONTENTS

*Page*

CORPORATE DISCLOSURE STATEMENTS ...........................................................i

TABLE OF AUTHORITIES .............................................................................ix

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..........................................1

COUNTERSTATEMENT OF THE ISSUES.............................................................1

STATEMENT OF THE CASE ..............................................................................2

I.    PROCEDURAL AND FACTUAL HISTORY .................................................4

      A.    The Procedural History Prior to Discovery ................................4

      B.    The Factual Record ...................................................................8

            1.    The Conflicts With a Few Black Hebrew Israelites
                  that Preceded the Incident Between Sandmann and
                  Phillips .........................................................................8

            2.    Phillips Tries to Calm the Situation with Song and
                  Prayer .........................................................................12

            3.    Phillips Approaches the CovCath Students...................15

            4.    Phillips Tries to Exit the Crowd and CovCath
                  Students Move Aside to Let Him Pass, but
                  Sandmann Decides to Send Phillips a Message by
                  Standing in His Way.....................................................18

            5.    Phillips Perceived that Sandmann Blocked Him............22

            6.    Phillips and Sandmann Stand Face-to-Face While
                  Both Feel "Blocked".....................................................25

            7.    The Incident Ends..........................................................26

      C.    Sandmann's Putative "Expert" .................................................28

II.   THE DISTRICT COURT'S DECISION.......................................................29

SUMMARY OF ARGUMENT ...............................................................30

STANDARD OF REVIEW ..................................................................31

ARGUMENT ......................................................................................31

I.    THE DISTRICT COURT CORRECTLY HELD THAT THE
      BLOCKING STATEMENTS ARE NON-ACTIONABLE OPINION .......31

      A.    The District Court Applied the Correct Legal Standard...........32

            1.    The Opinion Doctrine Applied by the District
                  Court Was Correct ...........................................................32

            2.    Sandmann's Version of the Applicable Legal
                  Standard Is Erroneous......................................................34

                  a.    The Opinion Inquiry Does Not Present a
                        Potential Jury Question ........................................34

                  b.    The District Court Properly Considered the
                        Very Factual Record Sandmann Argued
                        Was Necessary to Resolve the Opinion Issue......36

                  c.    The Opinion Doctrine Does Not Exclude
                        Sensory Perceptions or Transitive Verbs .............40

      B.    The District Court's Conclusion That the Blocking
            Statements Are Non-Actionable Opinion Was Correct...........41

            1.    "Blocking" Is an Imprecise, Subjective Term................42

            2.    The Context in Which the Blocking Statements
                  Were Made and Published Supports That They Are
                  Opinion ............................................................................44

            3.    The Blocking Statements Did Not Imply the
                  Existence of Any Undisclosed, Defamatory Facts.........49

II.   THE DISTRICT COURT CORRECTLY HELD THAT THE LAW
      OF THE CASE DOCTRINE DID NOT PRECLUDE
      CONSIDERATION OF THE OPINION ISSUE AT SUMMARY
      JUDGMENT .................................................................................49

III.   ALTERNATIVELY, THIS COURT SHOULD AFFIRM BECAUSE
       THE BLOCKING STATEMENTS ARE SUBSTANTIALLY TRUE ........53

       A.    The First Amendment Places the Burden on Sandmann to
             Show That the Blocking Statements Were Materially
             False. ...........................................................................................54

       B.    Sandmann Cannot Meet His Burden of Showing a
             Genuine Dispute That the Blocking Statements Were
             Materially False..........................................................................58

IV.    ALTERNATIVELY, THIS COURT SHOULD AFFIRM BECAUSE
       THE BLOCKING STATEMENTS ARE NOT DEFAMATORY ..............62

V.     ALTERNATIVELY, THIS COURT SHOULD AFFIRM BECAUSE
       THE COMPLAINTS ARE BARRED BY THE KENTUCKY
       STATUTE OF LIMITATIONS....................................................................65

CONCLUSION ....................................................................................................67

CERTIFICATE OF COMPLIANCE......................................................................71

CERTIFICATE OF SERVICE ..............................................................................72

ADDENDUM:  DESIGNATION OF RELEVANT DISTRICT COURT
DOCUMENTS......................................................................................................73

# TABLE OF AUTHORITIES

*Page(s)*

**Federal Cases**

*Bd. of Forensic Document Exam'rs, Inc. v. ABA*,
    922 F.3d 827 (7th Cir. 2019) ..............................................................44

*Bennett v. Cisco Sys., Inc.*,
    63 F. App'x 202 (6th Cir. 2003) .........................................................54

*Bentkowski v. Scene Mag.*,
    637 F.3d 689 (6th Cir. 2011) ..............................................................52

*Blessing v. Cable News Network, Inc.*,
    No. 2:20-CV-0015, 2020 WL 7647530 (E.D. Ky. Dec. 23, 2020) ....................44

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
    861 F.3d 1081 (10th Cir. 2017) ....................................................45, 55

*Chapin v. Knight Ridder, Inc.*,
    993 F.2d 1087 (4th Cir. 1993) ...........................................................62

*Chatterjee v. CBS Corp.*,
    No. 6:19-CV-212-REW, 2020 WL 592324 (E.D. Ky. Feb. 6, 2020) ............7, 62

*Clark v. Viacom Int'l, Inc.*,
    617 F. App'x 495 (6th Cir. 2015) .................................................35, 54

*Compuware Corp. v. Moody's Inv'rs. Servs., Inc.*,
    499 F.3d 520 (6th Cir. 2007) .................................................31, 35, 36

*Croce v. New York Times Co.*,
    930 F.3d 787 (6th Cir. 2019) ..............................................................63

*Croce v. Sanders*,
    843 F. App'x 710 (6th Cir. 2021) ..............................................*passim*

*Devlin v. Kalm*,
    630 F. App'x 534 (6th Cir. 2015) (per curiam) .................................50

*Doe #1 v. Syracuse Univ.*,
    468 F. Supp. 3d 489 (N.D.N.Y. 2020).........................................46, 48

*Edelstein v. Gmoser*,
　No. 21-3292, 2022 WL 4372200 (6th Cir. Aug. 29, 2022) ................................ 33

*Friendship Empowerment & Econ. Dev. v. WALB-TV*,
　No. 1:04-CV-132(CDL), 2006 WL 1285037 (M.D. Ga. May 10, 2006) .......... 46

*Gahafer v. Ford Motor Co.*,
　328 F.3d 859 (6th Cir. 2003) ................................................................. 62

*Garrett v. Tandy Corp.*,
　295 F.3d 94 (1st Cir. 2002) ................................................................... 33

*Golf Vill. N., LLC v. City of Powell*,
　14 F.4th 611 (6th Cir. 2021) ................................................................. 53

*Gooden v. City of Memphis Police Dep't*,
　67 F. App'x 893 (6th Cir. 2003) ........................................................... 38

*Greenbelt Co-op. Publ'g Ass'n v. Bresler*,
　398 U.S. 6 (1970) ................................................................................. 41

*Hammer v. City of Osage Beach*,
　318 F.3d 832 (8th Cir. 2003) ................................................................ 39

*Hartwig v. Nat'l Broad. Co.*,
　863 F. Supp. 558 (N.D. Ohio), *aff'd*, 76 F.3d 379 (6th Cir. 1996) ................... 64

*Haynes v. Alfred A. Knopf, Inc.*,
　8 F.3d 1222 (7th Cir. 1993) ........................................................... 45, 56

*Hogan v. Winder*,
　762 F.3d 1096 (10th Cir. 2014) ........................................................... 41

*Holsapple v. Cunningham*,
　817 F. App'x 95 (6th Cir. 2020) ........................................................... 33

*Howe v. City of Akron*,
　801 F.3d 718 (6th Cir. 2015) ................................................................ 50

*In re B & P Baird Holdings, Inc.*,
　759 F. App'x 468 (6th Cir. 2019) ......................................................... 50

*Jenkins v. Snyder*,
   No. 00CV2150, 2001 WL 755818 (E.D. Va. Feb. 6, 2001)................................41

*Loftus v. Nazari*,
   21 F. Supp. 3d 849 (E.D. Ky. 2014) ..................................................................52

*Macineirghe v. Cty. of Suffolk*,
   No. 13-CV-1512 (ADS) (SIL), 2015 WL 4459456
   (E.D.N.Y. July 21, 2015) ........................................................40, 43, 44

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991)..............................................................54, 55, 56

*McCray v. Infused Sols., LLC*,
   No. 4:14-cv-158, 2018 WL 2392507 (E.D. Va. May 25, 2018) ........................48

*McKenzie v. BellSouth Telecomms., Inc.*,
   219 F.3d 508 (6th Cir. 2000) .............................................................50

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990)..............................................................34, 47, 48

*Nichols v. Moore*,
   477 F.3d 396 (6th Cir. 2007) .........................................................55, 57

*Novotny v. Elsevier*,
   291 F. App'x 698 (6th Cir. 2008) .....................................................60

*Parry v. Mohawk Motors of Mich., Inc.*,
   236 F.3d 299 (6th Cir. 2000) .........................................................54, 57

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995) .........................................................45

*Philadelphia Newspapers, Inc. v. Hepps*,
   475 U.S. 767 (1986)..............................................................56

*Riley v. Harr*,
   292 F.3d 282 (1st Cir. 2002)..............................................................45

*Rouse v. DaimlerChrysler Corp.*,
   300 F.3d 711 (6th Cir. 2002) .........................................................31

*Sandmann v. CNN*,
  No. 2:19-cv-31 (E.D. Ky. 2019) ...................................................4, 7, 50

*Sandmann v. NBC*,
  No. 2:19-cv-56 (E.D. Ky. 2019) ......................................................4, 7

*Sandmann v. WP Company LLC*,
  No. 2:19-cv-19 (E.D. Ky. 2019) ...................................................*passim*

*Seaton v. TripAdvisor LLC*,
  728 F.3d 592 (6th Cir. 2013) ...............................................31, 32, 33

*Simonson v. United Press Int'l, Inc.*,
  654 F.2d 478 (7th Cir.1981) ...............................................................57

*Susan B. Anthony List v. Driehaus*,
  779 F.3d 628 (6th Cir. 2015) ..............................................................55

*Tannerite Sports, LLC v. NBC Universal Media LLC*,
  135 F. Supp. 3d 219 (S.D.N.Y. 2015), *aff'd,* 864 F.3d 236 (2d Cir. 2017) .......60

*Underwager v. Channel 9 Australia*,
  69 F.3d 361 (9th Cir. 1995) ...............................................................45

*West v. Am. Tel. & Tel. Co.*,
  311 U.S. 223 (1940)...........................................................................65

*Wilson v. Scripps-Howard Broad. Co.*,
  642 F.2d 371 (6th Cir. 1981) .............................................................56

**State Cases**

*Bell v. Courier-Journal & Louisville Times Co.*,
  402 S.W.2d 84 (Ky. 1966).......................................................55, 56, 57

*Better Built Garages, Inc. v. Ky. New Era, Inc.*,
  Nos. 2007-CA-001432-MR, 2007-CA-001754-MR, 2008 WL 4531037 (Ky. Ct.
  App. Oct. 10, 2008) .........................................................................63

*Biber v. Duplicator Sales & Serv., Inc.*,
  155 S.W.3d 732 (Ky. Ct. App. 2004) ...............................................41

*Cromity v. Meiners*,
  494 S.W.3d 499 (Ky. Ct. App. 2015) ................................................35, 41, 47, 52

*Digest Publ'g Co. v. Perry Publ'g Co.*,
  284 S.W.2d 832 (Ky. 1955) ...................................................................................62

*Estepp v. Johnson Cty. Newspapers, Inc.*,
  578 S.W.3d 740 (Ky. Ct. App. 2019) ..............................................................54, 57

*Franklin v. Dynamic Details, Inc.*,
  116 Cal. App. 4th 375 (2004) ..............................................................................41

*Glaze v. Marcus*,
  729 P.2d 342 (Ariz. Ct. App. 1986) .....................................................................48

*Hays v. Clear Channel Commc'ns, Inc.*,
  No. 2005-CA-001490-MR, 2006 WL 3109132 (Ky. Ct. App. Nov. 3, 2006)...34

*Kentucky Kingdom Amusement Co. v. Belo Ky., Inc.*,
  179 S.W.3d 785 (Ky. 2005)..................................................................................55

*McCall v. Courier-Journal & Louisville Times Co.*,
  623 S.W.2d 882 (Ky. 1981) ..................................................................................62

*Nat'l Coll. of Ky., Inc. v. WAVE Holdings, LLC*,
  536 S.W.3d 218 (Ky. Ct. App. 2017) ......................................................52, 55, 57

*Samuels v. Tschechtelin*,
  763 A.2d 209 (Md. Ct. Spec. App. 2000)............................................................47

*Seaman v. Musselman*,
  No. 2002-CA-001269, 2003 WL 21512489 (Ky. Ct. App. July 3, 2003)..........33

*Tallman v. Elizabethtown*,
  2008 Ky. LEXIS 620 (Ky. Ct. App. Sept. 10, 2008).........................................65

*Tallman v. Elizabethtown*,
  No. 2006-CA-002542-MR, 2007 WL 3227599
  (Ky. Ct. App. Nov. 2, 2007) .........................................................................65, 66

*Taxpayers' League of Bell Cty. v. Sun Publ'g Co.*,
  75 S.W.2d 564 (Ky. 1934)....................................................................................61

*Tech Plus Inc. v. Ansel*,
   793 N.E.2d 1256 (Mass. App. Ct. 2003) ...........................................48

*Williams v. Blackwell*,
   487 S.W.3d 451 (Ky. Ct. App.), *as modified* (Mar. 4, 2016)............52

*Yancey v. Hamilton*,
   786 S.W.2d 854 (Ky. 1989)..........................................................33, 34

*Yates v. Iowa W. Racing Ass'n*,
   721 N.W.2d 762 (Iowa 2006) ...........................................................48

## State Statutes

Kentucky Revised Statutes
   § 413.140(1)(d) ...............................................................................65
   § 413.170(1)....................................................................................65

## Rules

6th Circuit Rule
   26.1...........................................................................................*passim*
   34(a) .................................................................................................1

Federal Rules of Appellate Procedure
   Rule 12 ..................................................................................6, 50, 51
   Rule 26 ...........................................................................................51
   Rule 26.1 ................................................................................*passim*
   Rule 34(a).........................................................................................1

## Constitutional Provisions

First Amendment........................................................................*passim*

## Other Authorities

Restatement (Second) of Torts § 566......................................................34

*Block*, Merriam-Webster Dictionary, https://www.merriam-
   webster.com/dictionary/block...........................................................59

*Retreat*, Merriam-Webster Dictionary, https://www.merriam-
   webster.com/dictionary/retreat; ........................................................59

*Retreat*, Oxford Learner's Dictionaries,
    https://www.oxfordlearnersdictionaries.com/us/definition/english/retreat_2 ....59

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a) and 6th Cir. R. 34(a), Appellees respectfully request oral argument. Appellees believe oral argument will assist the Court in resolving the issues raised by this appeal, as well as provide Appellees the opportunity to respond to matters Appellant may present on reply.

## COUNTERSTATEMENT OF THE ISSUES

1.    Did the District Court correctly hold that a statement by Nathan Phillips, as published within Appellees' news publications, that Appellant Nicholas Sandmann "blocked [Phillips'] way and wouldn't allow [Phillips] to retreat" and materially similar statements are protected opinion?

2.    Did the District Court properly hold that the law of the case doctrine did not preclude consideration of the opinion issue at summary judgment?

