Case No. 22-5736

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

NICHOLAS SANDMANN,

*Plaintiff - Appellant,*

v.

ABC NEWS, INC., *et al.*

*Defendants - Appellees.*

On Appeal from the United States District Court for the Eastern District of Kentucky
Honorable William O. Bertelsman, District Judge, Presiding
Case No. 2:20-cv-00025

## SUPPLEMENTAL BRIEF OF APPELLEES ABC NEWS, INC., ABC NEWS INTERACTIVE, INC., AND THE WALT DISNEY COMPANY

Robert B. Craig
TAFT STETTINIUS & HOLLISTER LLP
50 East RiverCenter Blvd., Suite 850
Covington, KY 41011-1683
Phone: (859) 547-4300
Fax: (513) 381-6613
craigr@taftlaw.com

Nathan Siegel
Meenakshi Krishnan
DAVIS WRIGHT TREMAINE LLP
1301 K St. NW, Suite 500
Washington, DC 20005
Phone: (202) 973-4237
Fax: (202) 973-4437
nathansiegel@dwt.com
meenakshikrishnan@dwt.com

*Attorneys for Defendants-Appellees ABC News, Inc., ABC News Interactive, Inc., and The Walt Disney Company*

# TABLE OF CONTENTS

*Page*

COUNTERSTATEMENT OF ISSUES ADDRESSED IN THIS
SUPPLEMENTAL BRIEF ................................................................1

STATEMENT OF THE CASE ...............................................................2

A.    The ABC Articles ........................................................................3

B.    The ABC Articles Emphasized the Emergence of New Information
That Provided a Broader Context for Conflicting Accounts of the
Incident ........................................................................................4

C.    The ABC Articles Presented the Blocking Statements as One
Perspective Among Many on a Confusing Incident .........................6

D.    The ABC Articles Included, Embedded, Or Hyperlinked to Numerous
Videos of the Incident ...................................................................7

SUMMARY OF ARGUMENT ...............................................................9

ARGUMENT ......................................................................................10

I.    THE ABC ARTICLES PRESENT THE BLOCKING STATEMENTS
AS PHILLIPS' OPINION. ..............................................................10

A.    The ABC Articles Present the Blocking Statements as One of Multiple
Contrasting Perspectives on the Same Events. ..............................10

B.    The Articles Provided the Underlying Video So Readers Could Judge
For Themselves .............................................................................12

II.   READ IN THE CONTEXT OF EACH ABC ARTICLE AS A
WHOLE, THE BLOCKING STATEMENTS ARE NOT
DEFAMATORY ...............................................................................13

CONCLUSION ...................................................................................18

CERTIFICATE OF COMPLIANCE .....................................................20

CERTIFICATE OF SERVICE .............................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
  861 F.3d 1081 (10th Cir. 2017) ...........................................................11

*Chapin v. Knight-Ridder, Inc.*,
  993 F.2d 1087 (4th Cir. 1993) ...........................................................17

*Clark v. Viacom Int'l Inc.*,
  617 F. App'x. 495 (6th Cir. 2015) .......................................................18

*Croce v. N.Y. Times Co.*,
  930 F.3d 787 (6th Cir. 2019) .............................................................17

*Hosszu v. Barrett*,
  716 F. App'x 622 (9th Cir. 2017) .......................................................12

*Janklow v. Newsweek, Inc.*,
  759 F.2d 644 (8th Cir. 1985) .............................................................17

*Pace v. Baker-White*,
  432 F. Supp. 3d 495 (E.D. Pa. 2020), *aff'd*, 850 F. App'x 827 (3d Cir. 2021)..17

*Underwager v. Channel 9 Australia*,
  69 F.3d 361 (9th Cir. 1995) ..............................................................11

*Valley Elecs. AG v. Polis*,
  No. 21-2108-CV, 2022 WL 893674 (2d Cir. Mar. 28, 2022) ...........................12

**COUNTERSTATEMENT OF ISSUES ADDRESSED IN THIS SUPPLEMENTAL BRIEF**

ABC Appellees adopt the Counterstatement of Issues as presented in the Joint Brief.