3.    Should this Court affirm on the alternative ground that the challenged statements are substantially true?

4.    Should this Court affirm on the alternative ground that the challenged statements in the context of Appellees' news publications are not capable of a defamatory meaning?

5.    Should this Court affirm on the alternative ground that Sandmann's complaints are time-barred?

## STATEMENT OF THE CASE

Over three years ago, a tense encounter between Plaintiff-Appellant Nicholas Sandmann and Nathan Phillips at the Lincoln Memorial became the subject of wide public attention and controversy.  Numerous news organizations, including the Appellees, published articles and broadcasts about the controversy. As one of multiple perspectives that news reports provided on the incident, many quoted a statement originally made by Phillips to *The Washington Post*, that Sandmann "blocked" his way and "wouldn't allow [him] to retreat" (the "Blocking Statements"), as well as materially similar statements he made to other news organizations (e.g., that Sandmann "positioned himself" in a way that "sort of stopped [Phillips'] exit").

When Sandmann sued *The Washington Post*, the District Court originally granted a motion to dismiss holding the Blocking Statements were non-actionable opinion, because in context they reflected Phillips' subjective perspective on a chaotic incident.  But at Sandmann's urging, the District Court revised that decision to permit Sandmann to take discovery on the circumstances of the encounter before considering the issue again on summary judgment.  After reviewing the resulting record two years later in these suits against Appellees, the

District Court properly concluded the challenged statements were indeed non-actionable opinion.[1]

In this appeal, Sandmann claims that the District Court applied the wrong legal standards to the opinion issue, the Blocking Statements are factual, and the law of the case doctrine precluded consideration of the issue. To the contrary, the District Court correctly applied the governing law. It is Sandmann's proposed "legal standard" that contravenes well-settled defamation principles. And Sandmann's law of the case argument wholly lacks merit, especially since the District Court deferred final consideration of the opinion issue to the summary judgment stage at Sandmann's request.

While this Court need not reach any other issue, this Court may also affirm the judgment on three alternative grounds. First, the challenged statements are substantially true because the undisputed facts show that the "gist" or "sting" of those statements – that Sandmann deliberately stood in Phillips' way to obstruct his path – is accurate. Second, when read in context, the challenged statements are not defamatory. Third, Sandmann's complaints are time-barred.

---

[1] As the District Court noted, while some publications contain statements by Phillips that "differ slightly" from the Blocking Statements made to the *Post*, "the parties apply the same analysis to these statements." Op., *N.Y. Times*, RE 81, PageID#2345 n.10. As the parties and the Court did below, the analysis and arguments in this joint response brief with respect to the Blocking Statements apply to all reports at issue in this appeal, which include the materially similar statements.

## I.    PROCEDURAL AND FACTUAL HISTORY

Because Sandmann's brief omits much of the relevant history, this joint response brief sets forth below a more complete summary of the procedural and factual history of these cases.

### A.    The Procedural History Prior to Discovery

The first procedural events relevant to these cases actually took place before any of the Appellees were named as defendants.  Sandmann filed his first defamation lawsuit against *The Washington Post* in March 2019, *Sandmann v. WP Company LLC* ("*Post*"), No. 2:19-cv-19 (E.D. Ky. 2019), followed shortly thereafter by similar suits against CNN and NBC.  *See Sandmann v. CNN*, No. 2:19-cv-31 (E.D. Ky. 2019); *Sandmann v. NBC*, No. 2:19-cv-56 (E.D. Ky. 2019). The District Court first addressed the *Post* case and initially granted the newspaper's motion to dismiss.  *Post*, 401 F. Supp. 3d 781 (E.D. Ky. 2019).  The Court addressed the numerous statements at issue in several *Post* articles and found each non-actionable on several grounds.  *Id.* at 792.

Sandmann then moved for reconsideration of that ruling and for leave to file an Amended Complaint.  *Post*, RE 49, PageID#481-704.  His motion focused on the following quotation from Nathan Phillips in the first article the *Post* had published about the incident on January 19, 2019, which the parties and the District Court subsequently referred to as "the Blocking Statements":

It was getting ugly, and I was thinking: "I've got to find myself an exit out of this situation and finish my song at the Lincoln Memorial," Phillips recalled. "I started going that way, and that guy in the hat stood in my way and we were at an impasse. *He just blocked my way and wouldn't allow me to retreat.*

*Post*, 401 F. Supp. 3d at 792.  In its initial dismissal order, the District Court had found that those statements were non-actionable opinion.  *Id.* at 792-93.

In seeking reconsideration, Sandmann argued that the District Court's resolution of the opinion issue at the pleadings stage was at best premature because his complaint and, in more detail, his proposed amended complaint, alleged that the Blocking Statements were deliberate lies, not subjective perceptions. Specifically, Sandmann's proposed amended complaint alleged that Phillips and some unidentified group of "activist companions" had planned and then executed a scheme to instigate a confrontation with a white, MAGA-hat wearing supporter of then-President Trump, capture it on video, and then deceptively edit it to post on social media in the hope it would go "viral" and embarrass President Trump and his supporters.  *Post*, RE 49-2, PageID#517.  Sandmann alleged that Phillips had been accompanied by his "cameraman," and that after the encounter was over, Phillips and his "companions" allegedly "celebrated" accomplishing that goal by several statements that could be heard on various videos, such as one person saying "I got him."  *Id.* at PageID#519-520, 544.

Sandmann's counsel emphasized that in light of those enhanced allegations, it was premature for the Court to resolve the opinion issue at the Rule 12 stage because:

> One of the reasons that we believe this case has to go beyond motion to dismiss is because it needs a fully developed factual record. Because under defamation law, Your Honor, you just don't see a term and go, that's opinion. You have to look at the factual circumstances to determine whether the speaker -- in this instance, Mr. Phillips -- was expressing an opinion or whether Mr. Phillips was expressing a factual narrative.

*Post*, RE 60, PageID#828.  Sandmann's counsel also criticized the District Court for trying to draw inferences only from videos, rather than from sworn testimony from the persons involved.  *Id.* ("Your Honor is trying to look at these various videos to figure out what was Phillips saying. The problem is, the only way to answer that question is to depose Mr. Phillips.").

Those arguments helped persuade the District Court to grant partial reconsideration in the *Post* case, limited specifically to the Blocking Statements. The District Court's order noted that Sandmann's proposed amended complaint "ma[de] specific allegations concerning the state of mind of Phillips" and alleged "that Phillips deliberately lied" about the events.  *Post*, Op., RE 64, PageID#861. The District Court thus determined "that 'justice requires' that discovery be had regarding these statements and their context. The Court will then consider them

6

anew on summary judgment." *Id.* The District Court entered companion rulings in Sandmann's lawsuits against CNN and NBC.[2]

Sandmann then sued five more media defendants – the Appellees – in separate cases on March 2, 2020. Most of the publications at issue in those additional lawsuits included the same Blocking Statements from *The Washington Post* (including articles from *The New York Times*, ABC, Gannett, and Rolling Stone), while the CBS report contained a materially similar statement by Phillips that Sandmann "just positioned himself to make sure that he [Sandmann] aligned himself with me so that he [Sandmann] sort of stopped my [Phillips'] exit."). *See CBS*, Compl., RE 1, PageID#43, 46. The Court denied motions to dismiss filed by each Appellee, holding that its rulings in the *Post* case applied equally to Sandmann's additional lawsuits.[3]

The prospect of litigating claims against a half-dozen media defendants that had published about twenty news reports presented practical challenges for all parties. So "in the interest of judicial economy," the parties agreed to narrow and bifurcate both discovery and summary judgment practice. *N.Y. Times*, RE 36,

---

[2] *CNN*, RE 43, PageID#596-598; *NBC*, RE 43, PageID#753-756. The *Post*, CNN, and NBC each eventually settled.

[3] *N.Y. Times*, RE 27, PageID#222-227; *CBS*, RE 34, PageID#272-277; *ABC*, RE 336, PageID#314-319; *Gannett*, RE 39, PageID#746-752; *Rolling Stone*, RE 35, PageID#275-280.

PageID#276.[4]  Specifically, the parties agreed that the case would be divided into two phases.  Phase 1 would be limited to "the facts pertaining to the encounter" between Sandmann and Phillips, specifically "whether Nathan Phillips' statements that Plaintiff 'blocked' him or 'prevented him from retreating' (the "Blocking Statements") are true or substantially true, or otherwise not actionable based on the undisputed facts developed during initial discovery and the issues defined in the Court's prior decisions." *Id.*

However, once discovery commenced, Sandmann did not take any depositions of anyone who had been at the scene, as he had told the District Court it was essential that he do.  Appellees, however, took Sandmann's deposition and submitted detailed, sworn declarations from Phillips and almost all the alleged "activist companions" Sandmann claimed were involved in a pre-meditated conspiracy.  The resulting record is summarized below.

### B.    The Factual Record

### 1.    The Conflicts With a Few Black Hebrew Israelites that Preceded the Incident Between Sandmann and Phillips

The incident that gives rise to this appeal occurred on January 18, 2019, in the vicinity of the Lincoln Memorial, shortly after two, unrelated political

---

[4] For ease of reference, like Sandmann's opening brief, except where expressly indicated, this joint response brief primarily cites to the docket entry numbers (RE) and PageID numbers of documents filed in the *New York Times* case.  For parallel references to these documents as filed in the other four cases, see the Designation of Relevant Documents in the Addendum to this brief.

demonstrations had been held in Washington, D.C.  One of them, the March for Life, was attended by a couple of hundred students from Covington Catholic High School ("CovCath"), including Sandmann.  The other, the Indigenous Peoples March, was attended by several hundred people, including Phillips.  Dep. Tr. of Nicholas Sandmann ("S.D."), RE 74-1, PageID#2123, 2126; *see, e.g.*, Phillips Decl., RE 53-2, PageID#724; Video 4 at 05:38.[5]  The cultural backgrounds and perspectives of many of those attending the respective events were quite different, and were reflected in the conflicting perceptions of events that some of them would later articulate to the news media.

That same afternoon, a group of five or six men, who call themselves Black Hebrew Israelites (the "BHI"), was standing in the vicinity of the Lincoln Memorial and proselytizing.  Video 4 at 00:00-00:11.  In the course of doing so, the BHI hurled invective at many nearby onlookers, including the Indigenous Peoples March participants.  *See, e.g.*, Video 4 at 00:14-00:30, 34:33-34:57, 37:22-37:27.  Most of those participants just ignored the BHI's insults, and a few sought

---

[5]  The parties stipulated below to the authenticity of 20 videos and conventionally filed them in each of the five cases below identified with a number (Video 1, Video 2, etc.). For purposes of the record on appeal and pursuant to 6th Cir. I.O.P. 10(d), four USB flash drives with those conventionally filed videos were mailed to this Court's Records Room along with a cover letter explaining their contents.  The rest of this brief cites to the Videos simply by their number (Video 1, Video 2, etc.).

to reason peacefully with them.  *E.g.*, Phillips Decl., RE 53-2, PageID#724; Tee Decl., RE 53-6, PageID#759-760.

About thirty minutes later, the BHI turned their ire towards a large group of CovCath students who had gathered on the steps leading to the Memorial to wait for buses to take them home.  *E.g.*, Video 4 at 1:07:37-1:08:08; S.D., RE 74-1, PageID#2126-2127.  The CovCath students responded to the BHI quite differently than some of the Indigenous Peoples March participants had.  Several students requested and received permission from a chaperone to try to "drown out" the BHI by using loud cheers intended for school sporting events, which were joined by the more than 100 CovCath students gathered near the Memorial steps.  *Id.* at PageID#2136, 2144.  For example, one student removed his shirt and stood in front of the crowd bare-chested, flexing his muscles while pumping his fists and shouting, while the other students yelled, stomped on the ground, and faced the five BHI members with their muscles flexed and fists clenched. *Id.* at PageID#2121, 2138, 2144; *see* Video 4 at 1:09:48-1:10:20; Video 5 at 1:24-1:54.



Video 5 at 1:54.  As more students arrived, the crowd edged physically closer to

the BHI.  Video 5 at 2:57-3:20; S.D., RE 74-1, PageID#2146.

The interaction between the students and the BHI was perceived quite

differently by different people who witnessed it.  To Sandmann, the BHI's

behavior was a "culture shock," and he felt physically threatened and

"outmatched" by them, even though there were more than 100 teenagers and only a

half-dozen BHI.  S.D., RE 74-1, PageID#2127, 2139.  And Sandmann believes the

students responded appropriately and that it was "pretty obvious" they were

performing school cheers, *id.* at PageID#2138.  Nonetheless, he acknowledges that

"maybe not" everyone in the area that day would have recognized all the shouting

as a school cheer and that "a person watching over 100 white teenage boys

responding to [the] BHI by yelling loudly, jumping up and down with clenched

fists held toward them" could have perceived the students to be expressing hostility and aggression towards the BHI. *Id.* at PageID#2138, 2144.[6]

In fact, that was exactly how the students' conduct was perceived by Phillips and several other people who had attended the Indigenous Peoples March. For example, Marcus Frejo, a musician from Oklahoma City, watched the escalating confrontation between the students and the BHI with growing alarm. Frejo Decl., RE 53-5, PageID#751-752. He did not perceive the students to be doing school cheers, but rather saw aggressive shouts and physical gestures that to him seemed intended to taunt the BHI. *Id.* Another, Alvaro Andrade, from New Jersey, was familiar with the BHI, having seen members on the streets of New York. Andrade Decl., RE 53-3, PageID#734-735. But on the National Mall, he saw what looked to him like a large group of white teenagers using shouts and clenched fists in a face-off with a small number of BHI and thought the situation was on the verge of detonating. *Id.* at PageID#735-736. *See also* Tee Decl., RE 53-6, PageID#760-761.

### 2.    Phillips Tries to Calm the Situation with Song and Prayer

After the Indigenous Peoples March ended, Phillips remained in the area because he was waiting to meet some friends to go to dinner. Phillips Decl., RE

---

[6] At least one of Sandmann's classmates declined to participate in the cheers for that very reason. Brockett Decl., RE 53-8, PageID#772-773; RE 53-9, PageID# 777, 779-780.

53-2, PageID#724.  Phillips can be seen on videos standing by himself in different places around the Lincoln Memorial.  Video 4 at 50:52-50:54; 57:16-57:19.  He was also watching the escalating tension between the teenagers and the BHI.  Phillips Decl., RE 53-2, PageID#725.  Phillips did not perceive a group of students engaged in school cheers, but rather a large and growing group of white teenagers screaming and seeming to act physically aggressive towards a much smaller number of BHI.  He feared the situation would erupt into violence.  *Id.* at PageID#725-726.

As the confrontation seemed to grow more tense, Phillips voiced his concerns to others standing nearby.  Andrade, whom Phillips did not know, suggested to Phillips that he drum and sing to try to calm the situation.  Andrade is a musician, who believes that song has the power to calm tense situations and thought that Phillips, as an elder, would be a natural person to try to defuse the growing tension.  Andrade Decl., RE 53-3, PageID#735-736.

Phillips' heritage had likewise taught him that song and prayer can bring healing to people who feel anger and hatred, so he decided to follow the suggestion.  Phillips Decl., RE 53-2, PageID#726-727.  Phillips borrowed a drum from another musician whom Phillips did not know but was also standing nearby, named Anthony Tee, and began singing the American Indian Movement ("AIM") song, a traditional Native song that expresses unity and can be used as a prayer.