## STATEMENT OF THE CASE

This brief supplements Appellees' joint response brief.  First, it explains why the ABC news reports at issue in Sandmann's case against ABC (the "ABC Articles") fully support the District Court's conclusion that a reasonable reader would understand the Blocking Statements to be non-actionable opinion.  The ABC Articles reported multiple points of view about the encounter between Sandmann and Phillips, including different views about blocking that were expressed by Phillips, Sandmann, and others, and presented them as conflicting perspectives on the same chaotic events.  The ABC Articles also provided readers with the full context of the incident by presenting, embedding, and linking to lengthy videos and screenshots of the actual incident, including many of the very videos Sandmann principally relies on now.  Readers could therefore judge for themselves which perspective they agreed with.

Second, this supplemental brief addresses why, as they were presented within ABC's news reports, the Blocking Statements are also not reasonably capable of the defamatory meaning Sandmann alleges.  When read as a whole, as Kentucky law requires, the ABC Articles neither assert that Sandmann blocked Nathan Phillips nor do they thereby impute racist conduct to Sandmann.  Instead, the ABC Articles, all dated two to three days after video of the incident first emerged on social media,

focused on the emergence of new information that called into question whether an initial viral video of the incident had fully captured its complexity.

### A.    The ABC Articles

This action concerns four online Articles.  Compl. Exs. G-J, RE 1-8, 1-9, 1-10, 1-11, PageID#94-117.[1]  Three of the Articles also embed a television news report.[2]  Compl., RE 1, PageID#40, 43, 45; MacRobbie Decl. Exs. 1-A & 2-A, RE 66-1, PageID#1195; Letbetter Decl. Ex. 3-A, RE 66-2, PageID#1198.[3]  The First and Second Articles were published by ABC News, and each embeds a different *Good Morning America* ("*GMA*") television report.  The Third and Fourth Articles were reported by ABC's local New York television station, while the Third embeds a television news report from that same station.  In addition to embedded television reports, the Articles also contain clips from or hyperlinks to videos of the incident posted elsewhere, such as YouTube, Twitter, and Instagram.  For example, in the

---

[1] ABC Appellees direct the Court to its Designation of Relevant Documents appended to the Appellees' joint brief.

[2] The term "embedded" means that, on the ABC websites containing the articles, a television report is often placed within the article's body under the headlines. Readers can access the video story by clicking on the white arrow in the center of the screen.  Each of the embedded reports is therefore alleged to be and is an integral part of that Article.  *See* Compl., RE 1, PageID#40, 43, 45.

[3] For purposes of the appellate record and pursuant to 6th Cir I.O.P. 10(d), flash drives containing true and correct copies of ABC Appellees' three television reports, and their hyperlinked and embedded videos, were mailed to this Court's Records Room along with an explanatory cover letter.  Counsel prepared and filed below transcripts of those reports.  *See* Trs., RE 66-3, 66-4, 66-5, PageID#1199-1207.

fourth paragraph of the First Article, the words "video shot inches from the other side of Phillips' face" link to a 4-minute YouTube video, which is the same video as "Video 2" in the record.  Compl. Ex. G, RE 1-8 at PageID#95-96; MacRobbie Decl. Ex. 1-B, RE 66-1, PageID#1193-1195.

### B.    The ABC Articles Emphasized the Emergence of New Information That Provided a Broader Context for Conflicting Accounts of the Incident

The fundamental premise of Sandmann's defamation cases is that each of the Appellees allegedly quoted the Blocking Statements "without qualification or explanation" and presented them "hook, line and sinker" as a definitive factual account.  Br. at PageID#14-15.  However, even a cursory review of the ABC Articles shows that is flatly incorrect.  Rather, the Articles explained that new videos and other information had emerged in the days after the encounter exploded on social media which made clear there was both a broader context and multiple sides to the story.  Indeed, the ABC Articles questioned whether the initial social media narrative was the only way to perceive the events.