Tee Decl., RE 53-6, PageID#761-762; Phillips Decl., RE 53-2, PageID#726.
Phillips initially sang by himself for more than a minute, standing off to the side at
some distance away from both the students and the BHI.  Video 17 at 00:00-01:07;
Phillips Decl., RE 53-2, PageID#727.



Video 17 at 00:37.

Frejo likewise believes that song and prayer have the power to restore calm
to tense situations.  Frejo Decl., RE 53-5, PageID#752-753.  Frejo did not
personally know Phillips, but recognized him from a demonstration at the Standing
Rock Indian Reservation several years earlier.  Frejo observed Phillips singing
with Tee's drum, and thought that was a positive response to the situation.
Because Phillips was an elder, Frejo wanted to support and join him, and so he
approached Phillips and told him he was going to sing alongside him.  *Id.* at
PageID#753; Video 17 at 01:10-01:11.

### 3.    Phillips Approaches the CovCath Students

Once Frejo joined him, Phillips spontaneously decided to walk up to stand in front of the students, to place himself between them and the BHI. Phillips did not ask anyone to join him or to record anything on camera. Phillips Decl., RE 53-2, PageID#727, 731; Video 4 at 1:12:17-1:12:30; Video 17 at 1:28-1:32. Phillips hoped that praying in front of the students would help calm the situation. Phillips Decl., RE 53-2, PageID#727. A few people who had been standing nearby followed them, including Andrade and two others. Andrade Decl., RE 53-3, PageID#736.

One was Ashley Bell, who came from Connecticut and had met Phillips at Standing Rock. Bell Decl., RE 53-4, PageID#742. She had watched the escalating confrontation and also perceived the students' behavior to be aggressive and provocative. *Id.* PageID#743-744. She understood Phillips' song to be a peaceful gesture, respected Phillips as her elder and followed him. *Id.* at 744-745. Another who followed was Jon Stegenga, a freelance photojournalist from South Carolina who was covering the March and wanted to continue documenting the day's events. Stegenga Decl., RE 53-7, PageID#766-767.

When Phillips approached the students, he had hoped they would respond with respect and decorum. Phillips Decl., RE 53-2, PageID#727-728. Instead, many responded to him by dancing, hooting, and laughing. *E.g.*, Video 5 at 4:23-

5:10; Video 17 at 2:00-2:45. Some students raised and lowered their arms in a "tomahawk chop" and yelled out the war-cries often seen at sports games involving teams with Native American mascots. Video 2 at 00:24-00:33; Video 4 at 1:14:07-1:14:15; S.D., RE 74-1, PageID#2152-2153, 2167.



Video 2 at 00:25.[7] Phillips felt that behavior was mocking Native American culture and himself. Phillips Decl., RE 53-2, PageID#727-728. So did a few others who had followed behind him, and even one of the CovCath students. Frejo Decl., RE 53-5, PageID#753-754; Andrade Decl., RE 53-3, PageID#736-737; Bell Decl., RE 53-4, PageID#745; *see also* Stegenga Decl., RE 53-7, PageID#767-768; Brockett Decl., RE 53-9, PageID#779. While Sandmann does not personally think such behavior was disrespectful, S.D., RE 74-1, PageID#2152-2153, 2167, he acknowledges that Phillips could have perceived the students' behavior to be mocking him. *Id.* at PageID#2154, 2167.

---

[7] Sandmann acknowledges that other students in this screenshot were doing the tomahawk chop, but maintains that he was not. S.D. RE 74-1, PageID#2167.

When Phillips first approached, the students were standing in a sort of half-circle to his left and in front of him, so the area to his right and rear was largely empty:



Video 5 at 04:22.  But over the course of the next minute or so, CovCath students and other onlookers filled in the space around Phillips and the few others who had initially joined him to sing the AIM song.  Phillips Decl., RE 53-2, PageID#728; Bell Decl., RE 53-4, PageID#745; Video 10 at 00:00-00:05.  The screenshot below is taken from video about 25 seconds before Phillips' encounter with Sandmann, showing Phillips (identified by the yellow circle) surrounded by students and other onlookers he did not know:



Video 10 at 00:02; *see also id.* at 00:26-00:27; S.D., RE 74-1, PageID#2155-2156, 2168.

### 4. Phillips Tries to Exit the Crowd and CovCath Students Move Aside to Let Him Pass, but Sandmann Decides to Send Phillips a Message by Standing in His Way

Given the behavior and positioning of the crowd, Phillips' unrebutted testimony was that he became concerned for himself and the safety of the few people who had first started singing with him. So he decided to try to exit the situation. Phillips Decl., RE 53-2, PageID#728. He started looking around and moving towards his right, but perceived there were people all around him and did not see any way out that direction. *Id.*; Video 2 at 00:10-00:23; Video 10 at 00:00-00:11. So as he would later explain in the Blocking Statements, Phillips decided to try to exit the crowd by walking up to the Lincoln Memorial and finishing his song there. *Id*.

When Phillips began to walk forward in that direction, there were multiple rows of students standing between him and Sandmann, as can be seen on several videos (Phillips and Sandmann are identified by the yellow circles):





Video 10 at 00:12; Video 17 at 02:29; *see* S.D., RE 74-1, PageID#2154-2155.  But as Phillips began moving forward, student after student moved to the side and out of Phillips' way, and he began walking through the open space the students created towards the Lincoln Memorial.  Phillips Decl., RE 53-2, PageID#728; Video 10 at 0:12-26; S.D., RE 74-1, PageID#2155; *see* Video 2 at 00:32-00:44; S.D., RE 74-1, PageID#2168-2169; Video 8 at 00:00-00:15; S.D., RE 74-1, PageID#2171-2172; Video 17 at 3:00-3:12, 3:29-3:42.  As a result, for about 15 seconds Phillips made steady progress in exiting the crowd.  Video 10 at 00:12-00:26.

Sandmann recognized that students in front of him were moving out of Phillips' way and that Phillips was walking forward through the path they created for him.  S.D., RE 74-1, PageID#2154.  However, Sandmann perceived that Phillips was trying to intimidate the CovCath students by walking through the crowd.  *Id.* at PageID#2156-2157, 2158.

So Sandmann decided that he was not going to follow his classmates' lead and move aside when Phillips reached where he was standing.  Instead, as he explained the next day in texts with a friend, he decided that he was going to "stand up for the school" by remaining standing in Phillips' path.  Sandmann thought that would send Phillips a message that CovCath students could not be intimidated.  S.D., RE 74-1, PageID#2156-2157 & Ex. E to Jt. Memorandum, RE 53-13, PageID#1048-1049 (Friend:  "Can I ask what made you stand in front of the Indian guy?"  Sandmann:  "The whole thing with the black people calling us things and the guy moving through the crowd trying to intimidate us[.]  [I]t just made me want to stand up for the school.").

Sandmann said the same thing in direct messages on Twitter he sent to Charlie Kirk and Kyle Kashuv, two prominent young conservatives, while riding the bus back to Kentucky: "[m]embers of an indigenous people's march approached me (I was wearing a maga hat).  The man played his drum in my face but unlike others at my school i didn't step out of the way because he was trying to

intimidate us." S.D., RE 74-1, PageID#2159-2160 & Exs. F-G to Jt. Memorandum, RE 53-14, PageID#1051 & RE 53-15, PageID#1053.

At his deposition, Sandmann elaborated:

> Q:  . . . And how did you think that standing in front of Mr. Phillips was standing up for the school?
>
> A:  Because we -- the students of the school had stood there long enough and taken all kinds of insults from the Hebrew Israelites, then had had the Native American -- or Mr. Phillips, the Native American, walk through us or whatever. And by the time he got in my face, when he could have kept -- he could have even kept going through the students if he wanted to, I figured it was time for someone to plant their foot and stand there where I had been and just face up.  And to me, that was standing up for the school, because I wasn't going to move.
>
> * * *
>
> Q:  Your text also said: The whole thing with the black people calling us things.  How did the black people calling us things relate to your deciding to stand in front of Mr. Phillips?
>
> A. Well, as I mentioned – [objection].  As I mentioned, we -- we had already taken many insults from them. And at one point, I just felt like enough is enough, we don't need to respond to them anymore with chants: Someone's just got to stand here, be still and put their foot down.

S.D., RE 74-1, PageID#2158 & Ex. E, RE 53-13 at PageID#1048-1049.

Videos confirm that "plant[ing] [his] foot and stand[ing] there" in front of Phillips is exactly what Sandmann did.  As the other students in front of Sandmann were moving out of Phillips' way, Sandmann moved over slightly to his left, set his feet, and was "right in front of Nathan Phillips" when Phillips approached.

21

S.D., RE 74-1, PageID#2176; Video 17 at 03:37-03:42 (looking down to adjust his

footing as he moved):

  

Sandmann does not dispute that he moved over to his left just as Phillips was

approaching that spot, or that someone who was watching at the time could have

noticed that.  He merely quibbles about exactly what distance he moved, stating

that he moved "six inches at the most."  S.D., RE 74-1, PageID#2176.[8]

### 5.    Phillips Perceived that Sandmann Blocked Him

From Phillips' perspective, he had been moving forward as the students in

front of him were moving out of his way.  As he was walking forward, Phillips saw

that one teenager alone (Sandmann) appeared to position himself to be directly in

front of him, stood in his way, and did not move.  Multiple rows of students

standing behind Sandmann also moved to the side, but Sandmann still did not.

Video 2 at 00:44-01:05; S.D., RE 74-1, PageID#2169-2170, 2172.  Below are

screenshots of the crowd behind Sandmann.  The picture on the left is just before

---

[8]    Sandmann also acknowledges that moments earlier, as Phillips was moving
through the crowd, Sandmann "may have" moved to his right.  S.D., RE 74-1,
PageID#2175; Video 17 at 03:07-03:12; *see also* S.D., RE 74-1, PageID#2166;
Video 2 at 00:07-00:10.

Phillips reached where Sandmann (identified with the yellow circles) stood, and the one on the right is about 15 seconds later after the four rows of students immediately behind Sandmann had moved aside:

 

Video 8 at 0:14, 0:31. It appeared to Phillips that Sandmann alone intentionally did that to prevent him from continuing to walk forward and did not want to let him pass. Phillips Decl., RE 53-2, PageID#728-729. Believing they were at an impasse, Phillips stood in place and continued singing. *Id.* Frejo, Bell, Andrade, and Stegenga also perceived that Sandmann blocked Phillips. Frejo Decl., RE 53-5, PageID#754; Bell Decl., RE 53-4, PageID#745; Andrade Decl., RE 53-3, PageID#737; *see also* Stegenga Decl., RE 53-7, PageID#768. And Sandmann also felt the two were at an impasse from his vantage-point. S.D., RE 74-1, PageID#2180.

Sandmann does not dispute that, based on observing Sandmann's behavior, Phillips could have perceived that Sandmann was intentionally blocking him:

Q: Now, those -- the other students -- other students, right, parted for Phillips, correct, and you didn't?

A:  Hut-uhn.

Q.  Couldn't Phillips have perceived that you intended to stop his path forward?

. . .

A.  He could have.  I think he would have figured out really quickly, if he tried to move anywhere else, that I wasn't going to follow them.

Q.  So you think you could have -- you think he could have figured that out, and we will talk about that, but would you acknowledge that he could have perceived that it was your intention to stop his path forward?

A.  Right.

*Id.* at PageID#2164; *see also id.* at PageID#2182, 2184.

Sandmann also acknowledges there could be significant cultural differences affecting how Phillips perceived Sandmann's conduct:

Q: [E]ven if a teenager thinks that an older person might be trying to intimidate them, you see that that person is walking forward and other people are parting for him, isn't the respectful thing to do to move out of his way as well?

A. Not if he's trying to intimidate me.

Q. . . . [E]ven if you think the older person is trying to intimidate you, you don't think the respectful thing to do is to just move out of the way?

A. I can't see why I would. If -- if they want to intimidate me, which I would assume then means they exhibit a dislike of me, I can't find any compelling reason as to why I would equally return the respect to clear a place for them to move.

\* \* \* \*

24

Q. Do you have any idea what in the Native American culture would be considered the respectful thing to do in that situation?

A. I would assume the respectful thing is probably to just move out of the way regardless.

Q. But you disagree with that?

A. Well, it's not how I was raised.

*Id.* at PageID#2163.

### 6.    Phillips and Sandmann Stand Face-to-Face While Both Feel "Blocked"

After Sandmann planted himself, the two remained in place for approximately six minutes. *Id.* at PageID#2201. Phillips continued to drum and sing. Video 8 at 00:27-00:33. As he did, voices from the crowd shouted taunts at Phillips like "you can't move him!" (Video 2 at 03:20-03:32; S.D., RE 74-1, PageID#2178, 2194), "he ain't moving!" (Video 2 at 01:18-01:22; S.D., RE 74-1, PageID#2192), and "unmovable object!" (Video 2 at 01:22-01:29 S.D., RE 74-1, PageID#2192).

While Sandmann testified that he intentionally remained planted there, after a couple of minutes had gone by, Sandmann too started to feel like he wanted to exit the situation. S.D., RE 74-1, PageID#2160-2161, 2179. But he did not, in part because by that point he too felt like he was "blocked." *Id.* at PageID#2160-2161, 2179-2180, 2185 ("Q: …So you said you felt like you were being, at least at one

point, at some point in the encounter, right, blocked by the crowd? A. Right.").[9] Sandmann felt blocked even though he thought that his classmates, who had by that point surrounded both him and Phillips, would have made room for him if he had asked them to move aside. *Id.* at PageID#2185.

During those six minutes, more CovCath students mocked Phillips, shouting insults like "Grab his d**k and twist it! and "beat that drum!". Video 2 at 00:55-01:03, Video 8 at 00:35-00:42, S.D., RE 74-1, PageID#2189-2191 ("grab his d**ck and twist it"); Video 2 at 01:49-01:51, S.D., RE 74-1, PageID#2193 ("beat that drum"). Sandmann does not dispute that those statements could be perceived as mocking. S.D., RE 74-1, PageID#2191, 2193.

### 7.    The Incident Ends

Eventually a teacher told students the buses were arriving. Video 3 at 2:20-2:37; S.D., RE 74-1, PageID#2201. Sandmann and other students then walked away. Video 11 at 01:02-01:13. Since the teenagers were starting to leave, Phillips no longer felt any need to exit and turned around to continue his prayer. Phillips Decl., RE 53-2, PageID#729. About a minute later, Phillips too walked away. Video 3 at 3:35-3:45.

---

[9]    A therapist who later interviewed Sandmann also noted that: "Nick recalled that he could not move, as he was being blocked by the crowd." Ex. L to Jt. Memorandum, RE 53-20, PageID#1065.

While Sandmann had survived motions to dismiss in large part by alleging that a handful of words or actions seen on videos shortly after the confrontation ended was proof of a pre-planned scheme to capture a viral moment, the record before the District Court on summary judgment was entirely to the contrary. For example, the individual (Andrade) who Sandmann claimed was Phillips' hand-picked "cameraman" did not know Phillips, and was (like dozens of others present) just recording video for himself and never posted it on social media. Andrade Decl., RE 53-3, PageID#735-736. When one person (Andrade) told another (Frejo) that "I got him," he was referring to *Phillips*, not Sandmann. Andrade was assuring Frejo that he would stay with Phillips so that Phillips would not be left alone after the incident, and Bell likewise said "We got Nate." Frejo Decl., RE 53-5, PageID#755; Andrade Decl., RE 53-3, PageID#738; Bell Decl., RE 53-4, PageID#746; Video 3 at 02:43-02:55; Video 11 at 01:23-01:33 (Bell says "We got Nate").