For example, the *GMA* television report (the "First *GMA* Story") embedded within the First Article framed its report by explaining, "[t]his morning, new questions about the troubling incident at the foot of the Lincoln Memorial" as "overnight, new video calling into question just how this encounter [between Phillips and Sandmann] began."  MacRobbie Decl. Ex. 1-A, RE 66-1, 00:17-00:21, 1:36-

1:40 & Tr., RE 66-3, PageID#1200; *see also id.* ("New fallout and confusion this morning after this upsetting incident now going viral."); Compl. Ex. G, RE 1-8, PageID#96 ("Another video showed Phillips appear to approach the group of students before the stare down."). And to make clear that the gist of the story was that readers should not necessarily accept earlier social media video as the definitive factual account, the First *GMA* Story prominently displays the question "What Sparked the Moment on Video?" MacRobbie Decl. Ex. 1-A, RE 66-1, 00:05-00:26, 01:08-02:28.

Similarly, the Second *GMA* Story within the Second Article reported on "new developments in that confrontation that went viral" and focused on the emergence of "another video [that] is raising new questions about what really happened before the incident . . ." MacRobbie Decl. Ex. 2-A, RE 66-1, 00:00-00:20 & Tr., RE 66-4, PageID#1203. So did the Third Article and embedded ABC7 Story. Compl. Ex. I, RE 1-10, PageID#109 ("New videos reveal a fuller picture of what led up to the clash and seems to show the students being verbally attacked first, by a different group of demonstrators[.]"); Letbetter Decl. Ex. 3-A, RE 66-2, PageID#1198, 00:00-00:06 & Tr., RE 66-5, PageID#1206 ("[N]ew video today is revealing some new information about that viral confrontation this weekend between a Catholic high school student from Kentucky and a Native American elder."). The Second *GMA* Story even pointed to Sandmann's statements "defending himself, saying these

initial images don't tell the whole story" and concluded with anchor George Stephanopoulos opining that this was a "complicated story." MacRobbie Decl. Ex. 2-A, RE 66-1, 00:24-00:35; 02:10-02:20 & Tr., RE 66-4, PageID#1203; *see also* MacRobbie Decl. Ex. 1-A, RE 66-1, 03:00-03:04 & Tr., RE 66-3, PageID#1201 (anchor Dan Harris opining that the situation was "[m]ore complicated than it appears").

### C. The ABC Articles Presented the Blocking Statements as One Perspective Among Many on a Confusing Incident

Against this backdrop of new information, the ABC Articles characterized the incident as the product of bewildering events giving rise to many "dueling accounts," including those of Phillips, Sandmann, and other bystanders. Compl. Ex. I, RE 1-10, PageID#111. The local television report within the Third Article began by showing video of a student saying "I'm so confused," Letbetter Decl. Ex. 3-A, RE 66-2, 00:21-00:23 & Tr., RE 66-5, PageID#1206, and Sandmann's own statement emphasized that "I was startled and confused as to why he had approached me." Compl. Ex. H, RE 1-9, PageID#103.

With respect to whether Sandmann had blocked Phillips, the ABC Articles included the Blocking Statements because it was one of several conflicting views that had emerged about the incident. All of the Articles also reported Sandmann's views, including that "I never *felt* like I was blocking the Native American protestor" and "I *believed* that by remaining motionless and calm I was helping to diffuse the

situation."   Compl.  Ex.  H,  RE  1-9,  PageID#105;  Compl.  Ex.  I,  RE  1-10, PageID#111; Compl. Ex. J, RE 1-11, PageID#115 (emphases added).  The Articles also quoted a statement from another CovCath student at the scene, who supported Sandmann and said he "didn't say anything or move – he just stood there."  Compl. Ex. G, RE 1-8, PageID#97; Compl. Ex. J, RE 1-11, PageID#116.

The Articles also presented both Sandmann's and Phillips' statements about blocking as just one of many ways in which the two expressed subjective, conflicting perspectives on the incident.  *See, e.g.*, Compl. Ex. J, RE 1-11, PageID#114 (Phillips "*felt* compelled to get between two groups with his ceremonial drum."); Compl. Ex. I, RE 1-10, PageID#110 (Phillips' "*intent* was to stop potential violence"); *id.* at 111 ("Phillips *maintains* that he *felt* the kids were mocking him and being rude. Sandmann *says* it was the adults using hateful words and trying to prov[o]ke the kids, not the other way around."); Compl. Ex. G, RE 1-8, PageID#97 (Sandmann stated "I realized everyone had cameras and *perhaps* a group of adults was trying to provoke a group of teenagers into a larger conflict."); *e.g.*, Compl. Ex. H, RE 1-9, PageID#105 (Sandmann said "*I believed* that by remaining motionless and calm, I was helping to diffuse the situation") (emphases added).