Similarly, Sandmann assumed that because Andrade can be heard calling Phillips "Grandpa," that meant the two were close. Video 3 at 3:21-3:24; S.D., RE 74-1, PageID#2200. In fact, the two did not know each other; Andrade said "Grandpa" because addressing an elder person with a familial term can be a way to express respect and endearment in some indigenous (and other) cultures. Andrade Decl., RE 53-3, PageID#738; Phillips Decl., RE 53-2, PageID#730. And when

Phillips held his drum up and turned around in a circle, he was not celebrating capturing some viral moment, as Sandmann had alleged.  Rather, that was a common ritual to end a prayer by symbolically sending it in all directions.  Phillips Decl., RE 53-2, PageID#730; Video 3 at 3:21-3:33.

### C.    Sandmann's Putative "Expert"

Just one week after Sandmann testified at his deposition that he had intentionally "planted" himself in Phillips' path and that Phillips could have perceived that he blocked him, S.D., RE 74-1, PageID#2158, 2164, his counsel retained Dr. Craige Roberts, a professor of linguistics, to provide "expert" testimony.  *ABC*, Roberts Dep. Tr., RE 78-2, PageID#1847-1848.  Dr. Roberts then wrote a report that *purposefully* excluded any consideration of Sandmann's deposition testimony, as well as any statement by Phillips or any other percipient witness to the incident.  *Id.* at PageID#1704-1705, 1708.  Instead, Dr. Roberts merely watched the Stipulated Videos and offered her own opinion about whether it appeared to her that Sandmann had blocked Phillips.  *Id.* at PageID#1825, 1833.  Even so, her conclusion was that the Blocking Statements and materially similar statements reflected Phillips' opinion about what had happened.  *Id.* at PageID#1707, 1710, 1716.  She merely disagreed with Phillips and thought that he had misinterpreted what had occurred.  *Id.* at PageID#1707, 1729, 1732.

## II.    THE DISTRICT COURT'S DECISION

On July 26, 2022, the District Court granted Appellees' motions for summary judgment.  Op., RE 81, PageID#2331-2351.  The court addressed the Blocking Statements that had been originally published by the *Post*, and noted that, consistent with the parties' positions, the same analysis applied to other similar statements, like that by Phillips to CBS.  *Id.* at PageID#2345; *id.* at n.10 (noting that while some of the statements published in some of Appellees' articles "differ slightly," "the parties apply the same analysis to these statements").  After considering the discovery record, the District Court concluded they were non-actionable opinion, and thus entered judgement as to all of Sandmann's defamation claims against all Appellees.

While Appellees also moved for summary judgment on the alternative grounds that the challenged statements were not materially false, and were not defamatory, the Court did not reach either issue.  In addition, Sandmann filed a cross-motion for partial summary judgment on the issue of substantial truth, and each of the Appellees filed a *Daubert* motion to strike Dr. Roberts' testimony.  Motion to Strike, RE 64, PageID#1471-1816.  The District Court denied both motions as mooted by its summary judgment decision.  Op., RE 81, PageID#2349.

On October 12, 2022, this Court consolidated the five pending appeals for purposes of briefing.  Pursuant to this Court's consolidation order, Appellees

jointly submit this brief, and are also each submitting individual briefs that discuss their respective specific publications.

## SUMMARY OF ARGUMENT

This Court should affirm the challenged statements are non-actionable opinion. As both constitutional and Kentucky law require, the District Court properly considered the imprecise and subjective nature of the words at issue, the context in which they were spoken and published, and whether they implied any undisclosed, defamatory facts. Sandmann misstates well-settled defamation law when he argues that: (1) the fact-opinion issue be reserved for the jury in this case; (2) any fact-finding by the District Court precludes the challenged statements from being opinion; and (3) statements describing sensory perceptions or using transitive verbs to describe real events are always factual.

Nor did the law of the case doctrine preclude the District Court from resolving the opinion issue at summary judgment. That doctrine does not apply to the summary judgment stage of a case where the pleadings have been supplemented with discovery, nor was there any "law of the case" at that point because the District Court did not resolve the opinion issue at the pleadings stage.

In addition, this Court may affirm the judgment below on any of three alternative grounds, each of which was raised below. The challenged statements are not actionable because they are substantially true and are not reasonably

capable of a defamatory meaning.  Moreover, Sandmann's claims are  barred by Kentucky's statute of limitations.

## STANDARD OF REVIEW

This Court reviews "a grant of summary judgment *de novo*, applying the same test as used by the district court."  *Compuware Corp. v. Moody's Inv'rs. Servs.*, *Inc.*, 499 F.3d 520, 525 (6th Cir. 2007) (citation omitted).  Additionally, in cases implicating the First Amendment, "an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression."  *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 596 (6th Cir. 2013) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17 (1990)).  A lower court's application of the law of the case doctrine is reviewed under an "abuse of discretion standard."  *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002).

## ARGUMENT

## I.    THE DISTRICT COURT CORRECTLY HELD THAT THE BLOCKING STATEMENTS ARE NON-ACTIONABLE OPINION

Sandmann first claims that the District Court applied the wrong legal standard governing the fact/opinion distinction.  Br., PageID#22-26, 33.  He then claims, for several reasons, that the Blocking Statements are inherently factual. Sandmann is mistaken on all counts.

## A.     The District Court Applied the Correct Legal Standard

While Sandmann's brief sets forth its own version of the law, it never makes clear what purportedly incorrect "legal standard" the District Court applied. Instead, it largely dismisses the District Court's reasoning as holding that the Blocking Statements were "constitutionally protected opinion, simpliciter." Br.,PageID#34.   That is not an accurate characterization of the District Court's analysis.   To set the record straight, this brief will first show that the District Court applied well-established defamation law and then demonstrate why Sandmann's description of the applicable legal standard is mistaken.

### 1.     The Opinion Doctrine Applied by the District Court Was Correct

The District Court considered "whether a reasonable reader, in reading the entire article, would understand that the statement in question is someone's opinion or interpretation of an event or situation."   Op., RE 81, PageID#2344.   There is nothing novel or controversial about that standard.   *See, e.g.*, *Croce v. Sanders*, 843 F. App'x 710, 714 (6th Cir. 2021) ("These considerations turn on "the reasonable reader's perception of the statement—not on the perception of the publisher." (citation omitted); *Seaton*, 728 F.3d at 599 ("Readers would, instead, understand the list to be communicating subjective opinions of travelers who use TripAdvisor.").

To answer that question, the District Court first considered whether a person's statement that another is "blocking" them is by its nature subjective and imprecise, and therefore not readily verifiable. The propriety of that inquiry is well-settled. *See, e.g.*, *Edelstein v. Gmoser*, No. 21-3292, 2022 WL 4372200, at *2 (6th Cir. Aug. 29, 2022) (statement not objectively verifiable where it is "subjective" and "standardless"); *Holsapple v. Cunningham*, 817 F. App'x 95, 109 (6th Cir. 2020) (remarks that were "contingent . . . on subjective evaluation" protected as opinion); *Seaman v. Musselman*, No. 2002-CA-001269, 2003 WL 21512489 (Ky. Ct. App. July 3, 2003) (statements that are "quintessentially subjective and impl[y] no allegations of an undisclosed fact" are non-actionable opinion).

Next, the Court assessed "the style of writing and [] context" in which the Blocking Statements were made by Phillips and then published by the Appellees. Op., RE 81, PageID#2348. That inquiry is likewise required by both the First Amendment and Kentucky law. *See, e.g.*, *Seaton*, 728 F.3d at 597 (courts should assess "the general tenor of [an] article") (quoting *Milkovich*, 497 U.S. at 21); *Garrett v. Tandy Corp.*, 295 F.3d 94, 104, 106 (1st Cir. 2002) (the fact-opinion inquiry may include "the identity of the speaker, the identity of the audience, the circumstances in which the statement is made, what else is said in the course of the conversation, and a myriad of other considerations"); *Yancey v. Hamilton*, 786

S.W.2d 854, 857 (Ky. 1989) (in assessing whether a statement is protected opinion, courts must consider "the whole context of its publication"); *Hays v. Clear Channel Commc'ns, Inc.*, No. 2005-CA-001490-MR, 2006 WL 3109132, at \*4 (Ky. Ct. App. Nov. 3, 2006) ("tenor and tone" of publication did not support defamation finding).

Finally, the District Court concluded that Phillips' statements did not imply any undisclosed, defamatory facts.  Op., RE 81, PageID#2349.  That too is an essential element of the opinion inquiry.  *Milkovich*, 497 U.S. at 18-19; *Yancey*, 786 S.W.2d at 857.  In fact, contrary to Sandmann's argument that the District Court ignored Kentucky law's treatment of Section 566 of the Restatement (Second) of Torts (Br., PageID#33-35), the Restatement requires that the Court address that question.  *Yancey*, 786 S.W. 2d at 857; Restatement (Second) of Torts, § 566.

In short, the District Court applied the correct legal standard.

### 2.    Sandmann's Version of the Applicable Legal Standard Is Erroneous

#### a.    The Opinion Inquiry Does Not Present a Potential Jury Question

Although initially Sandmann acknowledges that "[w]hether a statement constitutes protected opinion or fact is a question of law for the court to decide," Br., PageID#23, his characterization of the "legal standard" is to the contrary.  He

argues that whether a statement is fact or opinion can itself be a "factual question" that more often than not is reserved for the jury. Br., PageID#25. The court's only role, Sandmann maintains, is to identify those relatively few statements that could not be "sufficiently factual" for the jury to make that determination. Br., PageID#23.

Sandmann is mistaken. Rather, "[w]hether a statement is fact or opinion is a question of law for the court to decide" – period. *Croce*, 843 F. App'x at 713; s*ee also Cromity v. Meiners*, 494 S.W.3d 499, 504 (Ky. Ct. App. 2015)("Whether a statement qualifies for protection under the constitutional pure opinion privilege is a legal question to be decided by the court, not a question for the jury."). To be sure, in deciding that question of law a court must assess whether a statement is "capable of being proved objectively incorrect," *Clark v. Viacom Int'l, Inc.*, 617 F. App'x 495, 508 (6th Cir. 2015) (citing *Milkovich*, 497 U.S. at 20), or otherwise "connotes actual, objectively verifiable facts," *Compuware*, 499 F.3d at 529. Here, the District Court did just that. Op., RE 81, PageID#2346-2348. And as previously discussed, to reach that determination, the District Court properly evaluated both the nature and context of the Blocking Statements.

**b.** **The District Court Properly Considered the Very Factual Record Sandmann Argued Was Necessary to Resolve the Opinion Issue**

Sandmann also argues that because the District Court made some factual findings related to the underlying incident, that somehow precludes the conclusion that Phillips' expression of his subjective interpretation of Sandmann's conduct is opinion. Br., PageID#23. In effect, Sandmann argues that if it is possible to draw any factual conclusions about any aspect of an event, then nothing about a person's subjective perception of that event could be opinion. *Id.* at PageID#22-23. That is not the law. To the contrary, opinion cases routinely involve a speaker's assessment of underlying facts. *See, e.g.*, *Compuware*, 499 F.3d at 522, 529 (credit ratings are opinion even though dependent on "several objective factors" and even if "fact-based inferences" could be drawn from the rating).

And while Sandmann points to this Court's recent decision in *Croce v. Sanders* to try to support his position, *Croce* is to the contrary. There, this Court held that several of the defendant's statements about the plaintiff's research and published findings, including statements that the plaintiff had "knowingly engag[ed] in scientific misconduct and fraud," were, in context, opinion because they reflected "subjective assessment[s]" of objective facts about plaintiff's body of research. 843 F. App'x at 714-15. Moreover, this Court found that speech is protected opinion "where reasonable readers would see that there is ample room

36

for interpretation of the evidence" or where the statement can be subject to "genuine disagreement." *Id.* at 716. Here too, as each Appellee sets forth in the individual supplemental briefs, the challenged statements were published within contexts that conveyed a disagreement regarding what had transpired, including whether anyone was "blocked" (or "sort of stopped") in the course of a confusing and chaotic environment.

Moreover, there is considerable irony in Sandmann's current critique of the District Court's reasoning. Sandmann now argues the District Court erred by considering the very factual record that *Sandmann* had insisted was essential to resolve the opinion inquiry. *See, e.g.*, *Post*, RE 60, PageID#828 ("You just don't see a term and go, that's opinion. You have to look at the factual circumstances to determine whether the speaker -- in this instance, Mr. Phillips -- was expressing an opinion or whether Mr. Phillips was expressing a factual narrative."). The District Court's findings about undisputed facts related to the incident (none of which Sandmann actually takes issue with) were thus largely responding to *Sandmann's* theory that the Blocking Statements were not genuine opinions, but rather deliberate lies that were part of a pre-hatched scheme to create and launch a viral video.

The point of many of the undisputed facts the District Court noted was that they all refuted that theory, which was never based on anything other than pure

speculation. For example, the District Court found that Phillips did not know any of the supposed "companions," there was no prior planning, and the incident was impromptu. Op., RE 81, PageID#2338-2339. Other facts the Court noted also support the conclusion that Phillips (as well as Sandmann) were each expressing their genuine perceptions about whether each was (or was not) being blocked. For instance, the Court found that Phillips was moving forward through the crowd at the moment in question, other students moved out of his way, and Sandmann adjusted his footing just as Phillips approached. *Id.* at PageID#2338-2340. It also found that neither Phillips nor Sandmann changed their position once standing face-to-face, five other eyewitnesses perceived Sandmann to be blocking Phillips, and Sandmann also felt that he was blocked. *Id.* at PageID#2337-2340. Tellingly, the basic theory Sandmann advanced to survive the pleadings stage is now scarcely evident in his brief, apart from occasional rhetoric speculating that Phillips somehow set out to instigate a confrontation with Sandmann. Br., PageID#11, 13. But "conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment." *Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003).

It has always been Appellees' position that Sandmann's claims of a conspiratorial ambush were legally irrelevant. Even if Phillips' opinions had been

made "maliciously or insincerely," they would still be protected as opinion. *See Hammer v. City of Osage Beach*, 318 F.3d 832, 842 (8th Cir. 2003). But it was not necessary for the District Court (nor this Court) to address that point, because the very factual record Sandmann had insisted was necessary to resolve the fact-opinion distinction supported the District Court's initial determination that the Blocking Statements were non-actionable opinion. *Post*, RE 47, PageID#459-463. That the results of discovery may not have been to Sandmann's liking is no basis to construct a "legal standard" that is premised on ignoring that undisputed record.

Finally, while in the court below, Sandmann's 60 pages of summary judgment opposition briefs never mentioned the words "sliding," "to the right," "to the left," or any other statement by Phillips other than the Blocking Statements to the *Post*, as a new argument on appeal his brief to this Court leads with those words and repeats them more than two dozen times. E.g., Br., PageID#9, 13, 16, 18. The District Court properly treated Phillips' statements to CBS, including the words about sliding, as materially similar to the Blocking Statements just as Sandmann did. RE81 at PageID#2345 n. 10. But even if Sandmann had taken a different position below, it would make no difference because Phillips' words to CBS likewise express his perception that Sandmann was intending to stop his path forward and are equally supported by the record.[10]

---

[10] Sandmann admitted that he moved, or at least "adjusted his footing" as

### c.    The Opinion Doctrine Does Not Exclude Sensory Perceptions or Transitive Verbs

Sandmann also offers several rules for courts to follow in applying his proposed legal standard that are likewise contradicted by well-settled defamation law.