### D.   The ABC Articles Included, Embedded, Or Hyperlinked to Numerous Videos of the Incident

The Articles also provided readers with extensive videos showing the lead-up to and the incident itself, including several in their entirety.  For example, both the

First and Second Articles link to the full Video 2 (the First directly, and the Second by way of linking to the First). Compl. Ex. G, RE 1-8, PageID#95 (linking to MacRobbie Decl. Ex. 1-B, RE 66-1); Compl. Ex. H, RE 1-9, PageID#103 (linking to First Article). The Third and Fourth Articles also embed the entire Video 8 (the Fourth directly and the Third by way of linking to the Fourth). Compl. Ex. J, RE 1-11, PageID#114 (embedding Letbetter Decl. Ex. 4-A, RE 66-2, 00:30-01:20); Compl. Ex. I, RE 1-10, PageID#110 (linking to Fourth Article).

ABC's repeated displays of videos of the underlying events also further illustrates how Sandmann flatly misrepresents ABC's reporting. To note just two examples, the Complaint alleges that ABC ignored what it calls the "Banyamyan Video" – which is Video 4 – which showed the clash between the Black Hebrew Israelites and the CovCath students that led to the incident. Compl., RE 1, PageID#17. But multiple ABC Articles repeatedly focused on and showed excerpts from that very video. *See, e.g.,* MacRobbie Decl. Ex. 2-A, RE 66-1, 01:20-01:32 & Tr., RE 66-4, PageID#1203 (showing excerpts of Video 4); Compl. Ex. I, RE 1-10, PageID#109-110 ("The video shows a small group of black men who identify themselves as Hebrew Israelites first shouting hateful and racially combative things at everyone," followed by quotes from Video 4; Phillips later "approaches the group [of students] along with another drummer."); Letbetter Decl. Ex. 3-A, RE 66-2, 0:00-0:12, 00:32-01:14, 01:34-01:40, 02:06-02:11 (excerpts from Video 4 shown in the

ABC7 story).  Moreover, the First Article links to, and the First GMA Story shows, Video 18, which is the identical video the Complaint specifically alleges ABC ignored:

Screenshot at Compl. ¶ 84 (RE 1, PageID#18), Showing Video ABC <u>Allegedly Never Reported</u>

Screenshot from Video the First Article Links To (MacRobbie Decl. Ex. 1-C, RE <u>66-1, 00:02)</u>




## SUMMARY OF ARGUMENT

The District Court correctly held that reasonable readers of the ABC Articles would understand the Blocking Statements to express Phillips' non-actionable opinions.  The ABC Articles presented those statements as one among multiple conflicting perspectives on a chaotic event, and provided readers with all or parts of a half-dozen videos of the incident to enable readers to form their own views.

Alternatively, the Articles do not convey the defamatory meaning alleged by Sandmann.  They do not assert that Sandmann actually blocked Phillips nor impute any motive for that.  Rather, ABC's reporting made clear that the Blocking

Statements were simply one of several conflicting perspectives and that other newly emerged videos raised questions about whether the incident may have been more complicated than initial social media accounts had suggested.

## ARGUMENT

### I.    THE ABC ARTICLES PRESENT THE BLOCKING STATEMENTS AS PHILLIPS' OPINION.

The District Court correctly noted the relevance of the "style of writing" and the full "context" of a challenged statement's publication, and concluded that Appellees "reported Phillips' first-person view of what he experienced" within the context of a matter of great public interest.  Op., RE 94, PageID#2818.  This would "put the reader on notice that Phillips was simply giving his perspective" on the incident.  *Id.*  The ABC Articles fully support that conclusion.

#### A.    The ABC Articles Present the Blocking Statements as One of Multiple Contrasting Perspectives on the Same Events.