First, Sandmann maintains that "a statement about the physical world, taken directly from our sensory perception of it," is always a statement of fact.  Br., PageID#28.  At the outset, that assertion ignores that the Blocking Statements were not merely "about the physical world."  Rather, as the District Court found, they also reflected Phillips' perceptions of Sandmann's state of mind.  Op., RE 81, PageID#2347.

In any event, Sandmann's claim defies common sense.  For example, if a person remarks "it is cold," the fact that others may have different tolerance levels for temperature does not render that statement provably false.  Thus, courts regularly hold that sensory observations of physical events can be expressed as opinions, including the perception that a person was "blocked."  *See, e.g.*, *Macineirghe v. Cty. of Suffolk*, No. 13-CV-1512 (ADS) (SIL), 2015 WL 4459456,

---

Phillips' approached, but just quibbled with how much.  S.D., RE 74-1, PageID#2176 ("I moved six inches at the most.").  And after reviewing video of the few seconds when he and Phillips first came face-to-face, Sandmann acknowledged it was "possible" that Phillips' movements indicated that Phillips "was trying to see if [Sandmann] would move out of his way" and that Phillips could have "perceived that [Sandmann] intended to stop his path forward."  S.D., RE 74-1, PageID#2164, 2172.

at \*14 (E.D.N.Y. July 21, 2015) (statement that plaintiff "blocked" defendant's exit was opinion); *Cromity*, 494 S.W.3d at 504 (defendant's characterization of a policeman's conduct during traffic stop was protected opinion).

Finally, Sandmann maintains that statements using "transitive verbs" are, by definition, assertions of fact. Br., PageID#36-37. But a host of cases have found statements involving transitive verbs to be protected opinion.[11] For all these reasons, the District Court applied the correct legal standards to the fact-opinion inquiry.

## B.    The District Court's Conclusion That the Blocking Statements Are Non-Actionable Opinion Was Correct

After applying the proper legal standard, the District Court found that the Blocking Statements are "objectively unverifiable" in their context and thus non-actionable opinion because a "reasonable reader would understand that Phillips was simply conveying his view of the situation." Op., RE 81, PageID#2346. That conclusion was correct.

---

[11] *See Greenbelt Co-op. Publ'g Ass'n v. Bresler,* 398 U.S. 6, 14, 21 (1970) (accusation that someone "committed blackmail" was opinion); *Hogan v. Winder,* 762 F.3d 1096, 1108 (10th Cir. 2014) ("accusations of extortion"); *Jenkins v. Snyder,* No. 00CV2150, 2001 WL 755818, at \*5 (E.D. Va. Feb. 6, 2001) (statement that groundskeepers were "trying to kill someone with their crappy fields"); *Biber v. Duplicator Sales & Serv., Inc.*, 155 S.W.3d 732, 737 (Ky. Ct. App. 2004) (statement that company president "felt like he had been conned by the world's greatest con man"); *Franklin v. Dynamic Details, Inc.,* 116 Cal. App. 4th 375, 389 (2004) (statements that plaintiff "stole" copyrighted material and "plagiarized" data).

### 1. "Blocking" Is an Imprecise, Subjective Term

First, the District Court correctly observed that the term "blocking" in general is a subjective and "imprecise term capable of different meanings" that is not readily verifiable. *Id.* As a matter of common sense, if one person facing another says "You are in my way" and the other responds "No I am not," neither statement is likely to be provably false.

Moreover, Sandmann's own statements about the encounter reinforce the subjectivity of Phillips' statement. In Sandmann's first public statement after the incident, he responded to Phillips by saying "I never *felt* like I was blocking the Native American protestor," which underscores that the situation was a matter of perspective. Ex. M to Jt. Memorandum, RE 53-21, PageID#1068 (emphasis added). And at his deposition, Sandmann reiterated that although he did not "feel" like he was blocking Phillips, he now recognizes that Phillips "could have" perceived that Sandmann "intended to stop [Phillips'] path forward." S.D., RE 74-1, PageID#2164. Finally, the subjectivity of Phillips' statement is further illustrated by Sandmann's perception that a few minutes into the standoff, the rest of the crowd, including Phillips, was blocking him. *Id.* at PageID#2185. Someone else watching the same events might disagree that Sandmann was being blocked by his own friends and classmates, while others might disagree that Sandmann was

blocking Phillips, but that only further highlights how feeling "blocked" in those moments was a matter of subjective impression, not a provable fact.

Sandmann largely caricatures the District Court's reasoning, claiming that it reflects an "epistemology" that any person's statement about their sensory perception of the physical world constitutes a non-actionable opinion.  Br., PageID# 27-28.  But the District Court held nothing of the kind.  For example, while Phillips' and Sandmann's expression of their perceptions that each was "blocked" were both non-actionable opinions, that does not suggest that all other statements either one made about the incident – e.g., that Sandmann wore a red hat, or that Phillips held a drum – were therefore opinions.  Sandmann's other arguments about the word "blocking" all follow from his claims that all transitive verbs, or any statement about the "physical movement of an observable object" based on "sensory data," are inherently factual.  *Id.* at PageID#18, 29-30, 36-37. For all the reasons previously discussed, those arguments lack merit.

Finally, Sandmann never explains how the only other case to consider whether the word "blocked" expressed an opinion, *Macineirghe v. County of Suffolk*, can be reconciled with his theories.  2015 WL 4459456 at *14.  In *Macineirghe*, the statement that the first plaintiff "blocked" a police officer's squad car from following the second plaintiff was also supported by factual findings about several sensory observations: the second plaintiff ran away from the police

officers; police officers indicated that they were going to chase him; the defendant got into his squad car; and the first plaintiff fell on the ground near the squad car before it could be started. *Id.* And just as in this case, other bystanders could have observed the same events and genuinely disagreed that someone was "blocked" because the term is imprecise and not verifiable. *See also Blessing v. Cable News Network, Inc.*, No. 2:20-CV-0015, 2020 WL 7647530, at *6-7 (E.D. Ky. Dec. 23, 2020) (Phillips' statement that the teens "swarmed around him" were "inherently subjective and not provably false").

### 2. The Context in Which the Blocking Statements Were Made and Published Supports That They Are Opinion

The District Court next assessed the context in which the challenged statements were made and published, as it was required to do. *Bd. of Forensic Document Exam'rs, Inc. v. ABA*, 922 F.3d 827, 832 (7th Cir. 2019) ("Context is key, as it matters not only what was said, but who said it, where it was said, and the broader setting of the challenged statements."). The District Court properly concluded that, as presented in Appellees' publications, reasonable readers would recognize "that Phillips was simply giving his perspective on the incident." Op., RE 81, PageID#2348-2349. Appellees' individual response briefs address their various publications in more detail, but to the extent that Sandmann broadly suggests that opinion statements can only be found on the editorial page and not in "reportage describing completed events," he is mistaken. Br., PageID# 20-21.

*See, e.g., Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1137 (10th Cir. 2017); *Riley v. Harr*, 292 F.3d 282, 291-92 (1st Cir. 2002); *Underwager v. Channel 9 Australia,* 69 F.3d 361, 366-67 (9th Cir. 1995). To hold otherwise would leave "no room for expressions of opinion by commentators, experts in a field, *figures closely involved in a public controversy*, or others whose perspectives might be of interest to the public." *Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995) (emphasis added).

The District Court also explained how the context of the underlying events reported made it apparent that Phillips was expressing his subjective assumptions about Sandmann's intentions. *See, e.g.*, *Riley,* 292 F.3d at 291-92; *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222 (7th Cir. 1993). The court noted that neither ever spoke to the other. Op., RE 81, PageID#2347 n.11.[12] It also noted that the incident occurred in a "large, open area adjacent to the Lincoln Memorial." Op., RE 81, PageID#2346. In that type of setting, whether one person is "blocking" another is even more likely to reflect subjective perceptions about each person's

---

[12] The same may be said about Sandmann's perceptions of Phillips' intentions at the time. For example, Sandmann's first public statement said that "perhaps a group of adults was trying to provoke a group of teenagers into a larger conflict" and "it was clear to me that he [Phillips] had singled me out for a confrontation." Ex. M to Jt. Memorandum, RE 53-21, PageID#1067-1068. Had Phillips also filed defamation suits against the Appellees for including Sandmann's statements, which many of their news reports did, Phillips' claims would likewise properly be dismissed as challenging the non-actionable opinions of Sandmann.

intended movements, and Sandmann does not really take issue with that point. Rather, his only response is to question whether all readers would know that the Lincoln Memorial is wider than the Jefferson Memorial.   Br., PageID#31.   In reality, both settings are quite expansive, and as Appellees' supplemental briefs explain, the publications at issue were replete with videos, pictures, and links that showed where the incident took place.

Sandmann further suggests that the Blocking Statements are necessarily "verifiable" because the incident was captured on video (Br., PageID#19-20), but that position has no basis in either law or logic.  Video might help others form their own views about an event, but it does not transform the participants' expression of their contemporaneous, subjective perceptions into statements of fact.   In fact, courts have held statements to be non-actionable opinion that were based entirely on watching videos of others' conduct.  *See, e.g.*, *Doe #1 v. Syracuse Univ.*, 468 F. Supp. 3d 489, 512 (N.D.N.Y. 2020) (university chancellor's "characterization" of conduct shown on videos as "racist" and "homophobic" was protected opinion); *Friendship Empowerment & Econ. Dev. v. WALB-TV*, No. 1:04-CV-132(CDL), 2006 WL 1285037, at *5 (M.D. Ga. May 10, 2006) (differing views about whether surveillance video that was aired in a newscast showed conduct that was child abuse were non-actionable opinions).   And as the District Court found, any

objective facts that may be gleaned from the videos here support the conclusion that the Blocking Statements expressed Phillips' opinion.[13]

Sandmann also points to examples of cases from other jurisdictions holding to be factual statements that he contends were "far more subjective than blocking." Br., PageID#32-33.    To the contrary, those cases merely underscore why the District Court properly evaluated the Blocking Statements in context.    Because the opinion inquiry is dependent on context, there are myriad examples in which the identical word or phrase has been found to be either fact or opinion, depending on the nature of the word, the circumstances in which it was uttered, and other contextual factors.    Thus, every one of Sandmann's examples has also been held to be a statement of opinion in other contexts.    *Compare Milkovich*, 497 U.S. at 19 (statement that plaintiff was a "liar" held to be statement of fact), *with Cromity*, 494 S.W.3d at 504 (statement that plaintiff was "an out and out liar" held to be non-

---

[13] Sandmann also cites several cases stating that when there is a "conflict" between video evidence and witness narratives, the court must consider the evidence in the light of videotape.    Br.,PageID#19.    That is of course so, but neither below nor in his brief does Sandmann point to any material inconsistencies between the *actual* testimony of any eyewitness and any *actual* video.    Indeed, his counsel made this very point in the *Post* case when he told the District Court that it should *not* "look at these various videos to figure out what was Phillips saying," because "the only way to answer that question is to depose Mr. Phillips."    *Post*, RE 60, PageID#828.

actionable opinion).[14]   Moreover, unlike here, in the cases Sandmann cites, the

particular words he quotes were found to be actionable because they were allegedly

premised on other disclosed or implied defamatory facts.  *See, e.g.*, *Milkovich*, 497

U.S. at 19 (statement that defendant "lied" implied undisclosed, defamatory facts);

*Tech Plus Inc. v. Ansel*, 793 N.E.2d 1256, 1266 (Mass. App. Ct. 2003) (statement

that plaintiff was "anti-Semitic" was reliant on defamatory facts).

Finally, Sandmann also briefly points to the review of videos by his

proffered linguistics expert, Dr. Craige Roberts.   Br., PageID#32.   While Dr.

Roberts' testimony was inadmissible for the reasons Appellees explained to the

District Court, *see* Memorandum of Law In Support of Mot. to Strike, RE 64-1,

PageID#1473-1505, even if this Court were to consider her views they would make

no difference.   Dr. Roberts explained that the Blocking Statements can best be

---

[14] *See also Samuels v. Tschechtelin*, 763 A.2d 209, 245 (Md. Ct. Spec. App. 2000) (statement that employee was terminated for "poor performance" was statement of fact); *Yates v. Iowa W. Racing Ass'n*, 721 N.W.2d 762, 772 (Iowa 2006) (statement that contract was terminated due to "poor performance" was non-actionable opinion); *McCray v. Infused Sols., LLC*, No. 4:14-cv-158, 2018 WL 2392507, at *8 (E.D. Va. May 25, 2018) (court assumed *arguendo* statement that an "[e]mployee is extremely confrontational and exhibiting constant insubordinate behavior" was a statement of fact); *Glaze v. Marcus*, 729 P.2d 342, 344 (Ariz. Ct. App. 1986) (statement that employee's behavior was "unprofessional, insubordinate or abusive" was non-actionable opinion); *Ansel*, 793 N.E.2d at 1266 (statement that plaintiff told "anti-Semitic jokes" was a statement of fact); *Doe #1*, 468 F. Supp. 3d at 512 (characterization of students' remarks as "anti-Semitic" was protected opinion).

characterized as Phillips' *opinion* about what transpired; she just disagrees with him. *ABC*, Roberts Dep. Tr., RE 64-2, PageID#1729-1732. More broadly, the very fact that Sandmann has proffered an expert whose opinion is that she disagrees with Phillips' opinion reinforces the point that the Blocking Statements are not actionable.

Sandmann's argument essentially boils down to one circular claim: the Blocking Statements are fact because they are statements of fact. That conclusory logic does not support reversal of the District Court's decision.

### 3.    The Blocking Statements Did Not Imply the Existence of Any Undisclosed, Defamatory Facts

Finally, the District Court held that the Blocking Statements "did not imply the existence of any nondisclosed defamatory facts." Op., RE 81, PageID#2349. Sandmann does not challenge this aspect of the District Court's holding, nor does the record suggest any basis to do so.

## II.    THE DISTRICT COURT CORRECTLY HELD THAT THE LAW OF THE CASE DOCTRINE DID NOT PRECLUDE CONSIDERATION OF THE OPINION ISSUE AT SUMMARY JUDGMENT

Sandmann argues that the District Court disregarded the "law of the case doctrine" and thereby abused its discretion by considering the opinion issue at summary judgment. On its face, that argument fails as a matter of law. As the District Court explained, even if it had decided the opinion issue at the pleadings stage (which it did not, as discussed below), it would have been free to revisit it at

summary judgment.  The law of the case doctrine does not apply to "'earlier proceedings where a different legal standard governs,' such as a ruling at the pleading stage and subsequent summary judgment proceedings."  Op., RE 81, PageID#2341 (quoting *In re B & P Baird Holdings, Inc.*, 759 F. App'x 468, 477 (6th Cir. 2019)); *see also McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 513 (6th Cir. 2000). And where, as here, "considerable discovery supplements the pleadings," the "law-of-the-case doctrine [is left] *with no role to play*."  *Devlin v. Kalm*, 630 F. App'x 534, 539 (6th Cir. 2015) (per curiam) (emphasis added).

Moreover, even in other contexts where the law of the case doctrine could apply, it only applies to issues that were "actually decided."  *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015).  But as the District Court noted in its summary judgment decision, it did not resolve the opinion issue in its Rule 12 orders.  Rather, the District Court merely had held that the allegations of Sandmann's complaints "passed the 'plausibility' test," and that after discovery, "the actionability of the statements would be revisited on summary judgment."  Op., RE 81, PageID#2341.  Indeed, that is exactly what the District Court had stated in its Rule 12 orders: that following discovery it would "consider them anew [the Blocking Statements] on summary judgment."  *Post*, RE 64, PageID#861; *see also id*. at PageID#862 ("Of course, these allegations will be subject to discovery and summary judgment practice.  However, they do pass the requirement of

'plausibility.'"); *CNN*, RE 43, PageID#597 ("Naturally, following a sufficient period for discovery, these issues will again be reviewed at the summary judgment stage under a more stringent standard.").