As summarized above, the gist of ABC's reporting was that the encounter from one to two days earlier had spawned several conflicting perspectives on the same bewildering events.  ABC reported the Blocking Statements not as a factual account of the incident, but rather as one of those perspectives.  The Articles repeatedly contrasted Phillips' and Sandmann's perspectives on the events, including that both said they were trying to accomplish the same thing – to defuse the situation – which clearly indicated that each had a different perspective on what

the situation even was and what was necessary to calm it.  Their views were couched in highly subjective language that emphasize their individual impressions and motivations, not only about blocking but about multiple aspects of the incident.

As to blocking specifically, each of the Articles juxtaposed Phillips' and Sandmann's clashing perceptions about that issue.  The way Sandmann expressed his views underscored how the situation was a matter of perspective:  "I never *felt* like I was blocking the Native American protestor"; "I *believed* that by remaining motionless and calm I was helping to diffuse the situation"; "I did *not see* anyone try to block his path."  Compl. Ex. H, RE 1-9, PageID#105, Compl. Ex. I, RE 1-10, PageID#111, Compl. Ex. J, RE 1-11, PageID#115 (emphases added).  As the District Court held, a reasonable reader would interpret the Blocking Statements through the same lens.  Op., RE 94, PageID#2818.  Courts assessing similar reporting have held that particular statements made by each side of a public controversy should be treated as opinion.  *See, e.g., Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1137 (10th Cir. 2017) (comments are opinion where in part "based on facts presented to the viewer in a context of opposing viewpoints"); *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366-67 (9th Cir. 1995) (because format of television program explores "both sides of controversial topics and individuals," dueling statements "on opposite sides of the heated debate" would be understood as opinion).  The judgment below should therefore be affirmed.

**B.**    **The Articles Provided the Underlying Video So Readers Could Judge For Themselves.**

Another critical element of the ABC Articles' context is that they also included, embedded, and/or hyperlinked to multiple videos (and screenshots thereof) of the very moments referred to by Phillips, Sandmann, and a fellow student. By providing readers with direct access to the underlying incident so they could make up their own minds, the Articles reinforced that the various conflicting statements about the incident were subjective opinions. *See, e.g.*, *Valley Elecs. AG v. Polis*, No. 21-2108-CV, 2022 WL 893674, at *2 (2d Cir. Mar. 28, 2022) ("inclusion of hyperlinks to other sources" provided factual basis for defendant's opinion, "leaving it to the readers to evaluate [her claims] for themselves"); *Hosszu v. Barrett*, 716 F. App'x 622, 624 (9th Cir. 2017) ("link" in article to official statement defending plaintiff constituted "facts available to both the writer and the reader") (citations omitted).

Finally, Sandmann's brief argues that readers might not know what the area in front of the Lincoln Memorial looks like. Br. at Page ID#31. That too is refuted by the ABC Articles, which provided readers with videos that show the location of the incident from multiple angles before, during, and after it. *See* Compl. Ex. G, RE 1-8, PageID#95 (linking to Video 2, MacRobbie Decl. Ex. 1-B, RE 66-1); MacRobbie Decl. Ex. 2-A, RE 66-1, 00:48-00:51, 01:08-01:32 (including excerpts from Video 4 and Video 16); MacRobbie Decl. Ex. 1-A, RE 66-1, 00:34-00:40,

01:46-01:55 (same); Compl. Ex. J, RE 1-11, PageID#114 (embedding Video 8, Letbetter Decl. Ex. 4-A, RE 66-2, 00:30-01:20). For example, the Second GMA Story included a Video 16 excerpt that showed the incident from a wide panorama:



MacRobbie Decl. Ex. 2-A, RE 66-1, 01:11.

For all these reasons, the Blocking Statements are non-actionable opinion.

## II.  READ IN THE CONTEXT OF EACH ABC ARTICLE AS A WHOLE, THE BLOCKING STATEMENTS ARE NOT DEFAMATORY.

In the District Court, the ABC Appellees moved to dismiss on the ground that, in context, the Blocking Statements are not capable of a defamatory meaning. Ruling solely on the face of Sandmann's Complaint, the District Court denied that motion because the Complaint "alleges that defendants published a factual, defamatory statement by Phillips, period." Op., RE 36, PageID#317. The Court also noted that "[t]he [c]omplaint alleges that this statement . . . conveys a defamatory meaning because it imputes to Sandmann racist conduct." *Id.* at 316. As noted above, Sandmann's brief essentially repeats the same allegations, claiming

that ABC (and the other Appellees) quoted the Blocking Statements "without qualification or explanation."  Br. at PageID#15.