Sandmann's brief essentially accuses the District Court of misconstruing its own rulings and asserts that it definitively held at the pleadings stage that the Blocking Statements were statements of fact. But even Sandmann implicitly acknowledges that no order actually said that. So to try to support that argument he plucks out words or phrases sprinkled throughout multiple Rule 12 and discovery orders and argues they amount to an "implicit holding," or one that may be inferred by "necessary implication." Br., PageID#42-43.

But Sandmann puts words in the District Court's orders that are not there. For example, Sandmann cites the *Washington Post* Order for the proposition that the Court "ordered the parties to conduct discovery on the truth or substantial truth of the blocked/retreat statements." Br., PageID#41. But the Order says nothing remotely suggesting that discovery would be limited to that single issue. It merely states that the amended complaint's "allegations will be subject to discovery and summary judgment practice." *Post*, RE 64, PageID#862.

Sandmann also points to the scheduling orders entered by the Magistrate Judge as supposedly demonstrating that all parties and the District Court "understood the fact/opinion issue as decided." Br., PageID#43. But those orders

are likewise to the contrary. The scheduling orders adopted the parties' Joint Rule 26 Report, which provided that discovery and summary judgment motions in the first phase of the case would address whether the Blocking Statements are "true or substantially true, *or otherwise not actionable based on the undisputed facts developed during initial discovery and the issues defined in the Court's prior decisions.*" RE 38, PageID#303-304 (emphasis added). Sandmann's view would render most of that Order superfluous.

Finally, Sandmann argues that it would have made no sense for the District Court to order discovery on the opinion issue because opinion is a "purely legal question" that, as a categorical matter, could never benefit from discovery. Br., PageID#43. On its merits, that proposition of law is incorrect. Because the opinion doctrine frequently requires consideration of the context of the statements at issue, as well as facts that may be disclosed or implied, courts often resolve the issue at the summary judgment stage, following discovery.[15]

---

[15] *See, e.g., Bentkowski v. Scene Mag.*, 637 F.3d 689, 696 (6th Cir. 2011) (affirming summary judgment that statements were protected opinion); *Loftus v. Nazari*, 21 F. Supp. 3d 849, 853 (E.D. Ky. 2014) (holding on summary judgment that statements were protected opinion); *Nat'l Coll. of Ky., Inc. v. WAVE Holdings, LLC*, 536 S.W.3d 218, 226 (Ky. Ct. App. 2017) (affirming summary judgment that statements were protected opinion); *Williams v. Blackwell*, 487 S.W.3d 451, 455 (Ky. Ct. App.), *as modified* (Mar. 4, 2016) (same); *Cromity*, 494 S.W.3d at 504 (same).

Sandmann's arguments are especially wanting because it was Sandmann who argued to the District Court that the opinion issue should not be resolved without discovery, and the District Court ordered discovery primarily because it concluded that "justice requires" that Sandmann be afforded that opportunity. Then, having survived the pleadings stage by making incendiary allegations and demanding the right to prove them through depositions, Sandmann pointedly chose to avoid deposing anyone and instead retained an "expert" to also avoid the facts and just watch videos. While Sandmann may have the right to change his litigation strategy, he is not free to try to make it appear that it was the District Court, rather than himself, that changed its mind.

Thus, the District Court did not abuse its discretion in resolving the opinion issue at summary judgment.

## III.   ALTERNATIVELY, THIS COURT SHOULD AFFIRM BECAUSE THE BLOCKING STATEMENTS ARE SUBSTANTIALLY TRUE

Even if this Court were to conclude the Blocking Statements are statements of fact rather than opinion, this Court should affirm the District Court's decision on the alternative ground that the Blocking Statements are substantially true. Although the District Court did not reach the element of material falsity (or defamatory meaning, *see infra* Part IV), both issues were fully briefed at summary judgment and so this Court may affirm on either ground. *See Golf Vill. N., LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021).

**A.    The First Amendment Places the Burden on Sandmann to Show That the Blocking Statements Were Materially False.**

While state defamation law typically places the burden on the defendant to prove truth, the First Amendment requires that every defamation plaintiff has the burden of proving that speech of public concern is materially false, regardless of whether a plaintiff is a public or private figure. *Clark*, 617 F. App'x at 508.

Here there is no question the Appellees' publications were speech of public concern. *Post*, 401 F. Supp. 3d at 789. And as this Court has noted, "[i]f the truth or falsity of public commentary cannot be determined, the First Amendment requires that the scales be "tip[ped] . . . in favor of protecting true speech." *Clark*, 617 F. App'x at 508 (quoting *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986)). Thus, summary judgment is required where a plaintiff "fail[s] to demonstrate a genuine issue as to the material falsity of any of the alleged defamatory statements." *Bennett v. Cisco Sys., Inc.*, 63 F. App'x 202, 207 (6th Cir. 2003).

Importantly, a statement need not be literally true for the defendant to prevail. Rather, the test for substantial truth is whether "the substance, the gist, the sting, of the libelous charge be justified." *Estepp v. Johnson Cty. Newspapers, Inc.*, 578 S.W.3d 740, 744 (Ky. Ct. App. 2019) (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991)); *see also Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 312 (6th Cir. 2000) (same). Put another way, the

statement is not considered materially false unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson*, 501 U.S. at 517 (citation omitted).

This is a "low threshold." *Susan B. Anthony List v. Driehaus*, 779 F.3d 628, 633 (6th Cir. 2015). Thus, media defendants are "not to be held to the exact facts or to the most minute details of the transactions that [they] report[]." *Bell v. Courier-Journal & Louisville Times Co.*, 402 S.W.2d 84, 87 (Ky. 1966). Courts, including this one, have therefore regularly affirmed grants of summary judgment to defendants so long as the gist of an allegedly defamatory statement was substantially true, even with respect to statements that (unlike here) contained actual, factual inaccuracies. *See, e.g.*, *Nichols v. Moore*, 477 F.3d 396, 401 (6th Cir. 2007) (statements that individual was arrested "in connection with" the Oklahoma City bombing substantially true even though plaintiff was "never arrested or charged" for criminal acts "directly related" to the bombing, but rather charged in connection with an unrelated incident resulting from the investigation); *see also Nat'l Coll. of Ky.*, 536 S.W.3d at 218.

Sandmann argued below that Kentucky law does not recognize the doctrine of substantial truth, citing dicta in a single case, *Kentucky Kingdom Amusement Co. v. Belo Ky., Inc.*, which states that the concept only applies to circumstances

involving "incidental information" and not "essential content." 179 S.W.3d 785, 791-92 (Ky. 2005). Sandmann's claim was incorrect, for either of two reasons.

First, the First Amendment requires that a plaintiff prove material falsity. *Masson*, 501 U.S. at 517; *Brokers' Choice*, 861 F.3d at 1109–10 ("[T]he First Amendment, as applied in *New York Times*, *Gertz*, *Hepps*, and *Masson*, requires the plaintiff to prove material falsity, which is now accordingly an essential element of a defamation claim."); *Haynes*, 8 F.3d at 1228 ("The rule making substantial truth a complete defense and the constitutional limitations on defamation suits coincide."); s*ee also Wilson v. Scripps-Howard Broad. Co.*, 642 F.2d 371, 375 (6th Cir. 1981) .

Second, Kentucky law is consistent with that constitutional standard. *Kentucky Kingdom* involved a different and much narrower question—whether a jury's finding of falsity, following jury instructions that did not explicitly discuss substantial truth—was "clearly erroneous." 179 S.W.3d at 788-89, 791-92. In finding that it was not clearly erroneous, the court noted that Kentucky follows a "barebones" approach to jury instructions and that the defendants had been free to clarify the meaning of the falsity instruction in closing argument. *Id.* at 792. The court further found no clear error because its own review of the facts confirmed the statements were "fundamentally inaccurate" and it would not supplant the jury verdict where it found the evidence supported it. *Id.* at 792, 799.

Notably, *Kentucky Kingdom* specifically distinguished a court's role in reviewing a jury verdict from the scenario presented in *Bell v. Courier-Journal & Louisville Times Co.*, which the court explained was "a holding on summary judgment that the testimony of the plaintiff showed the truth of each item published. The [*Bell*] court . . . characterized the truth as 'at least substantially true.'" *Id.* at 791. Consistent with that approach, since *Kentucky Kingdom* both federal and Kentucky courts have granted summary judgment to defamation defendants on the grounds that the gist of the challenged statement was not materially false, even when the statement (unlike here) did contain factual inaccuracies. *See, e.g., Estepp*, 578 S.W.3d at 742, 744-746 (statements that plaintiff was removed from his position were substantially true, even though he actually resigned); *Nat'l Coll. of Ky.*, 536 S.W.3d at 218 (affirming summary judgment because statements were substantially true).

Sandmann also asserted below that substantial truth doctrine only applies to metaphorical or figurative language. Pl. Opp. to Defs. Mot. for Summary Judgment, RE 61, PageID#1150. That claim flatly misstates the law. Courts routinely apply the substantial truth doctrine where no figurative language is at issue.[16]

---

[16] *See, e.g., Nichols*, 477 F.3d at 401 (statement that plaintiff was "arrested in connection to the Oklahoma City bombing" substantially true); *Simonson v. United Press Int'l, Inc.*, 654 F.2d 478, 481 (7th Cir.1981) (substantially true to report

**B.    Sandmann Cannot Meet His Burden of Showing a Genuine Dispute That the Blocking Statements Were Materially False**

At bottom, the gist and sting of the Blocking Statements is that a teenager deliberately stood in the way of an older man to obstruct his path.  The undisputed record, including Sandmann's own testimony, shows that is what happened.  S.D., RE 74-1, PageID#2159-2160.  When Phillips started walking in the direction of the Lincoln Memorial, there were multiple rows of students between Phillips and Sandmann.  Sandmann observed that Phillips was moving forward, that his schoolmates were moving out of Phillips' way, and that Phillips was walking through the path they created for him.  But Sandmann thought that by walking through the students, Phillips was trying to intimidate them.  So he decided that "unlike others at my school," he was not going to step out of Phillips' way.  *Id.*

Rather, Sandmann thought it was "time for someone to plant their foot" and "face up" to Phillips because "enough is enough," and he wanted to send a pointed message that the school would not be intimidated.  *Id*. at PageID#2158.  Because the gist and sting of the Blocking Statements are consistent with Sandmann's own description of the incident, they cannot be considered materially false.  Put another

---

person charged with rape when actually charged with second degree sexual assault); *Parry*, 236 F.3d at 312 (characterization of driver as "immediately disqualified" under drug tests substantially true though "refusal to test" would have been more accurate); *Estepp*, 578 S.W.3d at 746 (substantially true that plaintiff was "removed" from his employment).

way, if instead of the Blocking Statements, Phillips had just used Sandmann's own words and said "I started going that way but the guy in the red hat figured it was time for him to send me a message and stand up for the school by planting his foot, standing there and facing [me] up," that statement would not have had a materially different effect on the average reader. If anything, the effect would likely have been worse.

In fact, the District Court's decision should be affirmed even if the law required (which it does not) that the Blocking Statements be literally true. As the District Court noted, "block" means "'to obstruct or close with obstacles.'" *Post*, 401 F. Supp. 3d at 792 (quoting *Block*, Oxford English Dictionary, OED (Oxford Univ. Press 2019)). Other definitions are materially the same. *See Block*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/block (to "block" is "to hinder the passage, progress, or accomplishment of by or as if by interposing an obstruction").

Here, the undisputed facts show that Sandmann did "obstruct [Phillips] with obstacles [himself]," and he did "hinder the passage [or] progress [of Phillips] . . . by interposing an obstruction [himself]." As to "retreat," that word need not literally mean to move "backward" – it also means to "withdraw" or to "reced[e] from a position or state attained," or simply to "move away from a place[.]" *See Retreat*, Merriam-Webster Dictionary, https://www.merriam-

webster.com/dictionary/retreat; *Retreat*, Oxford Learner's Dictionaries, https://www.oxfordlearnersdictionaries.com/us/definition/english/retreat_2. There are no facts to create a genuine dispute over Phillips' testimony that he was trying to "move away from a place" when Sandmann decided to stand in his path.

Sandmann's deposition testimony showed that his dispute is not really with the facts, but rather with both the common-sense gist and even some dictionary definitions of the word "block." He maintained that deliberately standing in Phillips' way as he was walking forward was not "blocking" him. Rather, he testified that in order to have been "blocked": (1) Phillips would have needed to try harder to circumvent the obstacle that Sandmann posed and test any possible escape route, including some space that briefly opened up to Sandmann's left 15 seconds *after* he had already planted himself in Phillips' way; and (2) Sandmann would in turn have needed to respond by matching each of Phillips' movements to choke off any attempt by Phillips to leave. S.D., RE 74-1, PageID#2184; Video 2 at 00:44, 00:53; *see also id.* at 00:32-01:34; Video 8 at 00:15-00:35.

But Appellees need not establish the literal accuracy of the extreme and idiosyncratic definition of "blocked" that Sandmann proffers. That is exactly the approach the substantial truth doctrine rejects. *See, e.g.*, *Novotny v. Elsevier*, 291 F. App'x 698, 706 (6th Cir. 2008) (statement that plaintiff was "sacked for *fiddling with expenses*" was substantially true where the undisputed facts showed that she

was "terminated for attempting to have subordinates submit expense reports so that her supervisor would not review them"); *Tannerite Sports, LLC v. NBC Universal Media LLC*, 135 F. Supp. 3d 219, 235 (S.D.N.Y. 2015) (court need not accept as true a plaintiff's "conclusory definitions"), *aff'd,* 864 F.3d 236 (2d Cir. 2017). Indeed, it is striking that even before the substantial truth doctrine was developed, the Kentucky Supreme Court affirmed a demurrer to a defamation claim largely on the ground that the defendant's statement that the plaintiff had "blocked" a county from paying its debts was not materially different than using words like "thwarted," "impeded," "hindered," or "delayed." *Taxpayers' League of Bell Cty. v. Sun Publ'g Co.*, 75 S.W.2d 564, 566-67 (Ky. 1934)

Put another way, neither defamation law nor common sense require that in order to convey the point that Sandmann deliberately stood in his way, the then 64-year-old Phillips had to behave like an NFL running back searching for some hole in the line to try to out-maneuver a teenager on a flight of icy stairs. To the contrary, the very fact that Sandmann maintains that to try to exit the situation Phillips had to stop and then try to "go around" Sandmann, or seek out some other escape route to evade him, confirms that Sandmann was deliberately "hindering the progress of" Phillips by obstructing it – i.e., blocking him even by a standard of literal truth. *See* S.D., RE 74-1, PageID#2183-2184. And it certainly establishes

that the Blocking Statements are, at a minimum, not *materially* false.  This Court

should therefore affirm on the alternative ground of substantial truth.

## IV.   ALTERNATIVELY, THIS COURT SHOULD AFFIRM BECAUSE THE BLOCKING STATEMENTS ARE NOT DEFAMATORY

Should this Court choose to reach any other issue, affirmance is also

warranted on the alternative ground that when read as a whole, each Appellee's

reporting does not reasonably convey the defamatory meaning Sandmann alleges.

The specifics of each Appellee's arguments on this point are addressed in their

respective individual briefs.  In the interests of avoiding repetition in those briefs,

this joint brief sets out the relevant legal standards that apply to this Court's

consideration of each Appellee's specific reporting.