In its motion for summary judgment, ABC submitted affidavits authenticating and attaching both the ABC Articles and the entire corpus of embedded broadcast news reports, videos, and similar materials they linked to.  MacRobbie Decl., Letbetter Decl., RE 66-1 & 66-2, PageID#1193-1198.  ABC argued that those materials demonstrated that the allegations of the Complaint mischaracterized ABC's reporting.  ABC maintained that when Blocking Statements are considered in the actual context in which they were reported by ABC, the Blocking Statements are not defamatory.  The District Court did not reach that issue in its summary judgment ruling.

Should this Court reach this issue, it is clear that when each of the ABC Articles is viewed as a whole, as Kentucky law requires, *see* Joint Br. at 62-64, they do not convey the defamatory meaning alleged by Sandmann.  They did not accuse Sandmann of blocking Phillips, nor did they relatedly impute racist conduct to Sandmann.

First, the ABC Articles never assert that Sandmann blocked Phillips.  Instead, the Articles reported the Blocking Statements as one of several statements made to other outlets that Sandmann and another CovCath student disputed.  ABC further explained that the initial social media context did not account for new video and

other emerging evidence. For example, while the initial "Viral Video" the Complaint repeatedly references may have suggested that CovCath students had approached Phillips, *e.g.*, Compl., RE 1, PageID#4, the ABC Articles explained that it was the other way around. *E.g.*, Compl. Ex. G, RE 1-8, PageID#96.

ABC also reported that Phillips explained that he approached in response to an encounter between the BHI protestors and the students, and ABC made it clear to viewers that the BHI had disparaged the students. *E.g.*, Compl. Ex. I, RE 1-10, PageID#109-110. Thus, numerous allegations about the ABC Articles that purportedly support Sandmann's alleged defamatory meaning are simply false. Some examples include allegations that ABC failed to report that (1) Phillips approached the students; (2) BHI protestors disparaged the students; (3) there were other videos depicting those events in addition to the "Viral Video" that sparked the social media controversy; (4) one of the Native Americans at the scene shouted "White people, go back to Europe"; and (5) any account from any student who witnessed the confrontation. *See* Compl., RE 1, PageID#12, 17-18, 53, 56. To the contrary, ABC reported *all* of that information.

In fact, when reporting about Sandmann personally, the ABC Articles devoted significantly more space to his perspective than it did to the Blocking Statements. Had the Blocking Statements not been included in this reporting, then elements of Sandmann's story like "I never felt like I was blocking the Native American

protestor" and "I believed that by remaining motionless and calm I was helping to d[e]fuse the situation," or another student's perspective that Sandmann "didn't say anything or move – he just stood there" would have made no sense to the reader.

Some ABC journalists even expressed opinions that overtly sympathized with Sandmann.  For example, anchor George Stephanopoulos commented in the Second GMA Story that "it appears, at least, that this young man was trying to do the right thing in some measure, maybe he didn't do it perfectly, but trying," to which reporter Erielle Reshef responded, "[y]eah, there was definitely a rush to judgment by a lot of people."  MacRobbie Decl. Ex. 2-A, RE 66-1, 02:16-02:25 & Tr., RE 66-4, PageID#1203.  But all that is relevant here is that when read as a whole, the ABC Articles do not, as Sandmann alleges, accuse Sandmann of blocking Nathan Phillips.