Whether a challenged statement is capable of a defamatory meaning is a

question of law to be determined by the Court.  *Gahafer v. Ford Motor Co.*, 328

F.3d 859, 861 (6th Cir. 2003).  Language is "defamatory" if it tends to "expose the

plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil

opinion of him in the minds of right-thinking people . . . ."  *Id.* (quoting *Digest*

*Publ'g Co. v. Perry Publ'g Co.*, 284 S.W.2d 832, 834 (Ky. 1955)).  This is not a

low bar: "[m]erely offensive or unpleasant statements" are not defamatory. *Chapin*

*v. Knight Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993).

It is well-settled Kentucky law that to assess whether challenged statements

are capable of the defamatory meaning alleged by a plaintiff, a court must examine

the statements in the context of the entire publication. *See, e.g.*, *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981) (court must "analyze the article in its entirety and determine if its gist or sting is defamatory."); *Chatterjee v. CBS Corp.*, No. 6:19-CV-212-REW, 2020 WL 592324, at *8 (E.D. Ky. Feb. 6, 2020) ("As Kentucky law instructs, the Court assesses the language within the overall published piece."); *Better Built Garages, Inc. v. Ky. New Era, Inc.*, Nos. 2007-CA-001432-MR, 2007-CA-001754-MR, 2008 WL 4531037, at *2-3 (Ky. Ct. App. Oct. 10, 2008) ("alleged defamatory publication should be construed as a whole" and "the Court must analyze the publication in its entirety to determine whether its gist or sting is defamatory").

For example, in *Better Built Garages*, the Kentucky Court of Appeals considered several news reports about a creditor demolishing a residence that included statements that were sharply critical of the creditor, including claiming the creditor "maliciously destroyed everything." 2007 WL 4531037, at *3. The court emphasized that "[t]he alleged defamatory publication should be construed as a whole" and "the Court must analyze the publication in its entirety to determine whether its gist or sting is defamatory." *Id.* at *2. After viewing each report as a whole, the court held that none was defamatory.

This Court's decision in *Croce v. New York Times Co.*, 930 F.3d 787 (6th Cir. 2019), is particularly instructive. While *Croce* applied Ohio law, Ohio applies

the same test as Kentucky for the issue relevant to this appeal: the court must "read[ ] the statement in the context of the entire publication to determine whether a reasonable reader would interpret it as defamatory." *Id.* at 792-93. Applying that test, this Court affirmed dismissal of a defamation claim arising out of a newspaper article that reported on "years of ethics charges" against a cancer researcher. *Id*. at 794. This Court found that, read as a whole, the article did "not say that Dr. Croce is guilty of any of these allegations and charges of scientific misconduct, nor does the article suggest that these allegations are true." *Id*. at 794. "In its full and proper context, . . . the article reports newsworthy allegations with appropriate qualifying language." *Id*. at 795. Thus, "a reasonable reader would therefore interpret the article as presenting two sides of this controversy," and not as defamatory. *Id*.

Sandmann seemingly suggests that a court should not consider whether an article as a whole conveys the alleged defamatory meaning because Kentucky law does not recognize the neutral report privilege. Br., PageID#21 ("It does not matter if the article, taken as a whole, appears 'neutral.'"). Appellees agree that Kentucky does not recognize that privilege, but the point is irrelevant. If a publication is not defamatory in the first instance, whether the neutral report or any other privilege might protect it is immaterial. *Hartwig v. Nat'l Broad. Co.*, 863 F. Supp. 558, 563 (N.D. Ohio), *aff'd*, 76 F.3d 379 (6th Cir. 1996).

## V.    ALTERNATIVELY, THIS COURT SHOULD AFFIRM BECAUSE THE COMPLAINTS ARE BARRED BY THE KENTUCKY STATUTE OF LIMITATIONS

This Court may also affirm the decision below because Sandmann filed out of time.  The limitations period expired in January 2020, a year after Appellees published the reports, but Sandmann waited until March 2020 to file these lawsuits.  KRS 413.140(1)(d).  Each of the Appellees filed motions to dismiss arguing that Sandmann's claims were time-barred, but the District Court disagreed.  *E.g.*, RE 27, PageID#225-227.  The District Court found that Sandmann, as a minor, could take advantage of a tolling statute despite state court authority holding otherwise.  Appellees respectfully submit that controlling Kentucky law is to the contrary.

Normally, where a plaintiff is a minor when a cause of action accrues, a claim "may be brought within the same number of years after the removal of the disability," i.e., upon reaching majority.  KRS 413.170(1).  However, the Kentucky Court of Appeals has held that this provision does not apply to minor plaintiffs—like Sandmann—who previously litigated their claims by next friend, thereby demonstrating they suffered no disability.  *Tallman v. Elizabethtown*, No. 2006-CA-002542-MR, 2007 WL 3227599, at *3-4 (Ky. Ct. App. Nov. 2, 2007) (where "children's claims were [previously] prosecuted on their behalf by their mother," KRS 413.170(1) did not "toll[] the children's claims").  The Kentucky Supreme

Court declined to review that holding, and *Tallman* remains the rule in Kentucky. *Tallman v. Elizabethtown*, 2008 Ky. LEXIS 620 (Ky. Ct. App. Sept. 10, 2008).

The U.S. Supreme Court has long held that federal courts are "not free to reject the state rule merely because it has not received the sanction of the highest state court," even if they think "the rule is unsound in principle." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236-37 (1940). Nor does "the procedural history of this case" present any compelling reason to depart from *Tallman*. *Tallman*, 2007 WL 3227599, at *3-4. To the contrary, both *Tallman* and these cases presented situations in which a minor who was fully represented by next friends and counsel filed a lawsuit (or here, three lawsuits), and then later sought to make purely strategic use of the tolling statute by filing yet more lawsuits over the same incident.

Sandmann first filed in February 2019 by next friend, litigating the same defamation claims against other media defendants. Yet, at no time within the limitations period did he file against Appellees. Just as the minors in *Tallman* could not aggressively litigate in federal court, and when presented with an adverse result, file a new case in state court outside the limitations period, Sandmann cannot aggressively litigate his claims against some defendants, and then, when presented with a potentially beneficial result, sue *still more* defendants outside the limitations period. In both cases the fundamental purpose of the tolling statute, to

protect minors who cannot competently litigate, is not served by construing the tolling statute to invite strategic gamesmanship. Because *Tallman* is on point and there is no data that the Kentucky Supreme Court would disagree, the decision below should be affirmed on this alternative basis.

## CONCLUSION

For all the foregoing reasons, as well as the reasons set forth in the separate briefs filed by each Appellee, Appellees respectfully request that this Court affirm the judgments below.

Dated: December 23, 2022              Respectfully submitted,

*/s/ Nathan Siegel*
Nathan Siegel
Meenakshi Krishnan
DAVIS WRIGHT TREMAINE LLP
1301 K St. NW, Suite 500
Washington, DC 20005
Phone: (202) 973-4237
Fax: (202) 973-4437
nathansiegel@dwt.com
meenakshikrishnan@dwt.com

Robert B. Craig
TAFT STETTINIUS & HOLLISTER LLP
50 East RiverCenter Blvd., Suite 850
Covington, KY 41011-1683
Phone: (859) 547-4300
Fax: (513) 381-6613
craigr@taftlaw.com

*Attorneys for Appellees ABC News, Inc.,
ABC News Interactive,
Inc., and The Walt Disney Company*

/s/ John C. Greiner
John C. Greiner
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
Phone: (513) 629-2734
Fax: (513) 333-4316
jgreiner@graydon.law

J. Stephen Smith
Darren W. Ford
GRAYDON HEAD & RITCHEY LLP
2400 Chamber Center Drive
Suite 300
Ft. Mitchell, KY 41017
Phone: (859) 578-3070
Fax: (859) 578-3071
ssmith@graydon.com
dford@graydon.com

Dana R. Green
THE NEW YORK TIMES COMPANY
620 8th Avenue
New York, NY 10018
Phone: (212) 556-5290
Fax: (212) 556-4634
dana.green@nytimes.com

*Attorneys for Appellee The New York Times
Company d/b/a The New York Times*

/s/ Natalie J. Spears
Natalie J. Spears
Gregory R. Naron
DENTONS US LLP
233 South Wacker Drive, Suite 5900

Chicago, IL 60606
Phone: (312) 876-8000
Natalie.spears@dentons.com
Gregory.naron@dentons.com

Jessica Laurin Meek
DENTONS BINGHAM GREENEBAUM
LLP
10 West Market Street, Suite 2700
Indianapolis, IN 46204
Phone: (317) 635-8900
Jessica.meek@dentons.com

*Attorneys for Appellees CBS News Inc.,
ViacomCBS Inc., and CBS Interactive Inc.*

*/s/ Michael P. Abate*
Jon L. Fleischaker
Michael P. Abate
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
Phone: (502) 540-8280
jfleischaker@kaplanjohnsonlaw.com
mabate@kaplanjohnsonlaw.com

Michael J. Grygiel
Cynthia E. Neidl
Kelly L. McNamee
Candra M. Connelly
GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, New York 12207
Phone: (518) 689-1400
grygielm@gtlaw.com
neidlc@gtlaw.com
mcnameek@gtlaw.com
connellyc@gtlaw.com

*Attorneys for Appellees Gannett Co., Inc. and Gannett Satellite Information Network, LLC*

*/s/ Kevin T. Shook*
Kevin T. Shook
FROST BROWN TODD LLC
One Columbus, Ste 2300
10 W. Broad Street
Columbus, OH 43215-3484
Phone: (614) 464-1211
Fax: (614) 464-1737
kshook@fbtlaw.com

Ryan W. Goellner
FROST BROWN TODD LLC
301 East Fourth Street, Ste 3300
Cincinnati, OH 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
rgoellner@fbtlaw.com

Jason P. Renzelmann
FROST BROWN TODD LLC
400 W. Market Street, Ste 3200
Louisville, KY 40202
Phone: (502) 589-5400
Fax: (502) 587-1087
jrenzelmann@fbtlaw.com

*Attorneys for Appellees Rolling Stone, LLC and Penske Media Corporation*

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation set in the Court's

October 12, 2022 order regarding consolidation and briefing schedule, because it

contains 14,939 words, excluding the parts of the brief exempted by Fed. R. App.

P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it

has been prepared in a proportionally spaced typeface using Microsoft Word in 14-

point Times New Roman.


Dated:  December 23, 2022

                                                */s/ Nathan Siegel*
                                                Nathan Siegel

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2022, I electronically filed the foregoing Joint Brief for Defendants-Appellees with the Court using the CM/ECF system upon all counsel of record.  All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: December 23, 2022

*/s/ Nathan Siegel*
Nathan Siegel

# ADDENDUM:

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| RE No. | Description | PageID# |
|---|---|---|
| — *Sandmann v. New York Times Co.* No. 22-5734, District Court No. 2:20-cv-23 | | |
| 1 | Complaint | 1-103 |
| 18 | Defendant's Motion to Dismiss | 134-161 |
| 25 | Plaintiff's Memorandum in Opposition to Motion to Dismiss | 172-198 |
| 26 | Defendant's Reply in Support of Motion to Dismiss | 199-209 |
| 27 | Memorandum Opinion & Order Regarding Motion to Dismiss | 222-227 |
| 36 | Joint Report of Rule 26(f) Planning Meeting | 275-282 |
| 38 | Scheduling Order | 302-305 |
| 48-49 | Joint Stipulation Regarding Authenticity and Admissibility of Videos and Conventional Filing | 362-372 |
| 52 | Plaintiff's Motion for Partial Summary Judgment | 393-657 |
| 52-1 | Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment | 396-424 |
| 53 | Defendant's Motion for Summary Judgment | 658-1092 |
| 53-1 | Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 660-721 |
| 53-2 | Declaration of Nathan Phillips | 722-731 |
| 53-3 | Declaration of Alvaro Andrade | 732-739 |
| 53-4 | Declaration of Ashley Bell | 740-747 |
| 53-5 | Declaration of Marcus Frejo | 748-756 |
| 53-6 | Declaration of Anthony Tee | 757-763 |
| 53-7 | Declaration of Jon Stegenga | 764-769 |
| 53-8, 53-9 | Declaration of Samuel Brockett and Exhibit A | 770-774 |
| 53-13 | Exhibit E to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1047-1049 |
| 53-14 | Exhibit F to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1050-1051 |
| 53-15 | Exhibit G to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1052-1053 |
| 53-20 | Exhibit L to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1064-1065 |

| 53-21 | Exhibit M to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1066-1069 |
|-------|--------------------------------------------------|-----------|
| 54 | Supplemental Memorandum in Support of Defendant's Motion for Summary Judgment | 1072-1087 |
| 54-1 | Exhibit A to Supplemental Memorandum in Support of Defendant's Motion for Summary Judgment | 1088-1092 |
| 61 | Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment | 1101-1363 |
| 62 | Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment | 1364-1378 |
| 63 | Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment | 1379-1470 |
| 64 | Defendant's Motion to Strike Report and Testimony of Craige Roberts | 1471-1816 |
| 64-1 | Memorandum in Support of Motion to Strike | 1473-1505 |
| 64-2 | Exhibit A to Defendant's Motion to Strike – Deposition Transcript of Craige Roberts | 1506-1786 |
| 64-3 | Exhibit B to Defendant's Motion to Strike – Report of Craige Roberts | 1787-1815 |
| 68 | Plaintiff's Reply in Support of Plaintiff's Motion for Partial Summary Judgment | 1833-1850 |
| 69 | Plaintiffs' Memorandum in Opposition to Defendant's Motion to Strike Report and Testimony of Craige Roberts | 1905-2039 |
| 70 | Defendant's Joint Reply in Support of Motion for Summary Judgment | 2040-2080 |
| 71 | Defendant's Supplemental Reply in Support of Motion for Summary Judgment | 2081-2086 |
| 72 | Defendant's Reply in Support of Motion to Strike Report and Testimony of Craige Roberts | 2087-2110 |
| 74 | Notice of Filing – Deposition Transcript of Nicholas Sandmann | 2112-2113 |
| 74-1 | Deposition Transcript of Nicholas Sandmann | 2114-2309 |
| 81 | Memorandum Opinion & Order Regarding Motions for Summary Judgment and Motion to Strike | 2331-2351 |
| 82 | Judgment | 2352 |
| 83 | Notice of Appeal | 2353-2354 |

| RE No. | Description | PageID# |
|---|---|---|
|  | *Sandmann v. CBS News, Inc. et al.*<br>**No. 22-5735, District Court No. 2:20-cv-24** |
| **RE No.** | **Description** | **PageID#** |
| 1 | Complaint | 1-104 |
| 21 | Defendants' Motion to Dismiss | 164-202 |
| 31 | Plaintiff's Memorandum in Opposition to Motion to Dismiss | 222-248 |
| 32 | Defendants' Reply in Support of Motion to Dismiss | 249-265 |
| 34 | Memorandum Opinion & Order Regarding Motion to Dismiss | 272-277 |
| 42 | Joint Report of Rule 26(f) Planning Meeting | 384-391 |
| 44 | Scheduling Order | 411-414 |
| 54-55 | Joint Stipulation Regarding Authenticity and Admissibility of Videos and Conventional Filing | 471-480 |
| 58 | Plaintiff's Motion for Partial Summary Judgment | 501-765 |
| 58-1 | Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment | 504-532 |
| 59 | Defendants' Motion for Summary Judgment | 766-1216 |
| 59-1 | Joint Memorandum in Support of Defendants' Motion for Summary Judgment | 769-830 |
| 59-2 | Declaration of Nathan Phillips | 831-840 |
| 59-3 | Declaration of Alvaro Andrade | 841-848 |
| 59-4 | Declaration of Ashley Bell | 849-856 |
| 59-5 | Declaration of Marcus Frejo | 857-865 |
| 59-6 | Declaration of Anthony Tee | 866-872 |
| 59-7 | Declaration of Jon Stegenga | 873-878 |
| 59-8, 59-9 | Declaration of Samuel Brockett and Exhibit A | 879-883 |
| 59-13 | Exhibit E to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1156-1158 |
| 59-14 | Exhibit F to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1159-1160 |
| 59-15 | Exhibit G to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1161-1162 |
| 59-20 | Exhibit L to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1173-1174 |
| 59-21 | Exhibit M to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1175-1178 |
| 60 | Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment | 1180-1200 |