Nor, by reporting that there were multiple perspectives on blocking, did ABC impute any racist conduct to Sandmann.  *See* Compl., RE 1, PageID#42, 44, 47, 50. As Sandmann himself acknowledged below, the Blocking Statements themselves impute no racist conduct or anything remotely similar.  *See* Pl. Suppl. Opp., RE 76, PageID#1487 ("[Phillips] didn't directly accuse [Sandmann] of racism[.]"); *id*. (Phillips' supposed accusations of Sandmann's "bigotry and insensitivity" relayed "not by using those words or any like those words").  And they certainly carry no such imputation as quoted within the ABC Articles' context, which made clear the Blocking Statements were strongly disputed and that initial video of the incident that

16

had gone viral and may have led viewers to adopt Phillips' perspective was incomplete and needed to be re-visited.[4]

At bottom, the ABC Articles reported on a public controversy with competing narratives, which courts have found time and again to be not defamatory. This case is much like *Croce v. N.Y. Times Co.*, where this Court found that an article was not defamatory where it quoted several of the plaintiff's critics but did not adopt any of those allegations as fact. 930 F.3d 787, 794 (6th Cir. 2019). Instead, where, like here, an outlet "presents newsworthy allegations made by others, with appropriate qualifying language," such statements are non-actionable. *Id.* at 7935; *see also Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1098 (4th Cir. 1993) (article not actionable where it is "constructed around questions, not conclusions" and "advances alternative answers to the questions it raises, presenting both favorable and unfavorable views, but does not ultimately adopt any particular answer as correct"); *Janklow v. Newsweek, Inc.*, 759 F.2d 644, 649 (8th Cir. 1985) (article repeating rape allegation against plaintiff not actionable because it did not "espouse[] the validity" of the allegation).

---

[4] Moreover, any inferences that someone might draw about what motives Sandmann had would itself be protected opinion. *E.g.*, *Pace v. Baker-White*, 432 F. Supp. 3d 495, 513 (E.D. Pa. 2020) ("implications that Plaintiff . . . endorse[s] violence, racism, and bigotry . . . are statements of opinion by Defendants that readers *could* view Plaintiff in that way—leaving open the possibility that they also *could not*."), *aff'd*, 850 F. App'x 827 (3d Cir. 2021).

Indeed, this case illustrates why courts do not hold news reporting like the ABC Articles to be defamatory. If the law were otherwise, it would be impossible for news organizations to report on public controversies involving participants with competing narratives. *See Clark v. Viacom Int'l Inc.*, 617 F. App'x. 495, 510 (6th Cir. 2015) ( "[A] vast amount of what is published in the daily and periodical press purports to be descriptive of what somebody said rather than of what anybody did.") (citation omitted). Sandmann's public statements would have been incomprehensible to ABC's audience if the statement he was responding to could not also be reported.

Moreover, not just Sandmann, but everyone on all sides of this controversy, could sue ABC over the same articles. Phillips could sue ABC for reporting Sandmann's side, claiming that by including Sandmann's statements ABC implicitly called Phillips a liar and accused him of trying to provoke a confrontation with teenagers. Others who spoke out on each side could do the same. It is not Kentucky law that the more sides of an issue the press presents, the more lawsuits it subjects itself to.

## CONCLUSION

For all the reasons set forth in this brief and Appellees' joint response brief, ABC Appellees respectfully request that this Court affirm the judgment below.

Dated: December 23, 2022

Respectfully submitted,

*/s/ Nathan Siegel*
Nathan Siegel
Meenakshi Krishnan
DAVIS WRIGHT TREMAINE LLP
1301 K St. NW, Suite 500
Washington, DC 20005
Phone: (202) 973-4237
Fax: (202) 973-4437
nathansiegel@dwt.com
meenakshikrishnan@dwt.com

Robert B. Craig
TAFT STETTINIUS & HOLLISTER LLP
50 East RiverCenter Blvd., Suite 850
Covington, KY 41011-1683
Phone: (859) 547-4300
Fax: (513) 381-6613
craigr@taftlaw.com

*Attorneys for Defendants-Appellees ABC
News, Inc., ABC News Interactive,
Inc., and The Walt Disney Company*

**CERTIFICATE OF COMPLIANCE**

1.     This brief complies with the type-volume limitation set in the Court's October 12, 2022 order regarding consolidation and briefing schedule, because it contains 3,981 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated:  December 23, 2022

*/s/ Nathan Siegel*
Nathan Siegel

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2022, I electronically filed the foregoing Supplemental Brief of ABC Appellees with the Court using the CM/ECF system upon all counsel of record. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: December 23, 2022

*/s/ Nathan Siegel*
Nathan Siegel