| 60-1 | Exhibit A to Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment: Declaration of Helen D'Antona | 1201-1203 |
|---|---|---|
| 60-2 | Exhibit A-1 to Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment: CBS Online Article | 1204-1207 |
| 60-3 | Exhibit A-2 to Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment: USB Flash Drive of CBS Video Segment (filed manually) | 1208 |
| 60-4 | Exhibit B to Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment: Transcript of CBS Segment | 1209-1216 |
| 69 | Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment | 1227-1489 |
| 70 | Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment | 1490-1504 |
| 71 | Defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment | 1505-1597 |
| 72 | Defendants' Motion to Strike Report and Testimony of Craige Roberts | 1598-1944 |
| 72-1 | Memorandum in Support of Motion to Strike | 1601-1633 |
| 72-2 | Exhibit A to Defendants' Motion to Strike – Deposition Transcript of Craige Roberts | 1634-1914 |
| 72-3 | Exhibit A to Defendants' Motion to Strike – Report of Craige Roberts | 1915-1943 |
| 75 | Plaintiff's Reply in Support of Plaintiff's Motion for Partial Summary Judgment | 1956-2027 |
| 76 | Plaintiffs' Memorandum in Opposition to Defendants' Motion to Strike Report and Testimony of Craige Roberts | 2028-2162 |
| 79 | Defendants' Joint Reply in Support of Motion for Summary Judgment | 2216-2256 |
| 80 | Defendants' Supplemental Reply in Support of Motion for Summary Judgment | 2257-2268 |

| 81 | Defendants' Reply in Support of Motion to Strike Report and Testimony of Craige Roberts | 2269-2292 |
|----|-------------------------------------------------------------------------------------------|-----------|
| 83 | Notice of Filing – Deposition Transcript of Nicholas Sandmann | 2294-2295 |
| 83-1 | Deposition Transcript of Nicholas Sandmann | 2296-2840 |
| 90 | Memorandum Opinion & Order Regarding Motions for Summary Judgment and Motion to Strike | 2862-2882 |
| 91 | Judgment | 2883 |
| 92 | Notice of Appeal | 2884-2885 |

| RE No. | Description | PageID# |
|---|---|---|
|  | ***Sandmann v. ABC News, Inc., et al.***<br>**No. 22-5736, District Court No. 2:20-cv-25** |
| 1 | Complaint | 1-150 |
| 1-8 | Ex. G to Complaint (ABC's First Online Article) | 94-101 |
| 1-9 | Ex. H to Complaint (ABC's Second Online Article) | 102-107 |
| 1-10 | Ex. I to Complaint (ABC's Third Online Article) | 108-112 |
| 1-11 | Ex. J to Complaint (ABC's Fourth Online Article) | 113-117 |
| 16 | Defendants' Motion to Dismiss | 185-231 |
| 34 | Plaintiff's Memorandum in Opposition to Motion to Dismiss | 270-296 |
| 35 | Defendants' Reply in Support of Motion to Dismiss | 297-313 |
| 36 | Memorandum Opinion & Order Regarding Motion to Dismiss | 314-319 |
| 45 | Joint Report of Rule 26(f) Planning Meeting | 376-383 |
| 49 | Scheduling Order | 413-416 |
| 61-62 | Joint Stipulation Regarding Authenticity and Admissibility of Videos and Conventional Filing | 474-483 |
| 64 | Plaintiff's Motion for Partial Summary Judgment | 494-758 |
| 64-1 | Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment | 497-525 |
| 65 | Defendants' Motion for Summary Judgment | 759-1172 |
| 65-1 | Joint Memorandum in Support of Defendants' Motion for Summary Judgment | 762-823 |
| 65-2 | Declaration of Nathan Phillips | 824-833 |
| 65-3 | Declaration of Alvaro Andrade | 834-841 |
| 65-4 | Declaration of Ashley Bell | 842-849 |
| 65-5 | Declaration of Marcus Frejo | 850-858 |
| 65-6 | Declaration of Anthony Tee | 859-865 |
| 65-7 | Declaration of Jon Stegenga | 866-871 |
| 65-8, 65-9 | Declaration of Samuel Brockett and Exhibit A | 872-879 |
| 65-13 | Exhibit E to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1149-1151 |
| 65-14 | Exhibit F to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1152-1153 |
| 65-15 | Exhibit G to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1154-1155 |
| 65-20 | Exhibit L to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1166-1167 |

| 65-21 | Exhibit M to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1168-1171 |
|---|---|---|
| 66 | Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment | 1173-1192 |
| 66-1 | Declaration of Erik MacRobbie and Exhibits 1-A, 1-B, 1-C, 2-A, 2-B (Conventionally Filed) | 1193-1195 |
| 66-2 | Declaration of Tim Letbetter and Exhibits 3-A, 3-B, 4-A, 4-B (Conventionally Filed) | 1196-1198 |
| 66-3 | Transcript of Exhibit 1-A (First GMA Story) to Declaration of Erik MacRobbie | 1199-1201 |
| 66-4 | Transcript of Exhibit 2-A (Second GMA Story) to Declaration of Erik MacRobbie | 1202-1204 |
| 66-5 | Transcript of Exhibit 3-A (ABC7 Story) to Declaration of Tim Letbetter | 1205-1207 |
| 75 | Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment | 1218-1480 |
| 76 | Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment | 1481-1495 |
| 77 | Defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment | 1496-1588 |
| 78 | Defendants' Motion to Strike Report and Testimony of Craige Roberts | 1589-1935 |
| 78-1 | Memorandum in Support of Motion to Strike | 1592-1624 |
| 78-2 | Exhibit A to Defendants' Motion to Strike – Deposition Transcript of Craige Roberts | 1625-1905 |
| 78-3 | Exhibit B to Defendants' Motion to Strike – Report of Craige Roberts | 1906-1934 |
| 81 | Plaintiff's Reply in Support of Plaintiff's Motion for Partial Summary Judgment | 1947-2018 |
| 82 | Defendants' Joint Reply in Support of Motion for Summary Judgment | 2019-2059 |
| 83 | Defendants' Supplemental Reply in Support of Motion for Summary Judgment | 2060-2072 |
| 84 | Plaintiffs' Memorandum in Opposition to Defendants' Motion to Strike Report and Testimony of Craige Roberts | 2073-2087 |
| 85 | Defendants' Reply in Support of Motion to Strike Report and Testimony of Craige Roberts | 2208-2231 |
| 87 | Notice of Filing – Deposition Transcript of Nicholas | 2233-2234 |

| | Sandmann | |
|---|---|---|
| 87-1 | Deposition Transcript of Nicholas Sandmann | 2235-2779 |
| 94 | Memorandum Opinion & Order Regarding Motions for Summary Judgment and Motion to Strike | 2801-2821 |
| 95 | Judgment | 2822 |
| 96 | Notice of Appeal | 2823-2824 |

| | *Sandmann v. Gannett Co. Inc., et al.*<br>No. 22-5738, District Court No. 2:20-cv-26 | |
|---|---|---|
| **RE No.** | **Description** | **PageID#** |
| 1 | Complaint | 1-184 |
| 32-1 | First Amended Complaint | 285-354 |
| 32-13 | Exhibit L to First Amended Complaint | 445-451 |
| 36 | Defendants' Motion to Dismiss | 656-682 |
| 37 | Plaintiff's Memorandum in Opposition to Motion to Dismiss | 683-729 |
| 38 | Defendants' Reply in Support of Motion to Dismiss | 730-745 |
| 39 | Memorandum Opinion & Order Regarding Motion to Dismiss | 746-752 |
| 49 | Joint Report of Rule 26(f) Planning Meeting | 808-812 |
| 50 | Scheduling Order | 813-816 |
| 61-62 | Joint Stipulation Regarding Authenticity and Admissibility of Videos and Conventional Filing | 880-889 |
| 65 | Plaintiff's Motion for Partial Summary Judgment | 908-1172 |
| 65-1 | Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment | 911-939 |
| 66 | Defendants' Motion for Summary Judgment | 1173-1586 |
| 66-1 | Joint Memorandum in Support of Defendants' Motion for Summary Judgment | 1176-1237 |
| 66-2 | Declaration of Nathan Phillips | 1238-1247 |
| 66-3 | Declaration of Alvaro Andrade | 1248-1255 |
| 66-4 | Declaration of Ashley Bell | 1256-1263 |
| 66-5 | Declaration of Marcus Frejo | 1264-1272 |
| 66-6 | Declaration of Anthony Tee | 1273-1279 |
| 66-7 | Declaration of Jon Stegenga | 1280-1285 |
| 66-8, 66-9 | Declaration of Samuel Brockett and Exhibit A | 1286-1299 |
| 66-10 | Exhibit B to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1300-1559 |
| 66-13 | Exhibit E to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1563-1565 |
| 66-14 | Exhibit F to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1566-1567 |
| 66-15 | Exhibit G to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1568-1569 |
| 66-20 | Exhibit L to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1580-1581 |

| 66-21 | Exhibit M to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1582-1585 |
|---|---|---|
| 67 | Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment | 1587-1620 |
| 67-1 | Grygiel Declaration | 1603-1620 |
| 75 | Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment | 1629-1891 |
| 76 | Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment | 1892-1906 |
| 77 | Defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment | 1907-1999 |
| 78 | Defendants' Motion to Strike Report and Testimony of Craige Roberts | 2000-2346 |
| 78-1 | Memorandum in Support of Motion to Strike | 2003-2035 |
| 78-2 | Exhibit A to Defendants' Motion to Strike – Deposition Transcript of Craige Roberts | 2036-2316 |
| 78-3 | Exhibit B to Defendants' Motion to Strike – Report of Craige Roberts | 2317-2345 |
| 81 | Plaintiff's Reply in Support of Plaintiff's Motion for Partial Summary Judgment | 2358-2429 |
| 82 | Plaintiffs' Memorandum in Opposition to Defendants' Motion to Strike Report and Testimony of Craige Roberts | 2430-2564 |
| 83 | Defendants' Joint Reply in Support of Motion for Summary Judgment | 2565-2605 |
| 84 | Defendants' Supplemental Reply in Support of Motion for Summary Judgment | 2606-2618 |
| 86 | Defendants' Reply in Support of Motion to Strike Report and Testimony of Craige Roberts | 2632-2655 |
| 88 | Notice of Filing – Deposition Transcript of Nicholas Sandmann | 2657-2658 |
| 88-1 | Deposition Transcript of Nicholas Sandmann | 2660-3204 |
| 95 | Memorandum Opinion & Order Regarding Motions for Summary Judgment and Motion to Strike | 3226-3246 |
| 96 | Judgment | 3247 |
| 97 | Notice of Appeal | 3248-3249 |

| RE No. | Description | PageID# |
|---|---|---|
| | ***Sandmann v. Rolling Stone, LLC, et al.*** <br> **No. 22-5737, District Court No. 2:20-cv-27** | |
| 1 | Complaint | 1-113 |
| 24 | Defendants' Motion to Dismiss | 173-213 |
| 33 | Plaintiff's Memorandum in Opposition to Motion to Dismiss | 230-256 |
| 34 | Defendants' Reply in Support of Motion to Dismiss | 257-274 |
| 35 | Memorandum Opinion & Order Regarding Motion to Dismiss | 275-280 |
| 43 | Joint Report of Rule 26(f) Planning Meeting | 341-348 |
| 45 | Scheduling Order | 368-371 |
| 56-57 | Joint Stipulation Regarding Authenticity and Admissibility of Videos and Conventional Filing | 438-448 |
| 59 | Plaintiff's Motion for Partial Summary Judgment | 460-724 |
| 59-1 | Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment | 463-491 |
| 60 | Defendants' Motion for Summary Judgment | 725-1132 |
| 60-1 | Joint Memorandum in Support of Defendants' Motion for Summary Judgment | 728-789 |
| 60-2 | Declaration of Nathan Phillips | 790-799 |
| 60-3 | Declaration of Alvaro Andrade | 800-807 |
| 60-4 | Declaration of Ashley Bell | 808-815 |
| 60-5 | Declaration of Marcus Frejo | 816-824 |
| 60-6 | Declaration of Anthony Tee | 825-831 |
| 60-7, 60-8 | Declaration of Samuel Brockett and Exhibit A | 832-845 |
| 60-12 | Exhibit E to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1109-1111 |
| 60-13 | Exhibit F to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1112-1113 |
| 60-14 | Exhibit G to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1114-1115 |
| 60-19 | Exhibit L to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1126-1127 |
| 60-20 | Exhibit M to Joint Memorandum in Support of Defendant's Motion for Summary Judgment | 1128-1131 |
| 61 | Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment | 1133-1197 |
| 61-1 | Exhibit A to Supplemental Memorandum in Support | 1153-1159 |

|  | of Defendants' Motion for Summary Judgment, Declaration of Ryan Bort, including Rolling Stone Article |  |
|---|---|---|
| 61-2 | Exhibit B to Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment, Additional Excerpts of Deposition of Nicholas Sandmann | 1160-1197 |
| 62-1 | Declaration of Jon Stegenga in Support of Defendants' Motion for Summary Judgment | 1201-1206 |
| 69 | Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment | 1215-1477 |
| 70 | Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment | 1478-1492 |
| 71 | Defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment | 1493-1585 |
| 72 | Defendants' Motion to Strike Report and Testimony of Craige Roberts | 1586-1932 |
| 72-1 | Memorandum in Support of Motion to Strike | 1589-1621 |
|  |  |  |
| 72-3 | Exhibit B to Defendants' Motion to Strike – Report of Craige Roberts | 1903-1931 |
| 72-5 | Exhibit A to Defendants' Motion to Strike – Deposition Transcript of Craige Roberts | 3374-3654 |
| 75 | Plaintiff's Reply in Support of Plaintiff's Motion for Partial Summary Judgment | 1944-2015 |
| 76 | Plaintiffs' Memorandum in Opposition to Defendants' Motion to Strike Report and Testimony of Craige Roberts | 2016-2150 |
| 77 | Defendants' Joint Reply in Support of Motion for Summary Judgment | 2151-2191 |
| 78 | Defendants' Supplemental Reply in Support of Motion for Summary Judgment | 2192-2206 |
| 79 | Defendants' Reply in Support of Motion to Strike Report and Testimony of Craige Roberts | 2207-2230 |
| 81 | Notice of Filing – Deposition Transcript of Nicholas Sandmann | 2232-2234 |
| 81-2 | Deposition Transcript of Nicholas Sandmann | 2829-3373 |
| 88 | Memorandum Opinion & Order Regarding Motions for Summary Judgment and Motion to Strike | 2802-2822 |

| 89 | Judgment | 2823 |
|----|----------|------|
| 90 | Notice of Appeal | 2824-2825 |